# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

### Civil Action No. 9:18-cv-80086-DMM

CHARLES WILDES, individually; FRANCISCO DORIA, individually;
AKIVA KATZ, individually; JAMES GURRY, individually;
RONALD NELSON, individually; and JUSTIN PERRY, individually;
and on behalf of All Others Similarly Situated;

      Plaintiffs,

v.

BITCONNECT INTERNATIONAL PLC, a foreign corporation;
BITCONNECT LTD., a foreign corporation;
BITCONNECT TRADING LTD., a foreign corporation;
JOSHUA JEPPESEN, an individual; GLENN ARCARO, an individual;
TREVON BROWN a/k/a TREVON JAMES, an individual;
RYAN HILDRETH, an individual; CRAIG GRANT, an individual;
JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK, an individual;
RYAN MAASEN, an individual; and JOHN DOE NOS. 2-10, individuals;

_____/
      Defendants.

### AMENDED CLASS ACTION COMPLAINT

♫ *Welcome to Wonderland / Where everything you see /*
*I mean from "A" to "Z" / Ain't what it seems to be.*
*Welcome to Wonderland / Set phasers up to stun*
*Turn off the lights when done / Good luck and thanks a ton / Ciao, baby, gotta run!* ♫

So concludes the song "Welcome to Wonderland" from the short-lived Broadway play "Wonderland,"

which tells the story of Alice's trip through the looking glass into a fantastical dreamlike world where

the impossible is possible and logic must be suspended to succeed.  Those song lyrics seem equally

applicable to BITCONNECT, the recently-shuttered cryptocurrency lending and exchange platform

that grew to hold a market cap of over $2.5 billion with its multilevel marketing structure and

illogically-promised investment returns of forty percent (40%) monthly and one percent (1%)

compounding interest daily regardless of market performance.  Sure enough, the crypto-Wonderland

created by BITCONNECT was too good to be real; as the business' closure in January 2018 revealed

a Ponzi scheme, numerous securities laws violations, and thousands upon thousands of investors who lost 90+% of their holdings at BITCONNECT.  Things at BITCONNECT weren't what they seemed to be; and now that the misdeeds of the company and its army of promoters have been revealed, BITCONNECT investors are commencing this action to prevent the wrongdoers from simply turning off the lights and dancing away singing: "*Ciao, baby, gotta run!*"

## INTRODUCTION

Plaintiffs CHARLES WILDES, FRANCISCO DORIA, AKIVA KATZ, JAMES GURRY, RONALD NELSON, and JUSTIN PERRY ("Plaintiffs"), individually and on behalf of all other persons similarly situated as defined herein, by and through undersigned counsel, hereby sue BITCONNECT INTERNATIONAL PLC, a foreign corporation; BITCONNECT LTD., a foreign corporation; BITCONNECT TRADING LTD., a foreign corporation (the business entities collectively referred to herein as "BITCONNECT"); JOSHUA JEPPESEN, an individual; GLENN ARCARO, an individual; TREVON BROWN a/k/a TREVON JAMES, an individual; RYAN HILDRETH, an individual; CRAIG GRANT, an individual; JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK, an individual; RYAN MAASEN, an individual; and JOHN DOE NOS. 2-10, individuals (collectively referred to as "Defendants"), for damages and for equitable relief. In support thereof, Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1.      This nationwide class action is brought by Plaintiffs CHARLES WILDES, FRANCISCO DORIA, AKIVA KATZ, JAMES GURRY, RONALD NELSON, and JUSTIN PERRY individually and on behalf of a class of similarly situated investors (the "Class Members") who contributed millions of dollars' worth of cryptocurrency to a trading platform and lending program fraudulently promoted and operated by Defendants.  Plaintiffs alone were responsible for the following investments:

| NAME | CURRENT VALUATION OF LOSS (in USD) [APPROX.] |
|---|---|
| Charles Wildes | $11,500.00 |
| Francisco Doria | $141,500.00 |
| Akiva Katz | $200,000.00 |
| James Gurry | $150,000.00 |
| Ronald Nelson | $140,000.00 |
| Justin Perry | $242,000.00 |
| TOTAL | $885,000.00 |

2.      In mid-January 2018, BITCONNECT boasted a market cap of over $2.5 billion. However, that purported fortune appears to have been built through the use of fraudulent means and a wide-reaching Ponzi scheme that defrauded investors, made a mockery of state and federal securities laws, and employed an army of social media mercenaries who were paid to bring more unsuspecting victims into the fraud.

3.      BITCONNECT guaranteed investors up to a forty percent (40%) total return per month on their investments, following a four-tier investment system based on the sum of the initial deposit. The more money an investor put down, the greater the return that investor could purportedly receive each month over a scheduled period of time -- regardless of market performance or the fluctuating price of cryptocurrency.

4.      Moreover, regardless of the amount of the initial investment, BITCONNECT represented that each investor could receive a one percent (1%) return on investment on a daily basis, which BITCONNECT purported would be generated by its own proprietary trading bot and volatility software -- a promise that would turn a $1,000 investment into a $50 million return within three years of daily compounded interest.

5.      Even more aggressive than its promises, though, was BITCONNECT's enlisted army of multi-level affiliate marketers who were paid by BITCONNECT to use BITCONNECT-supplied

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

materials to recruit new investors through eye-catching and interest-piquing social media channels, such as YouTube and Facebook.  Defendants GLENN ARCARO, TREVON BROWN a/k/a TREVON JAMES, RYAN HILDRETH, CRAIG GRANT, CRYPTONICK, and RYAN MAASEN were among the more prominent BITCONNECT recruiters, but were certainly not the only ones to preach the false gospel of BITCONNECT to unsuspecting investors in the United States and abroad.

6.      On January 17, 2018 -- as the unsustainable growth of BITCONNECT's scheme grew larger, and the sound of government regulators coming to take a closer look into BITCONNECT's operations grew louder -- BITCONNECT suddenly shut down its trading platform and lending program, a maneuver that precipitated an almost immediate ninety percent (90%) plummet in the value of BITCONNECT's investors' $2.5+ billion holdings.

7.      Although BITCONNECT contended, in the wake of terminating its trading and lending functions, that it would continue to support the proprietary cryptocurrency token it had created and required its investors to purchase (the BitConnect Coin [BCC]), that promise was hollow; as the only true value the token held was on BITCONNECT's own platform.  The damage was already done, and investors holding BCC suffered 90+% losses on their investments at BITCONNECT.

8.      Plaintiffs and Class Members seek compensatory and equitable relief rescinding their investments in BITCONNECT and restoring to them the assets and funds they were fraudulently induced into investing.

## GENERAL ALLEGATIONS

### THE PARTIES

#### Plaintiffs

9.      Plaintiff CHARLES WILDES ("WILDES") is an individual domiciled in Boynton Beach, Florida and is *sui juris*.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

10.     Plaintiff FRANCISCO DORIA ("DORIA") is an individual domiciled in Miami, Florida and is *sui juris*.

11.     Plaintiff AKIVA KATZ ("KATZ") is an individual domiciled in Chicago, Illinois and is *sui juris*.

12.     Plaintiff JAMES GURRY ("GURRY") is an individual domiciled in Covina, California and is *sui juris*.

13.     Plaintiff RONALD NELSON ("NELSON") is an individual domiciled in Sacramento, California and is *sui juris*.

14.     Plaintiff JUSTIN PERRY ("PERRY") is an individual domiciled in Boston, Massachusetts and is *sui juris*.

### The Corporate Defendants

15.     Defendant BITCONNECT INTERNATIONAL PLC, is a foreign for-profit company organized in England and Wales and incorporated under the Companies Act 2006 as a private company limited by shares.  BITCONNECT INTERNATIONAL PLC lists its principal place of business at Grant Thornton House, 22 Melton Street, Kings Cross, London, United Kingdom NW 1 2EP.

16.     Defendant BITCONNECT LTD. is a foreign for-profit company organized in England and Wales and incorporated under the Companies Act 2006 as a private company limited by shares.  BITCONNECT INTERNATIONAL PLC lists its principal place of business at The Panorama, Park Street, Ashford, United Kingdom TN24 8EZ.

17.     Defendant BITCONNECT TRADING LTD., is a foreign for-profit company organized in England and Wales and incorporated under the Companies Act 2006 as a private company limited by shares.  BITCONNECT TRADING LTD. lists its principal place of business at 23 St. Elizabeth Avenue, Bootle, United Kingdom L20 6FA.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

18.     Upon information and belief, the BITCONNECT entities are wholly interrelated and are used interchangeably as instrumentalities for the fraud described herein.

### The Director and Affiliate/Recruiter Defendants

19.     Defendant JOSHUA JEPPESEN is an individual believed to be domiciled in the United States and is *sui juris*.  According to published information, JOSHUA JEPPESEN held the title of a Director at BITCONNECT, serving as the Development Director for BITCONNECT's operations in the United States and Europe.

20.     Defendant GLENN ARCARO is an individual domiciled in Moorpark, California and is *sui juris*.  According to paperwork filed with the corporate registry office in the United Kingdom, GLENN ARCARO is an active Director of BITCONNECT INTERNATIONAL PLC.  GLENN ARCARO not only served BITCONNECT by managing a team of U.S.-based affiliates/recruiters; he also served as one of the most successful affiliate/recruiters for BITCONNECT himself, soliciting hundreds if not thousands of BITCONNECT investors in the United States and abroad through social media sites such as YouTube and Facebook.

21.     Defendant TREVON BROWN a/k/a TREVON JAMES ("TREVON JAMES") is an individual domiciled believed to be domiciled in the United States and is *sui juris*.  TREVON JAMES served as an affiliate/recruiter for BITCONNECT, soliciting hundreds if not thousands of BITCONNECT investors in the United States and abroad through social media sites such as YouTube and Facebook.

22.     Defendant RYAN HILDRETH is an individual domiciled in Laguna Nigel, California and is *sui juris*.  RYAN HILDRETH served as an affiliate/recruiter for BITCONNECT, soliciting hundreds if not thousands of BITCONNECT investors in the United States and abroad through social media sites such as YouTube and Facebook.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

23.     Defendant CRAIG GRANT is an individual believed to be domiciled in Miami, Florida and is *sui juris*.  CRAIG GRANT served as an affiliate/recruiter for BITCONNECT, soliciting hundreds if not thousands of BITCONNECT investors in the United States and abroad through social media sites such as YouTube and Facebook.

24.     Defendant JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK is an individual believed to be domiciled in the United States and is *sui juris*.  His true name is unknown at this time, as is the state of his domicile.  CRYPTONICK served as an affiliate/recruiter for BITCONNECT, soliciting hundreds if not thousands of BITCONNECT investors in the United States and abroad through social media sites such as YouTube and Facebook.

25.     Defendant RYAN MAASEN is an individual believed to be domiciled in Tulsa, Oklahoma and is *sui juris*.  RYAN MAASEN served as an affiliate/recruiter for BITCONNECT, soliciting hundreds if not thousands of BITCONNECT investors in the United States and abroad through social media sites such as YouTube and Facebook.

26.     JOHN DOE NOS. 2-10 are individuals located in the United States and abroad who served as affiliates/recruiters for BITCONNECT, soliciting hundreds if not thousands of BITCONNECT investors in the United States and abroad through social media sites such as YouTube and Facebook.

### Other Liable Persons/Entities

27.     In addition to those persons and entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiffs, but respecting whom Plaintiffs currently lack specific facts to permit them to name such person or persons as a party defendant.  By not naming such persons or entities at this time, Plaintiffs are not waiving their right to amend this pleading to add such parties, should the facts warrant adding such parties.

### JURISDICTION AND VENUE

### Subject Matter Jurisdiction

28.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds Five Million Dollars ($5,000,000.00), exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than Defendants. *See*, 28 U.S.C. § 1332(a) and 1332(d)(2)(A). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### Personal Jurisdiction

29.     This Court has personal jurisdiction over Defendants because: (a) at least one Defendant is operating, present, and/or doing business within this District, and (b) Defendants' breaches and unlawful activity occurred within this District.

30.     Defendants solicited investors in this jurisdiction, including Plaintiffs WILDES and DORIA, to invest funds and assets with BITCONNECT -- reaping from those investors large sums of money and other assets, including valuable cryptocurrency.

31.     In light of the foregoing, Defendants purposefully availed themselves of the benefits of operating in this jurisdiction; and this Court may exercise personal jurisdiction over Defendants.

### Venue

32.     Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, as several of the BITCONNECT investors reside in Florida.

33.     In light of the foregoing, this District is a proper venue in which to adjudicate this dispute.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

### THE BITCONNECT BUSINESS

34.     BITCONNECT   INTERNATIONAL   PLC;   BITCONNECT   LTD.;   and BITCONNECT TRADING LTD. (collectively "BITCONNECT") are all parts of the same foreign technology organization that conducted its business on the internet, principally by means of a website accessible at www.bitconnect.co.

35.     BITCONNECT described itself as "an open source all-in-one bitcoin and crypto community platform designed to provide multiple investment opportunities with cryptocurrency education where it is entirely possible to find the independence we all desire, in a community of like-minded, freedom-loving individuals who, like you, are seeking the possibility of income stability in a very unstable world."

36.     When BITCONNECT referred to "all-in-one bitcoin and crypto community platform," it was referring to the ability to trade and profit from cryptocurrencies[1], including bitcoin, and to gain access to Initial Coin Offerings ("ICOs").[2]

37.     BITCONNECT created its own digital token called BitConnect Coin (BCC).

38.     BITCONNECT described BitConnect Coin as an open source, peer-to-peer, community-driven decentralized cryptocurrency that allows owners to store and invest their wealth.

---

[1] Cryptocurrencies are digital assets created by companies or individuals that take the form of a virtual coin or token.  Bitcoin is an example of one such cryptocurrency, and there are more than one thousand other virtual coins or tokens currently in existence.  Virtual coins and tokens are primarily issued and distributed on a "blockchain" -- a cryptographically-secured ledger which exists on the internet.  Virtual coins and tokens are traded on online platforms, typically called cryptocurrency exchanges, and they can be traded for other digital assets or fiat currencies, such as the U.S. Dollar or Euro.

[2] An ICO is an offering to the public by a company or an individual for the sale of its/his/her newly-created digital asset, virtual coin, or token.  The company or individual conducting the ICO sells the cryptocurrency to investors using the internet in exchange for something of value, which can be other digital assets or fiat currencies, such as the U.S. Dollar or Euro.  Companies and individuals ostensibly use ICOs to raise capital to fund technology projects without the challenges posed by traditional fundraising restrictions.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

39.     BITCONNECT claimed on its website that investors could "begin staking or holding BitConnect Coin and watch [their] interest grow" and that "the more [investors] hold, the more [they] earn."

40.     BITCONNECT further represented on its website that:

(a)   BitConnect Coin was "the investment tool [investors] need to jump start [their] financial security";

(b)   Investors could "[s]ecure [their] future by gaining quick profit growth for tomorrow that is practical and attainable";

(c)   The investment ensures "financial freedom is available and [investors] can start today.  Store and invest wealth and earn substantial interest and investment"; and

(d)   Investors who purchased BitConnect Coin were purchasing "an interest-bearing asset with 120% return per year.  It is that simple."

41.     BITCONNECT purported to offer investment opportunities that allow individuals to profit from: (1) BITCONNECT's trading of digital tokens through a proprietary, secret automated trading system it called its "volatility software," (2) its digital token (the BitConnect Coin), and (3) its referral program.

## BITCONNECT INVESTMENTS

42.     BITCONNECT offered investments (the "BitConnect Investments") to the general public, including the residents of Florida.

43.     The BitConnect Investments, as described below, are the BitConnect Lending Program and the BitConnect Staking Program.

## BitConnect Lending Program

44.     BITCONNECT offered and sold to the public an investment it called the "BitConnect Lending Program."

45.     BITCONNECT represented that its investors in the program would earn up to forty percent (40%) interest per month over a specified term and an additional rate of interest calculated on a daily basis.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

46.    BITCONNECT indicated that the interest was earned through the profits generated by its proprietary, secret trading system (the "volatility software").

47.    BITCONNECT published statements on its website and elsewhere that suggested that investors were **guaranteed** the return of their principal investment in as soon as one-hundred twenty (120) days.

48.    To take part in the BitConnect Lending Program, investors first had to purchase bitcoin with their fiat currency, such as the U.S. Dollar or Euro.   BITCONNECT then directed investors to deposit their bitcoin into the BitConnect BCC Exchange platform.   Once deposited, BITCONNECT instructed each investor to sell his/her/its bitcoin to BITCONNECT in exchange for its own digital token (the BitConnect Coin).   Investors then "loaned" their BitConnect Coins back to BITCONNECT; and BITCONNECT claimed to use the BitConnect Coins that it borrowed from investors to fund the trading activities of the proprietary, secret "volatility software" trading system.

49.    BITCONNECT published the following graphic to demonstrate how the BitConnect Lending Program operated:



50.    BITCONNECT touted the investment as a "safe way to earn a high rate of return on . . . investment[s] without having to undergo a significant amount of risk."

51.    BITCONNECT provided a chart to give the impression that the returns from the BitConnect Lending Program are guaranteed and that each investor would receive back his/her/its principal capital invested within a set period of time, *to wit*:

| BitConnect Coin Lending Profits Interest | | |
|---|---|---|
| **Lending Amount** | **Interest (Accrued Daily)** | **Capital Back** |
| $100 - $1000 | Volatility Software Interest (up to 40 % Per Month) | After 299 Days |
| $1010 - $5000 | Volatility Software Interest + 0.10% Daily (up to 40 % Per Month) | After 239 Days |
| $5010 - $10000 | Volatility Software Interest + 0.20% Daily (up to 40 % Per Month) | After 179 Days |
| $10010 - $100000 | Volatility Software Interest + 0.25% Daily (up to 40 % Per Month) | After 120 Days |

**BitConnect Staking Program**

52.    BITCONNECT also offered and sold to the general public an investment it called the "BitConnect Staking Program."

53.    BITCONNECT represented that investors in this program would earn interest of up to ten percent (10%) per month over a specified term.

54.    BITCONNECT indicated the interest was earned through "Proof of Stake Minting."

55.    BITCONNECT represented that "Proof of Stake Minting" was a process in which rewards are distributed to those "helping maintain the security of the network via proof of holding."

56.    In the BitConnect Staking Program, investors first had to purchase bitcoin with their fiat currency, such as the U.S. Dollar or Euro.  BITCONNECT then directed investors to deposit their bitcoin into the BitConnect BCC Exchange platform.   Once deposited, BITCONNECT instructed each investor to sell his/her/its bitcoin to BITCONNECT in exchange for its own self-created digital token (the BitConnect Coin).  Investors then had to download and install on their computers the BitConnect-QT wallet software and hold the BitConnect Coins in the BitConnect-QT wallet for more than fifteen (15) days.  The funds that BITCONNECT paid to investors were

purportedly based on the number of BitConnect Coins, or "stake," each investor held in the BitConnect-QT wallet installed on the investor's computer.

57.     BITCONNECT published the following graphic to demonstrate how the BitConnect Staking Program operated:



58.     The amount of interest paid to investors was purportedly contingent upon the dates of the investors' investments.

59.     BITCONNECT even provided a chart to demonstrate the purported guaranteed rate of return from the BitConnect Staking Program, *to wit*:

| Duration | Interest |
|---|---|
| 1st 6 months<br>Jan 2017 to June 2017 | 60% (10%per month) |
| 2nd 6 months<br>July 2017 to Dec 2017 | 50% (8%per month) |
| 3rd 6 months<br>Jan 2018 to June 2018 | 40% (7%per month) |
| 4th 6 months<br>July 2018 to Dec 2018 | 30% (5%per month) |
| 5th 6 months<br>Jan 2019 to June 2019 | 20% (3%per month) |
| 6th 6 months<br>July 2019 to Dec 2019 | 10% (1.4%per month) |

60.     Notwithstanding the foregoing, BITCONNECT never registered any offerings of securities, or filed either claims for exemption from securities registration or notice filings with respect to securities covered under either state or federal law, as they were required to do.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## THE BITCONNECT INVESTMENTS ARE SECURITIES

61.     The BITCONNECT investors invested in a common enterprise and with an expectation that the increased value of their BitConnect Investments would produce a substantial return on their investment that would be derived solely from the efforts of others -- namely, Defendants.

62.     In short, the thing for which Plaintiffs and each Class Member invested his/her/its valuable assets looks like a security, functions like a security, and fits the definition of a security. Securities regulators look beyond the form or label someone appends to his/her/its activity and instead consider the actual substance and purpose of the activity.

### BitConnect Investors Invested Their Funds in a Common Enterprise

63.     As noted above, BITCONNECT investors deposited their bitcoin into the BitConnect BCC Exchange platform -- a common pool of funds that commingled each investor's investment.

64.     Moreover, the BitConnect Staking Program, for example, required BITCONNECT investors to maintain their investments in a common pool for a minimum period of time so that the community of interests could produce the purported investment returns promised.

### BitConnect Investors Had an Expectation of Profit

65.     BITCONNECT investors viewed the BitConnect Investments as opportunities for profit.

66.     In addition to the representations set forth above, BITCONNECT made the following statements on its website:

> (a) "You can invest BitConnect coin in BitConnect lending platform exclusively from the BitConnect Dashboard.  This investment option involves profiting from BitConnect trading bot and volatility software. You will receive daily profit based on your investment options";
>
> (b) "Upon investment term completion, you will receive your CAPITAL BACK to take out from the BitConnect lending platform or optionally reinvest back in lending platform to continue receiving daily profit"; and

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

(c) "It takes 15 days to mature your coin from last received interest block. Once you receive interest block in your staking wallet, you are required to wait for another 15 days to find next interest block."

67.     BITCONNECT provided a Daily Interest Chart on its website that showed the daily interest that it purported to have paid to its investors in the three months prior to that date.

68.     Prior to January 17, 2018, that chart showed no days of negative returns.

69.     For example, a snapshot of the chart from January 4, 2018 appeared to show an average daily interest rate of about one percent (1%), *to wit*:



70.     An average daily interest rate of about one percent (1%) compounds to an annual return of over three thousand percent (3,000%).

71.     Annual compounded investment returns of over three thousand percent (3,000%) are extremely unusual in financial markets.

72.     A promise of annual compounded investment returns of over three thousand percent (3,000%) is a known "red flag" for fraud, specifically for the risk that the investment might be a Ponzi scheme.

### BitConnect Investors Expected That
### They Would Profit from BitConnect's Efforts

73.     BITCONNECT investors expected to profit from the efforts of BITCONNECT and its agents.

74.     BITCONNECT investors believed, based on representations of fact made by BITCONNECT in its promotional materials, that investors could profit by merely holding and staking BitConnect Coins, or by enjoying the guaranteed returns provided by BITCONNECT's proprietary, secret trading system (the "volatility software").

75.     Further, investors expected that BITCONNECT and its agents would expend significant efforts to continue to develop the "volatility software" and that such development would increase the value of the investors' BitConnect Coins.

76.     BITCONNECT stated that "Investing on BitConnect platform . . . is a safe way to earn a high rate of return on your investment without having to undergo a significant amount of risk."

77.     BITCONNECT also claimed to investors that "The interest rate that we can guarantee on your investment while using our investment platform is calculated by our BitConnect Price Volatility Software and accrued daily."

78.     Based on the statements listed above, investors expected that they would profit solely from the essential managerial efforts of BITCONNECT.

### BITCONNECT OFFERED INVESTMENTS TO THE GENERAL PUBLIC

79.     BITCONNECT offered its investments to the general public, including residents of Florida, through its websites and its sales people, which it calls "affiliates."  BITCONNECT's conduct related to the offers and sales of the investments to the general public is willful.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

### The BitConnect Websites

80.     BITCONNECT maintains a website accessible at http://bitconnect.co and a website

accessible at http://bitconnectcoin.co (the "BitConnect Websites").  The BitConnect Websites are

accessible worldwide to the general public, including residents of Florida.

81.     The BitConnect Investments were available for purchase by individuals in the United

States and worldwide through the BitConnect Websites and affiliated websites rendered in foreign

languages.  The investments were promoted on social media pages including, but not limited to,

Facebook, YouTube, Reddit, Instagram, and Craigslist.

82.     BITCONNECT promoted its investments on the BitConnect Websites by making the

following representations:

   (a)  "There are multiple ways to invest in the BitConnect platform with
        different level of earning opportunity associated";

   (b)  "You can invest BitConnect Coin in BitConnect lending platform
        exclusively from the BitConnect Dashboard.  This investment option
        involved profiting from BitConnect trading bot and volatility software.
        You will receive daily profit based on your investment option.  Upon
        investment term completion, you will receive your capital back to take out
        from the BitConnect lending platform or optionally reinvest back in
        lending platform to continue receiving daily profit"; and

   (c)  "Invest your wealth in community-driven decentralized cryptocurrency.
        Using BitConnect public exchanges, you can buy, sell and trade
        BitConnect Coin (BCC) directly to and from each other with no central
        organization involved."

83.     Upon information and belief, JOSHUA JEPPESEN played an integral role in

developing and promoting the BitConnect Websites.  Without his vital contributions, the BitConnect

Websites would not have functioned as well as they did and would not have ensnared as many victims

who fell prey to Defendants' promotion of the BitConnect Investments.

### THE BITCONNECT AFFILIATES

84.     BITCONNECT used sales agents, which it refers to as "affiliates," to direct investors to the BitConnect Websites for the purpose of purchasing BitConnect Investments.  In return for funneling additional investors to BITCONNECT, the affiliates were paid sizeable commissions, as explained below.

85.     The team of BITCONNECT affiliates/recruiters in the United States were managed, coached, and supported by Defendant GLENN ARCARO, a BITCONNECT Director and shareholder.

86.     Upon information and belief, Defendant GLENN ARCARO instructed his team at meetings, organized sales presentations, and assisted with marketing pitches and materials for the BITCONNECT affiliates to sharpen their recruiting techniques and lure in BITCONNECT investors.

87.     Defendant GLENN ARCARO is also believed to have created and orchestrated an online training program -- commonly referred to as "BCC School" -- that purported to teach people how to buy bitcoin and how to take advantage of investment opportunities like those being offered by BITCONNECT.  To "attend" BCC School, an interested person had to have a "sponsor." GLENN ARCARO and his team of affiliates served as those sponsors.

88.     In essence, though, the BCC School was little more than a conduit to get BCC School "graduates" to open up accounts at BITCONNECT, for which GLENN ARCARO and his team of affiliates reaped from BITCONNECT the riches of each client referral.

89.     Defendants GLENN ARCARO, TREVON JAMES, RYAN HILDRETH, CRAIG GRANT, CRYPTONICK, and RYAN MAASEN were among the more prominent BITCONNECT affiliates who recruited unsuspecting investors in the United States and abroad to purchase BitConnect Investments.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

90.     Defendants JOHN DOE NOS. 2-10 also served as affiliates/recruiters for BITCONNECT, soliciting hundreds if not thousands of BITCONNECT investors in the United States and abroad through social media sites such as YouTube and Facebook.

91.     BITCONNECT encouraged affiliates to promote BitConnect Investments through social media, blogs, videos, websites, and newsletters by means of a referral, or commission, program.

92.     BITCONNECT created marketing materials which were used by its affiliates, including music videos, cartoons, and online presentations that describe BitConnect Coins, the BitConnect Lending Program, and the BitConnect Staking Program.

93.     BITCONNECT also provided affiliates with online advertisements, often referred to as "banners," that were incorporated into websites and used to solicit investments in the BitConnect Staking Program and the BitConnect Lending Program.

94.     Affiliates also used unique hyperlinks referred to as "referral links" to offer the BitConnect Investments on their personal social media pages.

95.     Investors used the referral links to access the BitConnect Websites and purchase BitConnect Investments.  The referral links ensured the affiliate was credited with the appropriate commission according to the BitConnect Referral Program.

96.     In the BitConnect Referral Program, BITCONNECT paid commissions to affiliates who used referral links to offer and sell BitConnect Investments.  The value of the commissions were based on the affiliate's placement in a multi-level matrix of other affiliates, and it ranged from two percent (2%) to five percent (5%) of the amount invested.  These commissions were paid to affiliates in bitcoin.  The commission matrix was changed by BITCONNECT in November 2017.

97.     BITCONNECT provided charts to demonstrate the commissions paid to affiliates in the BitConnect Referral Program.  The commission matrices used by BITCONNECT prior to and after November 2017 are shown below:

Civil Action No. 9:18-cv-80086-DMM



98.     BITCONNECT affiliates used online solicitations containing referral links to offer

BitConnect Investments to residents of Florida, residents of many other states in the United States,

and residents of numerous countries worldwide.

99.     BITCONNECT promoted its referral program by representing that:

(a)   "BitConnect offering [*sic.*] a lucrative bonus program which enables you to
        earn affiliate commission if your referral invest in BitConnect lending";

(b)   "At the same time, generate a serious income for yourself through our
        bitcoin affiliate program.  You can start earning your free bitcoins today
        for every person you refer and who starts lending on BitConnect
        platform";

(c)   "As a means to spread the word, help grow our community, and offer you
        a great way to earn free Bitcoins, we are now offering a lucrative bonus
        program which enables you to earn bitcoin for every new user who signs
        up and lends BitConnect Coin (BCC) to our lending platform using your
        affiliate link";

(d)   "BitConnect's referral program is designed to provide 3 Levels of earning
        potential to you based on the number of lenders.  You will earn a
        commission every time your referral lends BitConnect Coin (BCC) on our
        platform.  Invite your friends and family to join BitConnect via your
        unique referral link to start earning a serous income from our bitcoin
        affiliate program"; and

(e)   "Spread the word on social media and other online platforms to help
        making [sic.] BitConnect platform a success for the entire community of
        lenders."

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

**BITCONNECT OMITTED AND MISREPRESENTED MATERIAL FACTS IN ITS MARKETING**

100.     BITCONNECT willfully failed to disclose and misrepresented material facts when offering the BitConnect Investments, including, but not limited to, the following:

(a)  The identity of the principals of BITCONNECT and the true location of BITCONNECT's operations and management;

(b)  Information about the assets and liabilities of BITCONNECT and any other information that indicates the means by which BITCONNECT will provide investors with a guaranteed daily return, regardless of the value of bitcoin;

(c)  Information about the proprietary, secret trading system (the "volatility software"), details of its trading records and historical performance, proof of its existence, and the risk factors associated with its use;

(d)  That the BitConnect Investments are securities and are not registered with any government regulator, as required by state and federal law;

(e)  That only registered dealers or agents can be paid commissions for referrals or sales of securities; and

(f)  That BITCONNECT affiliates who receive such commissions for their sale of BitConnect Investments without being properly registered are doing so in violation of state and federal securities laws.

**THE BITCONNECT INVESTMENTS WERE A PONZI SCHEME**

101.     Contrary to the allegations of fantastic investment returns through the power of its proprietary, secret trading volatility software and the communal power of the BitConnect Staking Program, BITCONNECT was actually operating a Ponzi scheme.

102.     Any investment returns provided to BITCONNECT investors were not legitimately generated; rather, BITCONNECT simply used new BITCONNECT investors' money to pay the promised returns on outstanding BITCONNECT investors' investments.

103.     In addition, BITCONNECT used new BITCONNECT investors' funds to pay the BITCONNECT Directors and affiliates -- including, but not limited to, Defendants JOSHUA JEPPESEN, GLENN ARCARO, TREVON JAMES, RYAN HILDRETH, CRAIG GRANT,

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

CRYPTONICK, and RYAN MAASEN -- salary and commissions for their role in bringing additional victims into the scheme.

### BitConnect's Offerings Violate Numerous Securities Laws

104.    Moreover, BITCONNECT and its affiliates engaged in the offer and sale of unregistered securities.

105.    By soliciting the investing public in the manner they have, BITCONNECT and its Directors and affiliates -- led in the United States by Defendants JOSHUA JEPPESEN and GLENN ARCARO -- have imposed significant danger to the public welfare because:

(a)    The securities offered (the BitConnect Investments) have not been registered with any state or federal securities regulator, as required by state and federal securities laws.  Proper registration of securities is an essential safeguard service to require companies to provide accurate and material information to enable people to make reasoned investment decisions and to protect the public from fraud;

(b)    BITCONNECT has not registered as a dealer in, or salesman of, securities. Registering as a dealer or salesman, as required by numerous state and federal securities laws, ensures that people transacting business as securities dealers and salesmen are competent, honest, properly regulated and are authorized to do so;

(c)    The current speculative activity associated with cryptocurrencies makes investors particularly susceptible to investing without performing their normal due diligence.  Further, most cryptocurrency exchanges are unregulated markets and therefore are vulnerable for manipulative trading, fraud, and deception;

(d)    BITCONNECT has omitted material facts on the BitConnect Websites and in its offerings and has made misrepresentations of fact which make the BitConnect Investments particularly dangerous for the investing public.  Further, BITCONNECT is encouraging members of the investing public to become its affiliates and therefore to act as unregistered dealers and salesmen in violation of state and federal securities laws; and

(e)    BITCONNECT's marketing materials are disproportionately targeted towards children, young adults, people of limited financial means, and unsophisticated investors who may not be able to sustain a complete loss of their investment without enduring significant financial hardship.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

106.     On January 4, 2018, the Texas State Securities Board issued to BITCONNECT an Emergency Cease and Desist Order in which the Securities Commissioner of the State of Texas presented his office's conclusion that, *inter alia*:

    (a)   the BitConnect Investments are securities;

    (b)   BITCONNECT had violated numerous securities regulations by offering the BitConnect Investments for sale in Texas;

    (c)   BITCONNECT had engaged in fraud and made materially misleading statements about the BitConnect Investments that were likely to deceive the public; and

    (d)   BITCONNECT's conduct, acts, and practices threaten an immediate and irreparable public harm.

107.     Likewise, on January 12, 2018, the State of North Carolina's Department of the Secretary of State - Securities Division issued to BITCONNECT a Temporary Cease and Desist Order in which the State presented its conclusion that the BitConnect Investments were unregistered securities being offered to the residents of the State and that those investments posed an immediate and irreparable harm to the residents of North Carolina.

### BITCONNECT ABRUPTLY CLOSED ITS OPERATIONS

108.     On the morning of January 17, 2018 -- amidst increased scrutiny from government regulators and watchful cryptocurrency industry experts -- BITCONNECT abruptly closed its cryptocurrency lending and exchange platform.

109.     According to a release on BITCONNECT's website, the company blamed the shutdown on "continued bad press" surrounding the platform, the two "Cease and Desist" letters from securities regulators in Texas and North Carolina, and multiple DDoS attacks on the website.

110.     Within moments of BITCONNECT's notice, the price of BitConnect Coin plummeted nearly ninety percent (90%) in value; and the token is believed to be effectively useless now.

- 23 -

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

111.    As a result of Defendants' fraudulent and misleading activities -- as well as their violation of multiple securities laws -- Plaintiffs and the Class have suffered damages believed to be greater than $2 billion.

## FACTS SPECIFIC TO INVESTOR PLAINTIFFS

### Charles Wildes

112.    Beginning on or about December 14, 2017, Plaintiff WILDES funded his BITCONNECT account.

113.    To make his investments with BITCONNECT, Plaintiff WILDES logged onto to BITCONNECT's website from his home and followed the instructions provided.

114.    On January 17, 2018, when BITCONNECT closed its lending and trading platforms, Plaintiff WILDES's holdings at BITCONNECT were believed to be valued at approximately $11,500.00.

### Francisco Doria

115.    Beginning on or about June 17, 2017, Plaintiff DORIA funded his BITCONNECT account.

116.    To make his investments with BITCONNECT, Plaintiff DORIA logged onto to BITCONNECT's website from his home and followed the instructions provided.

117.    On January 17, 2018, when BITCONNECT closed its lending and trading platforms, Plaintiff DORIA's holdings at BITCONNECT were believed to be valued at approximately $141,500.00.

### Akiva Katz

118.    Beginning on or about January 2, 2018, Plaintiff KATZ funded his BITCONNECT account.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

119.    To make his investments with BITCONNECT, Plaintiff KATZ logged onto to BITCONNECT's website from his home and followed the instructions provided.

120.    On January 17, 2018, when BITCONNECT closed its lending and trading platforms, Plaintiff KATZ's holdings at BITCONNECT were believed to be valued at approximately $200,000.00.

### James Gurry

121.    Beginning on or about October 17, 2017, Plaintiff GURRY funded his BITCONNECT account.

122.    To make his investments with BITCONNECT, Plaintiff GURRY logged onto to BITCONNECT's website from his home and followed the instructions provided.

123.    On January 17, 2018, when BITCONNECT closed its lending and trading platforms, Plaintiff GURRY's holdings at BITCONNECT were believed to be valued at approximately $150,000.00.

### Ronald Nelson

124.    Beginning on or about October 24, 2017, Plaintiff NELSON funded his BITCONNECT account.

125.    To make his investments with BITCONNECT, Plaintiff NELSON logged onto to BITCONNECT's website from his home and followed the instructions provided.

126.    On January 17, 2018, when BITCONNECT closed its lending and trading platforms, Plaintiff NELSON's holdings at BITCONNECT were believed to be valued at approximately $140,000.00.

### Justin Perry

127.    Beginning on or about November 21, 2017, Plaintiff PERRY funded his BITCONNECT account.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

128.    To make his investments with BITCONNECT, Plaintiff PERRY logged onto to BITCONNECT's website from his home and followed the instructions provided.

129.    On January 17, 2018, when BITCONNECT closed its lending and trading platforms, Plaintiff PERRY's holdings at BITCONNECT were believed to be valued at approximately $242,000.00.

## CLASS ACTION ALLEGATIONS

130.    A class action is the proper form to bring Plaintiffs' and the Class Members' claims under FRCP 23.  The potential class is so large that joinder of all members would be impractical. Additionally, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

131.    Plaintiffs bring this nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all members of the following class and subclass:

> **NATIONWIDE CLASS: All BITCONNECT investors and account holders who, between November 15, 2016 and January 17, 2018, transferred bitcoins, alternative cryptocurrencies, or any other form of monies or currency to BITCONNECT in furtherance of BITCONNECT's investments.  Excluded from the class are: Defendants themselves, Defendants' retail employees, Defendants' corporate officers, members of Defendants' boards of directors, Defendants' senior executives, Defendants' affiliates, and any and all judicial officers (and their staff) assigned to hear or adjudicate any aspect of this litigation.**
>
> **The Nationwide Class asserts claims for Unregistered Offer and Sale of Securities in Violation of Sections 5(a) and 5(c) of the Securities Act; Fraud in the Offer and Sale of Securities in Violation of Section 17(a)(1) of the Securities Act; Fraud in the Offer and Sale of Securities in Violation of Section 17(a)(2) and 17(a)(3) of the Securities Act; Rescission of Contract; Fraudulent Inducement; Fraudulent Misrepresentation; Negligent Misrepresentation; Conversion; and Civil Conspiracy (*see* Counts I – IV and VIII-XII).**

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

**FLORIDA SUBCLASS:** All Florida resident BITCONNECT investors and account holders who, between November 15, 2016 and January 17, 2018, transferred bitcoins, alternative cryptocurrencies, or any other form of monies or currency to BITCONNECT in furtherance of BITCONNECT's investments. Excluded from the class are: Defendants themselves, Defendants' retail employees, Defendants' corporate officers, members of Defendants' boards of directors, Defendants' senior executives, Defendants' affiliates, and any and all judicial officers (and their staff) assigned to hear or adjudicate any aspect of this litigation.

In addition to the claims asserted by the Nationwide Class, the Florida Subclass asserts claims for Unregistered Offer and Sale of Securities in Violation of Fla. Stat. §§ 517.011, *et seq.*; Fraud in the Offer and Sale of Securities in Violation of Fla. Stat. §§ 517.011, *et seq.*; and Violation of Florida's Deceptive and Unfair Trade Practices Act, Chapter 501, § 211(1), Fla. Stat. ("FDUTPA") (*see* Counts V - VII).

132.   This action satisfies all of the requirements of Federal Rules of Civil Procedure, including numerosity, commonality, predominance, typicality, adequacy, and superiority.

### Numerosity

133.   Members of the Class are so numerous and geographically dispersed that joinder of all members is impractical.

134.   While the exact number of class members remains unknown at this time, upon information and belief, there are at least hundreds if not thousands of putative Class members.

135.   Again, while the exact number is not known at this time, it is easily and generally ascertainable by appropriate discovery.

136.   It is impractical for each class member to bring suit individually.

137.   Plaintiffs do not anticipate any difficulties in managing this action as a class action.

### Commonality and Predominance

138.   There are many common questions of law and fact involving and affecting the parties to be represented.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

139.     When determining whether common questions predominate, courts focus on the issue of liability; and if the issue of liability is common to the class and can be determined on a class-wide basis, as in the instant matter, common questions will be held to predominate over individual questions.

140.     Common questions include, but are not limited to, the following:

(a)  Whether the BitConnect Coins sold by BITCONNECT constitute securities under federal and state securities laws;

(b)  Whether BITCONNECT violated federal and state securities laws in selling its BitConnect Coins and in failing to register them as securities;

(c)  Whether statements made by Defendants about the BitConnect Investments were false;

(d)  Whether Defendants have converted the funds belonging to Plaintiffs and the Class Members;

(e)  Whether BITCONNECT owed duties to Plaintiffs and the Class Members, what the scope of those duties were, and whether BITCONNECT breached those duties;

(f)  Whether BITCONNECT's conduct was unfair or unlawful;

(g)  Whether the terms of use for BITCONNECT's services are unconscionable, void, or voidable;

(h)  Whether Defendants has been unjustly enriched; and

(i)  Whether Plaintiffs and the Class Members have sustained damages as a result of Defendants' conduct.

141.     These common questions of law or fact predominate over any questions affecting only individual members of the Class.

## Typicality

142.     Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Defendants' unfair and unlawful conduct.

143.    Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

## Adequacy of Representation

144.    Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class.

145.    Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in complex consumer class action litigation of this nature, to represent them.

146.    Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class.

147.    The infringement of the rights and the damages Plaintiffs have suffered are typical of other Class members.

148.    To prosecute this case, Plaintiffs have chosen the law firm of Silver Miller.  Silver Miller is experienced in class action litigation and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

## Superiority

149.    Class action litigation is an appropriate method for fair and efficient adjudication of the claims involved herein.

150.    Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; as it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

151.    Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a well-funded corporate defendant like BITCONNECT.

152.    Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

153.    The nature of this action and the nature of laws available to Plaintiffs make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class Members for the wrongs alleged because:

> (a) Defendants would necessarily gain an unconscionable advantage if they were allowed to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources;
>
> (b) The costs of individual suits could unreasonably consume the amounts that would be recovered;
>
> (c) Proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged;
>
> (d) Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation;
>
> (e) The Class Members are geographically dispersed all over the world, thus rendering it inconvenient and an extreme hardship to effectuate joinder of their individual claims into one lawsuit;
>
> (f) There are no known Class Members who are interested in individually controlling the prosecution of separate actions; and
>
> (g) The interests of justice will be well served by resolving the common disputes of potential Class Members in one forum.

154.    Plaintiffs reserve the right to modify or amend the definition of the proposed class and to modify, amend, or create proposed subclasses before the Court determines whether certification is appropriate and as the parties engage in discovery.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

155.    The class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

156.    Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

157.    As a result of the foregoing, Plaintiffs and the Class Members have been damaged in an amount that will be proven at trial.

158.    Plaintiffs have duly performed all of their duties and obligations, and any conditions precedent to Plaintiffs bringing this action have occurred, have been performed, or else have been excused or waived.

159.    To enforce their rights, Plaintiffs have retained undersigned counsel and are obligated to pay counsel a reasonable fee for its services, for which Defendants are liable as a result of their bad faith and otherwise.

## COUNT I – UNREGISTERED OFFER AND SALE OF SECURITIES IN VIOLATION OF SECTIONS 5(a) AND 5(c) OF THE SECURITIES ACT

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 159 above, and further allege:

160.    BITCONNECT, by engaging in the conduct described above, directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or to actually sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

161.    BITCONNECT is a "seller" within the meaning of 15 U.S.C. § 77e because it or its agents solicited Plaintiffs' and the Class Members' investments in the BitConnect Investments, including BitConnect Coins.

162.    The funds paid by Plaintiffs and the Class Members pursuant to the BitConnect Investment protocols were pooled by BITCONNECT in an effort by BITCONNECT to secure a

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

profit for itself and the investors.  As a result, the investors, including Plaintiffs and the Class Members, shared in the risks and benefits of the investment.

163.    Plaintiffs and the Class Members relied on, and are dependent upon, the expertise and efforts of BITCONNECT for their investment returns.

164.    Plaintiffs and the Class Members expected that they would receive profits from their investments in BITCONNECT's efforts.

165.    BitConnect Coins constitute investment contracts and are therefore subject to federal securities laws, including the registration requirements promulgated thereunder.

166.    No registration statements have been filed with the SEC or have been in effect with respect to any of the offerings alleged herein.

167.    By reason of the foregoing, BITCONNECT has violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

168.    As a direct and proximate result of BITCONNECT's unregistered sale of securities, Plaintiffs and the Class Members have suffered damages in connection with their respective purchases of BitConnect Coin securities in the BitConnect Investments.

169.    Defendant JOSHUA JEPPESEN is subject to liability by virtue of his top-level executive position with BITCONNECT and his undeniable influence over the enterprise, which provided him the power to control or influence BITCONNECT's actions.  For example, JOSHUA JEPPESEN is reportedly a Director of BITCONNECT -- serving as the Director of Development for BITCONNECT's operations in the United States and Europe -- and is responsible for overseeing and contributing to development of the websites used by BITCONNECT to fraudulently offer and sell its BitConnect Investments and BitConnect Coins to investors, including its operations vis-à-vis Plaintiffs and the Class Members.  As a top-level executive and controlling person of BITCONNECT, JOSHUA JEPPESEN knew of, or recklessly disregarded, the alleged misrepresentations made by

BITCONNECT on the BitConnect Websites in connection with the sale of the BitConnect Investments and the BitConnect Coins.

170.    Defendant JOSHUA JEPPESEN is a culpable participant in the fraudulent scheme described herein and caused BITCONNECT to engage in the acts and omissions which give rise to liability under 15 U.S.C. § 77e.

171.    Accordingly, Defendant JOSHUA JEPPESEN is a "controlling person" of BITCONNECT within the meaning of Section 15(a) of the Exchange Act, 15 U.S.C. § 77o.

172.    Plaintiffs and the Class Members have suffered damages as a result of Defendant JOSHUA JEPPESEN's violation of Section 15(a) of the Exchange Act, 15 U.S.C. § 77o.

173.    Likewise, Defendant GLENN ARCARO is subject to liability by virtue of his top-level executive position with BITCONNECT and his undeniable influence over the enterprise, which provided him the power to control or influence BITCONNECT's actions.  For example, GLENN ARCARO is an active Director of BITCONNECT, is one of its only shareholders, and is responsible for much of the company's marketing of the BitConnect Investments to investors, including its operations vis-à-vis Plaintiffs and the Class Members.  As a top-level executive and controlling person of BITCONNECT, GLENN ARCARO knew of, or recklessly disregarded, the alleged misrepresentations made by BITCONNECT in connection with the BitConnect Investments.

174.    Defendant GLENN ARCARO is a culpable participant in the fraudulent scheme described herein and caused BITCONNECT to engage in the acts and omissions which give rise to liability under 15 U.S.C. § 77e.

175.    Accordingly, Defendant GLENN ARCARO is a "controlling person" of BITCONNECT within the meaning of Section 15(a) of the Exchange Act, 15 U.S.C. § 77o.

176.    Plaintiffs and the Class Members have suffered damages as a result of Defendant GLENN ARCARO's violation of Section 15(a) of the Exchange Act, 15 U.S.C. § 77o.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## COUNT II – FRAUD IN THE OFFER AND SALE OF SECURITIES
## IN VIOLATION OF SECTION 17(a)(1) OF THE SECURITIES ACT

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 159 above, and further allege:

177.    Defendants are "sellers" within the meaning of 15 U.S.C. § 77l(a) because they or their agents solicited Plaintiffs' and the Class Members' investments in the BitConnect Investments.

178.    The terms of the BitConnect Investments called for an investment of cryptocurrency or fiat currency by Plaintiffs and the Class Members.

179.    BitConnect Coins constitute investment contracts and are therefore subject to federal securities laws, including the registration requirements promulgated thereunder.

180.    Defendants, in the offer and sale of BitConnect Coins securities, by the use of the means and instruments of transportation and communication in interstate commerce or by use of the mails, directly or indirectly, have employed devices, schemes, and artifices to defraud.

181.    In the offer and sale of the BitConnect Coins securities and as part of their scheme to defraud, Defendants made false and misleading statements of material fact and omitted to state material facts to investors and prospective investors, as more fully described above.

182.    Defendants engaged in the conduct alleged herein knowingly or with reckless disregard for the truth.

183.    As a direct and proximate result of the foregoing, Defendants have each violated Sections 17(a)(1) of the Securities Act, 15 U.S.C. §§ 77q(a)(1).

184.    Defendant JOSHUA JEPPESEN is subject to liability by virtue of his top-level executive position with BITCONNECT and his undeniable influence over the enterprise, which provided him the power to control or influence BITCONNECT's actions.  For example, JOSHUA JEPPESEN is reportedly a Director of BITCONNECT -- serving as the Director of Development for BITCONNECT's operations in the United States and Europe -- and is responsible for overseeing and contributing to development of the websites used by BITCONNECT to fraudulently offer and

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

sell its BitConnect Investments and BitConnect Coins to investors, including its operations vis-à-vis Plaintiffs and the Class Members.  As a top-level executive and controlling person of BITCONNECT, JOSHUA JEPPESEN knew of, or recklessly disregarded, the alleged misrepresentations made by BITCONNECT on the BitConnect Websites in connection with the sale of the BitConnect Investments and the BitConnect Coins.

185.    Defendant JOSHUA JEPPESEN is a culpable participant in the fraudulent scheme described herein and caused BITCONNECT to engage in the acts and omissions which give rise to liability under 15 U.S.C. § 77l(a).

186.    Accordingly, Defendant JOSHUA JEPPESEN is a "controlling person" of BITCONNECT within the meaning of Section 15(a) of the Exchange Act, 15 U.S.C. § 77o.

187.    Plaintiffs and the Class Members have suffered damages as a result of Defendant JOSHUA JEPPESEN's violation of Section 15(a) of the Exchange Act, 15 U.S.C. § 77o.

188.    Likewise, Defendant GLENN ARCARO is subject to liability by virtue of his top-level executive position with BITCONNECT and his undeniable influence over the enterprise, which provided him the power to control or influence BITCONNECT's actions.  For example, GLENN ARCARO is an active Director of BITCONNECT, is one of its only shareholders, and is responsible for much of the company's marketing of the BitConnect Investments to investors, including its operations vis-à-vis Plaintiffs and the Class Members.  As a top-level executive and controlling person of BITCONNECT, GLENN ARCARO knew of, or recklessly disregarded, the alleged misrepresentations made by BITCONNECT in connection with the BitConnect Investments.

189.    Defendant GLENN ARCARO is a culpable participant in the fraudulent scheme described herein and caused BITCONNECT to engage in the acts and omissions which give rise to liability under 15 U.S.C. § 77l(a).

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

190.     Accordingly, Defendant GLENN ARCARO is a "controlling person" of BITCONNECT within the meaning of Section 15(a) of the Exchange Act, 15 U.S.C. § 77o.

191.     Plaintiffs and the Class Members have suffered damages as a result of Defendant GLENN ARCARO's violation of Section 15(a) of the Exchange Act, 15 U.S.C. § 77o.

## COUNT III – FRAUD IN THE OFFER AND SALE OF SECURITIES IN VIOLATION OF SECTION 17(a)(2) AND 17(a)(3) OF THE SECURITIES ACT

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-159 above, and further allege:

192.     In the offer and sale of the BitConnect Coin securities, Defendants -- by use of means or instruments of transportation or communication in interstate commerce or by use of the mails -- directly or indirectly: (a) obtained money or property by means of untrue statements of material facts or omitted to state material facts necessary to make not misleading the statements made, in light of the circumstances under which they were made; or (b) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of the BitConnect Coins.

193.     Defendants acted at least negligently with respect to the facts and circumstances described above.

194.     As a direct and proximate result of the foregoing, Defendants have each violated Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and (3).

195.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class Members have suffered damages in connection with their respective purchases of BitConnect Coins securities in the BitConnect Investments.

## COUNT IV – RESCISSION OF CONTRACT

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-159 above, and further allege:

196.     The terms of the BitConnect Investments constitute a contract between: (1) Plaintiffs and the Class Members, and (2) Defendants.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

197.    The contract was entered into by and between Defendants and each Class Member between November 15, 2016 and January 17, 2018.

198.    The terms of the BitConnect Investments called for an investment of cryptocurrency by Plaintiffs and the Class Members.

199.    The funds paid by Plaintiffs and the Class Members pursuant to the BitConnect Investments were pooled by Defendants in an effort by Defendants to secure a profit for themselves and the investors.  As a result, the investors, including Plaintiffs and the Class, shared in the risks and benefits of the investment.

200.    Plaintiffs and the Class Members relied on, and are dependent upon, the expertise and efforts of Defendants for their investment returns.

201.    The terms of the BitConnect Investments constitute an investment contract and is therefore subject to federal and state securities laws, including the registration requirements promulgated thereunder.

202.    No registration statement was filed or in effect with any federal or state regulatory body, and no exemption from registration exists with respect to the BitConnect Investments.

203.    As a result of Defendants' fraud, false representations, and violation of federal and state securities laws in connection with the BitConnect Investments, Plaintiffs and the Class Members state their demand that the Contract be rescinded and canceled.

204.    To the extent that Plaintiffs have received from Defendants any benefits through the contract -- though none are known to them at this time -- Plaintiffs hereby offers to restore to Defendants those benefits, once they are identified and can be quantified.

205.    As a direct and proximate cause of Defendants' conduct, Plaintiffs and the Class Members have been damaged.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

206.     Defendant BITCONNECT INTERNATIONAL PLC is subject to liability because it solicited and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.  Moreover, Defendant BITCONNECT INTERNATIONAL PLC is subject to liability because it is believed to control, or have obtained control over, a large portion of the assets invested by Plaintiffs and the Class Members which must be disgorged and returned to Plaintiffs and the Class Members in effectuating the rescission of the contract into which they were unlawfully led.

207.     Defendant BITCONNECT LTD. is subject to liability because it solicited and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.  Moreover, Defendant BITCONNECT LTD. is subject to liability because it is believed to control, or have obtained control over, a large portion of the assets invested by Plaintiffs and the Class Members which must be disgorged and returned to Plaintiffs and the Class Members in effectuating the rescission of the contract into which they were unlawfully led.

208.     Defendant BITCONNECT TRADING LTD. is subject to liability because it solicited and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.  Moreover, Defendant BITCONNECT TRADING LTD. is subject to liability because it is believed to control, or have obtained control over, a large portion of the assets invested by Plaintiffs and the Class Members which must be disgorged and returned to Plaintiffs and the Class Members in effectuating the rescission of the contract into which they were unlawfully led.

209.     Defendant JOSHUA JEPPESEN is subject to liability because he oversaw and contributed to development of the websites used by BITCONNECT to fraudulently offer and sell its BitConnect Investments and BitConnect Coins to investors and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.

210.      Defendant GLENN ARCARO is subject to liability because he solicited and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.

211.      Defendant TREVON BROWN a/k/a TREVON JAMES is subject to liability because he solicited and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.

212.      Defendant RYAN HILDRETH is subject to liability because he solicited and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.

213.      Defendant CRAIG GRANT is subject to liability because he solicited and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.

214.      Defendant JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK is subject to liability because he solicited and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.

215.      Defendant RYAN MAASEN is subject to liability because he solicited and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.

216.      Defendants JOHN DOE NOS. 2-10 are subject to liability because they solicited and otherwise participated in the sale to Plaintiffs and the Class Members of the misrepresented and unregistered securities identified herein.

SILVER MILLER
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

## COUNT V – UNREGISTERED OFFER AND SALE OF SECURITIES
## IN VIOLATION OF FLA. STAT. §§ 517.011, *et seq.*

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-159 above, and further allege:

217.    The BitConnect Investments called for an investment of money or assets by Plaintiffs and the Class Members -- specifically, the bitcoin, Ether, and other assets of value transferred to Defendants in exchange for the BitConnect Coins issued by Defendants.

218.    The funds paid by Plaintiffs and the Class Members were pooled by Defendants in the project in an effort by Defendants to secure a profit for themselves and the Plaintiff Class.  As a result, the Plaintiff Class -- as the investors -- shared in the risks and benefits of the investment scheme.

219.    Plaintiffs and the Class Members relied upon, and were dependent upon, the expertise and efforts of Defendants for their investment returns.

220.    Plaintiffs and the Class Members expected that they would receive profits from their investments in Defendants' efforts.

221.    BitConnect Coins constitute investment contracts and are therefore subject to the Florida Blue Sky Laws, including the registration requirements of Fla. Stat. § 517.07.

222.    No registration statements have been filed with the Florida Office of Financial Regulation or have been in effect with respect to any of the offerings alleged herein.

223.    Similarly, no exemption from registration exists with respect to the BitConnect Investments.

224.    By reason of the foregoing, Defendants have violated Fla. Stat. §§ 517.07, *et seq.*

225.    Defendant JOSHUA JEPPESEN is subject to liability under Fla. Stat. §§ 517.07 and 517.211 because he solicited and otherwise personally participated and aided the sale to Plaintiffs and the Class Members of the BITCONNECT-issued cryptocurrency at issue herein.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

226.     Defendant GLENN ARCARO is subject to liability under Fla. Stat. §§ 517.07 and 517.211 because he solicited and otherwise personally participated and aided the sale to Plaintiffs and the Class Members of the BITCONNECT-issued cryptocurrency at issue herein.

227.     Defendant TREVON BROWN a/k/a TREVON JAMES is subject to liability under Fla. Stat. §§ 517.07 and 517.211 because he solicited and otherwise personally participated and aided the sale to Plaintiffs and the Class Members of the BITCONNECT-issued cryptocurrency at issue herein.

228.     Defendant RYAN HILDRETH is subject to liability under Fla. Stat. §§ 517.07 and 517.211 because he solicited and otherwise personally participated and aided the sale to Plaintiffs and the Class Members of the BITCONNECT-issued cryptocurrency at issue herein.

229.     Defendant CRAIG GRANT is subject to liability under Fla. Stat. §§ 517.07 and 517.211 because he solicited and otherwise personally participated and aided the sale to Plaintiffs and the Class Members of the BITCONNECT-issued cryptocurrency at issue herein.

230.     Defendant JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK is subject to liability under Fla. Stat. §§ 517.07 and 517.211 because he solicited and otherwise personally participated and aided the sale to Plaintiffs and the Class Members of the BITCONNECT-issued cryptocurrency at issue herein.

231.     Defendant RYAN MAASEN is subject to liability under Fla. Stat. §§ 517.07 and 517.211 because he solicited and otherwise personally participated and aided the sale to Plaintiffs and the Class Members of the BITCONNECT-issued cryptocurrency at issue herein.

232.     Defendants JOHN DOE NOS. 2-10 are subject to liability under Fla. Stat. §§ 517.07 and 517.211 because they solicited and otherwise personally participated and aided the sale to Plaintiffs and the Class Members of the BITCONNECT-issued cryptocurrency at issue herein.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

233.     As a direct and proximate result of Defendants' unregistered sale of securities, Plaintiffs and the Class Members have suffered damages in connection with their respective purchases of BitConnect Coin securities in the BitConnect Investments.

## COUNT VI – FRAUD IN THE OFFER AND SALE OF SECURITIES IN VIOLATION OF FLA. STAT. §§ 517.011, *et seq.*

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-159 above, and further allege:

234.     Fla. Stat. § 517.301 makes it unlawful for anyone, in connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security: (a) to employ any device, scheme, or artifice to defraud; (b) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

235.     Defendants conducted an unlawful sale of securities as defined in Fla. Stat. §§ 517.011, *et seq.*

236.     More specifically, in connection with the offer to sell a security or investment to Plaintiffs and the Class Members, Defendants:

      (a)  employed a scheme to defraud Plaintiffs and the Class Members;

      (b)  obtained Plaintiffs' and the Class Members' invested funds and assets by means of untrue statements of material fact; and

      (c)  engaged in transactions and a course of business which operated as a fraud or deceit upon Plaintiffs and the Class Members.

237.     As Defendants intended, Plaintiffs and the Class Members justifiably relied upon the multiple material misrepresentations Defendants made to Plaintiffs and the Class Members in the course of their solicitations in connection with Plaintiffs' and the Class Members' investments in the BitConnect Investments.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

238.     As a direct and proximate result of Defendants' violations of Fla. Stat. §§ 517.011, *et seq.*, Plaintiffs and the Class Members have suffered damages.

239.     Defendants each participated in, or aided in, the unlawful procurement of Plaintiffs' and the Class Members' investments in the BitConnect Investments.

240.     Plaintiffs and the Class Members are entitled to an award of attorneys' fees pursuant to Fla. Stat. § 517.211.

## COUNT VII – VIOLATION OF FLORIDA'S
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,
## CHAPTER 501, § 211(1), FLA. STAT. ("FDUTPA")

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-159 above, and further allege:

241.     Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public, such as Plaintiffs and the Class Members in this case, from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

242.     Plaintiffs and the Class Members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

243.     By soliciting investor funds in the manner in which they did, Defendants engaged in "trade and commerce" within the meaning of Fla. Stat. §501.203(8).

244.     While FDUTPA does not define "deceptive" and "unfair," it incorporates by reference the Federal Trade Commission's interpretations of these terms.  The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

245.     The federal courts have defined a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers and have defined an "unfair trade practice" as any

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

act or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

246.    Moreover, as the securities laws are designed for consumer protection and "proscribe[ ] unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," a violation of the securities laws is a *per se* violation of FDUTPA.

247.    Defendants' acts and omissions of representing to Plaintiffs and the Class Members that, among other things:

> (a) BITCONNECT utilized a proprietary, secret trading system (the "volatility software") that helped its investors generate far-greater-than-average returns on their investments;
>
> (b) BITCONNECT's representation that a one percent (1%) daily return on investments was readily achievable regardless of market performance or the fluctuating value of bitcoin;
>
> (c) Investment returns were legitimately generated and were not simply a reallocation of new BITCONNECT investors' money used to pay the promised returns on outstanding BITCONNECT investors' investments in classic Ponzi scheme fashion;
>
> (d) The BitConnect Investments complied with all applicable securities laws; and
>
> (e) The BitConnect affiliates who were paid commissions for their sale of BitConnect Investments were properly registered to procure those sales

constitute both deceptive and unfair trade practices because the false representations and omissions made by Defendants have a tendency or capacity to deceive consumers, such as Plaintiffs and the Class Members, into investing in BITCONNECT's falsely-touted business and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

248.    As a result of Defendants' deceptive trade practices, Plaintiffs and the Class Members were deceived into investing their money with a company that functioned solely as an engine of fraud -- thus causing significant economic damage to Plaintiffs and the Class Members.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

249.     The materially false statements and omissions as described above, and the fact that this was a misleading investment, were unfair, unconscionable, and deceptive practices perpetrated on Plaintiffs and the Class Members which would have likely deceived a reasonable person under the circumstances.

250.     Defendants were on notice at all relevant times that the false representations of material facts described above were being communicated to prospective investors (such as Plaintiffs and the Class Members) by their authorized agents.

251.     As a result of the false representations and violations of the securities laws described above, Plaintiffs and the Class Members have been damaged by, among other things losing their invested capital.

252.     Plaintiffs and the Class Members have also been damaged in other and further ways subject to proof at trial.

253.     Therefore, Defendants engaged in unfair and deceptive trade practices in violation of Section 501.201 *et seq.*, Fla. Stat.

254.     Pursuant to Sections 501.211(1) and 501.2105, Fla. Stat., Plaintiffs and the Class Members are entitled to recover from Defendants the reasonable amount of attorneys' fees Plaintiffs and the Class Members have had to incur in representing their interests in this matter.

## COUNT VIII – FRAUDULENT INDUCEMENT

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 159 above, and further allege:

255.     Defendants, by acts of both omission and commission, made to Plaintiffs and the Class Members false statements of material facts about the services Plaintiffs and the Class Members would receive from BITCONNECT upon opening a BITCONNECT account and investing in the BitConnect Investments.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

256. Specifically, Defendants' representations to Plaintiffs and the Class Members that, among other things:

(a) BITCONNECT utilized a proprietary, secret trading system (the "volatility software") that helped its investors generate far-greater-than-average returns on their investments;

(b) BITCONNECT's representation that a one percent (1%) daily return on investments was readily achievable regardless of market performance or the fluctuating value of bitcoin;

(c) Investment returns were legitimately generated and were not simply a reallocation of new BITCONNECT investors' money used to pay the promised returns on outstanding BITCONNECT investors' investments in classic Ponzi scheme fashion;

(d) The BitConnect Investments complied with all applicable securities laws; and

(e) The BitConnect affiliates who were paid commissions for their sale of BitConnect Investments were properly registered to procure those sales

were false, and Defendants knew at the time the statements were made that the statements were false.

257. Defendants intended that Plaintiffs and the Class Members would be induced into action by relying upon the statements of fact made to them by and on behalf of Defendants.

258. In considering whether to open accounts at BITCONNECT, invest in the BitConnect Investments, and entrust to BITCONNECT their valuable assets; Plaintiffs and the Class Members reasonably and justifiably relied on the statements of fact made to them by and on behalf of Defendants.

259. As a direct and proximate result of Plaintiffs' and the Class Members' reliance on the statements made to them by Defendants, Plaintiffs and the Class Members have suffered damage.

## COUNT IX – FRAUDULENT MISREPRESENTATION

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-159 above, and further allege:

260. Defendants, by acts of both omission and commission, made to Plaintiffs and the Class Members false statements of material facts about the services Plaintiffs and the Class Members

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

would receive from BITCONNECT upon opening a BITCONNECT account and investing in the BitConnect Investments in exchange for the fees they were compelled to pay to maintain accounts at BITCONNECT.

261.    Specifically, Defendants' representations to Plaintiffs and the Class Members that, among other things:

(a)  BITCONNECT utilized a proprietary, secret trading system (the "volatility software") that helped its investors generate far-greater-than-average returns on their investments;

(b)  BITCONNECT's representation that a one percent (1%) daily return on investments was readily achievable regardless of market performance or the fluctuating value of bitcoin;

(c)  Investment returns were legitimately generated and were not simply a reallocation of new BITCONNECT investors' money used to pay the promised returns on outstanding BITCONNECT investors' investments in classic Ponzi scheme fashion;

(d)  The BitConnect Investments complied with all applicable securities laws; and

(e)  The BitConnect affiliates who were paid commissions for their sale of BitConnect Investments were properly registered to procure those sales

were false, and Defendants knew at the time the statements were made that the statements were false.

262.    Defendants' misrepresentations were made with reckless disregard for the truth.

263.    Defendants intended that Plaintiffs and the Class Members would be induced into action by relying upon the statements of fact made to them by and on behalf of Defendants.

264.    In considering whether to open accounts at BITCONNECT, invest in the BitConnect Investments, and entrust to BITCONNECT their valuable assets; Plaintiffs and the Class Members reasonably and justifiably relied on the statements of fact made to them by and on behalf of Defendants.

265.    As a direct and proximate result of Plaintiffs' and the Class Members' reliance on the statements made to them by Defendants, Plaintiffs and the Class Members have suffered damage.

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

## COUNT X – NEGLIGENT MISREPRESENTATION

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-159 above, and further allege:

266.     Defendants, by acts of both omission and commission, made to Plaintiffs and the Class Members false statements of material facts about the services Plaintiffs and the Class Members would receive from BITCONNECT upon opening a BITCONNECT account and investing in the BitConnect Investments in exchange for the fees they were compelled to pay to maintain accounts at BITCONNECT.

267.     Specifically, Defendants' representations to Plaintiffs and the Class Members that, among other things:

(a)  BITCONNECT utilized a proprietary, secret trading system (the "volatility software") that helped its investors generate far-greater-than-average returns on their investments;

(b)  BITCONNECT's representation that a one percent (1%) daily return on investments was readily achievable regardless of market performance or the fluctuating value of bitcoin;

(c)  Investment returns were legitimately generated and were not simply a reallocation of new BITCONNECT investors' money used to pay the promised returns on outstanding BITCONNECT investors' investments in classic Ponzi scheme fashion;

(d)  The BitConnect Investments complied with all applicable securities laws; and

(e)  The BitConnect affiliates who were paid commissions for their sale of BitConnect Investments were properly registered to procure those sales

were false, and Defendants knew, or should have known, at the time the statements were made that the statements were false.

268.     Defendants had no reasonable grounds upon which to believe the statements were true when made to Plaintiffs and the Class Members.

269.     Defendants intended that Plaintiffs and the Class Members would be induced into action by relying upon the statements of fact made to them by and on behalf of Defendants.

270.    In considering whether to open accounts at BITCONNECT, invest in the BitConnect Investments, and entrust to BITCONNECT their valuable assets; Plaintiffs and the Class Members reasonably and justifiably relied on the statements of fact made to them by and on behalf of Defendants.

271.    As a direct and proximate result of Plaintiffs' and the Class Members' reliance on the statements made to them by Defendants, Plaintiffs and the Class Members have suffered damage.

## COUNT XI – CONVERSION

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-159 above, and further allege:

272.    Plaintiffs transferred funds and assets to BITCONNECT for investment, and as a purported loan, to participate in the BitConnect Investments.

273.    BITCONNECT has kept Plaintiffs' and the Class Members' funds and assets after Plaintiffs and the Class Members requested their return, despite BITCONNECT's lack of any ownership interest in the assets and despite BITCONNECT's agreement in writing to return to Plaintiffs and the Class Members -- in the form of fiat currency (*i.e.*, U.S. Dollars or Euros), not BitConnect Coins -- all of Plaintiffs' and the Class Members' holdings.

274.    By refusing to return to Plaintiffs and the Class Members their assets, BITCONNECT intended to interfere with, and indeed has interfered with, Plaintiffs' and the Class Members' ownership and interest in those holdings and has deprived Plaintiffs and the Class Members of their property, permanently or temporarily.

275.    Upon information and belief, BITCONNECT has utilized Plaintiffs' and the Class Members' funds and assets to cover BITCONNECT's own business expenses and to enrich its Directors, shareholders, and affiliates, including Defendants JOSHUA JEPPESEN, GLENN ARCARO, TREVON JAMES, RYAN HILDRETH, CRAIG GRANT, JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK, RYAN MASSEN, and JOHN DOE NOS. 2-10.

- 49 -

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

276.    As a result of BITCONNECT's conversion of Plaintiffs' and the Class Members' funds and assets to its own corporate uses and the personal use of its Directors, shareholders, and affiliates; Plaintiffs and the Class Members have suffered damage.

## COUNT XII – CIVIL CONSPIRACY

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 159 above, and further allege:

277.    Defendants conspired with one another to perpetrate an unlawful act upon Plaintiffs and the Class Members or to perpetrate a lawful act by unlawful means, *to wit*: they made multiple misrepresentations of fact to Plaintiffs and the Class Members in an effort to extract from Plaintiffs and the Class Members funds, assets, and cryptocurrency to fund BITCONNECT's own business expenses and to enrich its Directors, shareholders, and affiliates, including Defendants JOSHUA JEPPESEN, GLENN ARCARO, TREVON JAMES, RYAN HILDRETH, CRAIG GRANT, JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK, RYAN MASSEN, and JOHN DOE NOS. 2-10, not to fund the purportedly legitimate purpose to which Plaintiffs and the Class Members were told by Defendants that their investment assets were being applied – all of which put Defendants' own pecuniary interest ahead of Plaintiffs' and the Class Members' welfare and economic safety.

278.    Defendants solicited and/or accepted from Plaintiffs and the Class Members large sums of funds, assets, and cryptocurrency while withholding from Plaintiffs and the Class Members certain material facts, including:

   (a) BITCONNECT did not utilize a proprietary, secret trading system (the "volatility software") that helped its investors generate far-greater-than-average returns on their investments;

   (b) BITCONNECT's representation that a one percent (1%) daily return on investments was readily achievable regardless of market performance or the fluctuating value of bitcoin;

   (c) Investment returns were not legitimately generated and were simply a reallocation of new BITCONNECT investors' money used to pay the

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

promised returns on outstanding BITCONNECT investors' investments in classic Ponzi scheme fashion;

(d) The BitConnect Investments did not comply with all applicable securities laws; and

(e) The BitConnect affiliates who were paid commissions for their sale of BitConnect Investments were not properly registered to procure those sales; and

(f) The "BCC School" orchestrated by Defendant GLENN ARCARO was not a "school" at all; rather, it was a mere conduit to get BCC School "graduates" to open up accounts at BITCONNECT, for which GLENN ARCARO and his team of affiliates reaped from BITCONNECT the riches of each client referral.

279. All Defendants agreed to the illicit purpose for garnering investment monies from Plaintiffs and the Class Members so that BITCONNECT's Directors, shareholders, and affiliates could enjoy lavish lifestyles with Plaintiffs' and the Class Members' funds, assets, and cryptocurrency.

280. Defendants were each aware of, and consented to, the misrepresentations detailed above and knew that the efforts to garner funds, assets, and cryptocurrency from Plaintiffs and the Class Members was all part of a fraud aimed solely at enriching BITCONNECT's Directors, shareholders, and affiliates without any intent to remunerate Plaintiffs and the Class Members in any legitimate way purported by the BitConnect Investments.

281. In furtherance of their conspiracy, Defendants made to Plaintiffs and the Class Members, or agreed to have someone make on their behalf, the false statements of fact detailed above and purposefully withheld from Plaintiffs and the Class Members certain material facts detailed above in a concerted effort to obtain Plaintiffs' and the Class Members' funds, assets, and cryptocurrency.

282. To fulfill their role in the conspiracy, the BITCONNECT corporate parties operated the BitConnect Websites and pretended to be operating a legitimate, legally-compliant trading exchange and lending platform.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

283.     To fulfill his role in the conspiracy, Defendant JOSHUA JEPPESEN oversaw and personally participated in developing the BitConnect Websites as well as BITCONNECT's business operations in the United States and Europe -- falsely representing that the operations were legitimate.

284.     To fulfill his role in the conspiracy, Defendant GLENN ARCARO managed, coached, and supported a United States-based team of BITCONNECT affiliates to sharpen their recruiting techniques and lure in BITCONNECT investors.  Defendant GLENN ARCARO is also believed to have created and orchestrated the BCC School, which was little more than a conduit to get BCC School "graduates" to open up accounts at BITCONNECT, for which GLENN ARCARO and his team of affiliates reaped from BITCONNECT the riches of each client referral.

285.     To fulfill their role in the conspiracy, Defendants TREVON JAMES, RYAN HILDRETH, CRAIG GRANT, CRYPTONICK, RYAN MASSEN, and JOHN DOES NOS. 2-10 served as United States-based BITCONNECT affiliates who used social media channels such as YouTube, Twitter, and Facebook to recruit unsuspecting investors in the United States and abroad to purchase BitConnect Investments.  For their efforts, Defendants TREVON JAMES, RYAN HILDRETH, CRAIG GRANT, JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK, RYAN MASSEN, and JOHN DOES NOS. 2-10 were paid large commissions and participated in a lucrative bonus program that provided them sizeable incomes.

286.     BITCONNECT conducted no legitimate business -- something of which Defendants JOSHUA JEPPESEN, GLENN ARCARO, TREVON JAMES, RYAN HILDRETH, CRAIG GRANT, JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK, RYAN MASSEN, and JOHN DOES NOS. 2-10 were aware and which they accepted as part of the scheme to defraud BITCONNECT investors and accountholders, including Plaintiffs and the Class Members.

287.     As a direct and proximate result of Defendants' conspiracy, Plaintiffs and the Class Members have suffered damage.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs CHARLES WILDES, FRANCISCO DORIA, AKIVA KATZ,

JAMES GURRY, RONALD NELSON, and JUSTIN PERRY, individually and on behalf of all others

similarly situated, respectfully pray for relief as follows:

(a) A declaration from this Court that this action is a proper class action, including certification of the proposed Class, appointment of Plaintiffs as the class representatives, and appointment of Plaintiffs' counsel as class counsel;

(b) An Order enjoining Defendants from making further transfers or dissipations of the investment funds and assets raised in connection with the promoted BitConnect Investments, or using such funds and assets in any further purchases or transactions;

(c) A judgment awarding Plaintiffs and the Class Members equitable restitution, including, without limitation, rescission of their investments in BITCONNECT, restoration of the *status quo ante*, and return to Plaintiffs and the Class Members all cryptocurrency or fiat currency paid to Defendants in connection with the BitConnect Investments as a result of Defendants' unlawful and unfair business practices and conduct;

(d) An award of any and all additional damages recoverable under law -- jointly and severally entered against Defendants -- including but not limited to compensatory damages, punitive damages, incidental damages, and consequential damages;

(e) An Order requiring an accounting of the remaining funds and assets raised from Plaintiffs and the Class in connection with the BitConnect Investments;

(f) An Order imposing a constructive trust over the funds and assets rightfully belonging to Plaintiffs and the Class;

(g) Pre- and post-judgment interest;

(h) Attorneys' fees, expenses, and the costs of this action; and

(i) All other and further relief as this Court deems necessary, just, and proper.

## PLAINTIFFS' DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in

this action of all issues so triable.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Respectfully submitted,

**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:      (954) 516-6000

By: _____
      DAVID C. SILVER
      Florida Bar No. 572764
      E-mail: DSilver@SilverMillerLaw.com
      JASON S. MILLER
      Florida Bar No. 072206
      E-mail: JMiller@SilverMillerLaw.com

      *Counsel for Plaintiffs*

Dated:  January 30, 2018

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com