# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

### Civil Action No. 9:18-cv-80086-DMM

CHARLES WILDES, individually; FRANCISCO DORIA, individually;
AKIVA KATZ, individually; JAMES GURRY, individually;
RONALD NELSON, individually; and JUSTIN PERRY, individually;
and on behalf of All Others Similarly Situated;

    Plaintiffs,

v.

BITCONNECT INTERNATIONAL PLC, a foreign corporation;
BITCONNECT LTD., a foreign corporation;
BITCONNECT TRADING LTD., a foreign corporation;
JOSHUA JEPPESEN, an individual; GLENN ARCARO, an individual;
TREVON BROWN a/k/a TREVON JAMES, an individual;
RYAN HILDRETH, an individual; CRAIG GRANT, an individual;
JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK, an individual;
RYAN MAASEN, an individual; and JOHN DOE NOS. 2-10, individuals;

    Defendants.

_____/

## **DECLARATION OF DAVID C. SILVER**

I, DAVID C. SILVER, declare and affirm the following:

1. My name is David C. Silver. I am an attorney licensed to practice law in the United States District Court for the Southern District of Florida; and I currently represent the plaintiffs and the putative plaintiff class ("Plaintiffs"), in the above-captioned lawsuit.

2. This Declaration is filed in support of Plaintiffs' Motion for Temporary Restraining Order (the "TRO Motion"), filed simultaneously herewith.

3. On January 24, 2018, Plaintiffs filed their Class Action Complaint in this matter. [Docket Entry No. ("DE") 1]. The pleading was amended on January 30, 2018 with the filing of an Amended Class Action Complaint [DE 5]. The Amended Complaint sets forth numerous claims against the defendants, *to wit*: claims for: (1) violations of federal securities laws, (2) violation of Florida

securities laws, (3) violation of Florida's Deceptive and Unfair Trade Practices Act, and (4) multiple common law claims, including rescission of contract, fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, conversion, and civil conspiracy.

4. BITCONNECT INTERNATIONAL PLC; BITCONNECT LTD.; and BITCONNECT TRADING LTD. (collectively "BITCONNECT") are all parts of the same foreign technology organization that conducted its business on the internet, principally by means of websites accessible at http://bitconnect.co and http://bitconnectcoin.co (the "BitConnect Websites").

5. At the heart of its business, BITCONNECT purported to offer investment opportunities that allow individuals to profit from: (1) BITCONNECT's trading of digital tokens through a proprietary, secret automated trading system it called its "volatility software," (2) its digital token (the BitConnect Coin [BCC]), and (3) its referral program. BITCONNECT offered investments (the "BitConnect Investments") to the general public, including the residents of Florida.

6. In essence, BITCONNECT created a trading and lending platform that promised substantial, fixed returns and a complete return of principal at a fixed time in the future that benefitted from volatility.

7. BITCONNECT touted its BitConnect Investments on the BitConnect Websites as a "safe way to earn a high rate of return on . . . investment[s] without having to undergo a significant amount of risk."

8. Cryptocurrency, however, is inherently volatile. Bitcoin, ether, and all cryptocurrency coins are volatile, unstable, subject to the whims of investors worldwide, and undergo huge price swings on a daily basis and across various different cryptocurrency exchanges.

9. BITCONNECT used sales agents, which it refers to as "affiliates," to direct investors to the BitConnect Websites for the purpose of purchasing BitConnect Investments. In return for funneling additional investors to BITCONNECT, the affiliates were paid sizeable commissions.

Defendants GLENN ARCARO, TREVON JAMES, RYAN HILDRETH, CRAIG GRANT, CRYPTONICK, and RYAN MAASEN were among the most influential, and most successful, of those affiliates.

10.     BITCONNECT encouraged its affiliates to promote the BitConnect Investments through social media, blogs, videos, websites, and newsletters by means of a referral, or commission, program. BITCONNECT created marketing materials which were used by its affiliates, including music videos, cartoons, and online presentations that describe BCC and the BitConnect Investments.

11.     Moreover, Defendants GLENN ARCARO, TREVON JAMES, RYAN HILDRETH, CRAIG GRANT, CRYPTONICK, and RYAN MAASEN encouraged their YouTube viewers and social media followers -- including Plaintiffs and the Class -- not to keep their investment returns; but instead to re-invest the daily interest earnings back into BITCONNECT. As a result, the typical user never actually made money; while the money generated by the "program" kept getting re-circulated into BITCONNECT.

12.     On January 4, 2018, the Texas State Securities Board issued to BITCONNECT an Emergency Cease and Desist Order in which the Securities Commissioner of the State of Texas presented his office's conclusion that, *inter alia*:

  (a) the BitConnect Investments are securities;
  (b) BITCONNECT had violated numerous securities regulations by offering the BitConnect Investments for sale in Texas;
  (c) BITCONNECT had engaged in fraud and made materially misleading statements about the BitConnect Investments that were likely to deceive the public; and
  (d) BITCONNECT's conduct, acts, and practices threaten an immediate and irreparable public harm.

13.     On January 12, 2018, the State of North Carolina's Department of the Secretary of State - Securities Division issued to BITCONNECT a Temporary Cease and Desist Order in which the State presented its conclusion that the BitConnect Investments were unregistered securities being

offered to the residents of the State and that those investments posed an immediate and irreparable harm to the residents of North Carolina.

14. In mid-January 2018, BITCONNECT boasted a market cap of over $2.5 billion. On January 17, 2018 -- as the unsustainable growth of BITCONNECT's scheme grew larger, and the sound of government regulators coming to take a closer look into BITCONNECT's operations grew louder -- BITCONNECT suddenly shut down its trading platform and lending program, a maneuver that precipitated an almost immediate ninety percent (90%) plummet in the value of BITCONNECT's investors' $2.5+ billion holdings.

15. Although BITCONNECT contended, in the wake of terminating its trading and lending functions, that it would continue to support the proprietary cryptocurrency token it had created and required its investors to purchase, that promise was hollow; as the only true value the token held was on BITCONNECT's own platform. The damage was already done, and investors holding BCC have suffered 99+% losses on their investments at BITCONNECT.

16. When the BITCONNECT lending program closed, the value of BCC plummeted from approximately $440 per BCC to approximately $11 per BCC; and that value -- as of the filing of this motion -- has since further dropped to approximately $4.50 per BCC.

17. Based on available information, tens of thousands of Americans -- and an equal number of victims, if not larger worldwide -- have invested in BITCONNECT and have lost money in its fraudulent scheme.

18. BITCONNECT and its well-compensated recruiters willfully failed to disclose and misrepresented material facts when offering the BitConnect Investments, including the following:

 (a) The identity of the principals of BITCONNECT and the true location of BITCONNECT's operations and management;

 (b) Information about the assets and liabilities of BITCONNECT and any other information that indicates the means by which BITCONNECT will

(b) provide investors with a guaranteed daily return, regardless of the value of bitcoin;

(c) Information about the proprietary, secret trading system (the "volatility software"), details of its trading records and historical performance, proof of its existence, and the risk factors associated with its use;

(d) That the BitConnect Investments are securities and are not registered with any government regulator, as required by state and federal law;

(e) That only registered dealers or agents can be paid commissions for referrals or sales of securities; and

(f) That BITCONNECT affiliates who receive such commissions for their sale of BitConnect Investments without being properly registered are doing so in violation of state and federal securities laws.

19. Just days after BITCONNECT imploded, several of the promoter Defendants have posted videos on their YouTube accounts promoting other "lending" sites, such as Davor, which operate exactly like BITCONNECT did.[1]  Davor, however, has already been issued an Emergency Cease and Desist Order by the Texas State Securities Board for all the same reasons BITCONNECT was issued a similar order a few weeks prior: securities registration violations, fraud in connection with the offer of investments, and promotion of misleading and deceptive statements that threaten immediate and irreparable public harm.[2]

20.   I have obtained what I believe to be the last known addresses of nearly all of the individual defendants[3]; however, as of the filing of this Declaration, process has only been effectuated upon one of those defendants (RYAN MAASEN).  I have been informed that several of the individual defendants have not yet been located and that one of them (GLENN ARCARO) is traveling through Europe indefinitely.

---

[1] *See, e.g.*, RYAN MAASEN (https://www.youtube.com/watch?v=mw317F5fkag), TREVON JAMES (https://www.youtube.com/watch?v=ogVkuwWPtF40).  Additional videos made by the promoter Defendants have since been deleted from YouTube.

[2] *See*, https://www.ssb.texas.gov/sites/default/files/ENF-18-CDO-1757_0.pdf.

[3] According to published information, JOSHUA JEPPESEN held the title of a Director at BITCONNECT, serving as the Development Director for BITCONNECT's operations in the United States and Europe. However, it appears he may have been using a pseudonym to hide his actual name and evade legal process.

21.     Moreover, the only contact information I have for the corporate BITCONNECT defendants is the information they each had registered in England and Wales under the Companies Act 2006, though numerous public reports have stated that the information listed by the BITCONNECT entities are false and that even if Plaintiffs were to serve notice at those addresses through the Hague Convention or otherwise, that notice would go unreceived.  Accordingly, Plaintiffs have not been able to provide the BITCONNECT corporate defendants notice of the TRO Motion.

22.     Given the significant fraud exhibited by Defendants, forestalling ruling on Plaintiffs' TRO Motion until all Defendants can be found and served before may only function to provide Defendants additional time to dissipate their assets.

23.     Indeed, it appears several of the defendants -- including Defendants MAASEN and JAMES -- have begun to move their assets into other high-risk and likely fraudulent lending schemes that function just like BITCONNECT, which may compromise the ability for Plaintiffs to obtain the equitable relief requested in the TRO Motion.

24.     Time is of the essence to protect Plaintiffs and the Class, and a Temporary Restraining Order is necessary to ensure that Plaintiffs and the Class have the ability to receive the equitable relief to which they are entitled.

## VERIFICATION

I, DAVID C. SILVER, hereby verify and declare under penalty of perjury that I am counsel for Plaintiffs in the above-captioned matter, that I have read the foregoing affidavit and know the contents thereof, and that the matters contained in the affidavit are true to my own knowledge.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

_____
DAVID C. SILVER

DATED this __5th__ day of February 2018.