# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

**Civil Action No. 9:18-cv-80086-DMM**

CHARLES WILDES, individually; FRANCISCO DORIA, individually;
AKIVA KATZ, individually; JAMES GURRY, individually;
RONALD NELSON, individually; and JUSTIN PERRY, individually;
and on behalf of All Others Similarly Situated;
    Plaintiffs,

v.

BITCONNECT INTERNATIONAL PLC, a foreign corporation;
BITCONNECT LTD., a foreign corporation;
BITCONNECT TRADING LTD., a foreign corporation;
JOSHUA JEPPESEN, an individual; GLENN ARCARO, an individual;
TREVON BROWN a/k/a TREVON JAMES, an individual;
RYAN HILDRETH, an individual; CRAIG GRANT, an individual;
JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK, an individual;
RYAN MAASEN, an individual; and JOHN DOE NOS. 2-10, individuals;
    Defendants.
_____/

## PLAINTIFFS' MOTION FOR LEAVE TO SERVE PROCESS ELECTRONICALLY

Plaintiffs CHARLES WILDES, FRANCISCO DORIA, AKIVA KATZ, JAMES GURRY, RONALD NELSON, and JUSTIN PERRY ("Plaintiffs"), individually and on behalf of all other persons similarly situated as defined in the Second Amended Class Action Complaint filed herein (Docket Entry No. ["DE"] 19), by and through undersigned counsel and pursuant to Fed.R.Civ.P. 4(e) and Local Civil Rule 7.1, hereby request entry of an Order permitting Plaintiffs to effectuate electronic service of process upon the following defendants in this matter: GLENN ARCARO, an individual; TREVON BROWN a/k/a TREVON JAMES, an individual; RYAN HILDRETH, an individual; and CRAIG GRANT, an individual (collectively "the Affiliate/Promoter Defendants") -- all of whom can be reached through electronic mail or social media (YouTube, Twitter, Instagram, etc.) but who have evaded traditional service of process in this matter.

In further support of their motion, Plaintiffs state as follows:

# INTRODUCTION

This nationwide class action is brought by Plaintiffs CHARLES WILDES, FRANCISCO DORIA, AKIVA KATZ, JAMES GURRY, RONALD NELSON, and JUSTIN PERRY individually and on behalf of a class of similarly situated investors (the "Class Members" or the "Class") who contributed millions of dollars' worth of cryptocurrency to a trading platform and lending program fraudulently promoted and operated by Defendants. In mid-January 2018, BITCONNECT[1] boasted a market cap of over $2.5 billion. However, that purported fortune appears to have been built through the use of fraudulent means and a wide-reaching Ponzi/pyramid scheme that defrauded investors, made a mockery of state and federal securities laws, and employed an army of social media mercenaries who were paid to bring more unsuspecting victims into the fraud.

Vital to the strength and expansion of BITCONNECT's pyramid scheme was BITCONNECT's enlisted army of multi-level affiliate marketers who were paid by BITCONNECT to use BITCONNECT-supplied materials to recruit new investors through eye-catching and interest-piquing social media channels, such as YouTube, Twitter, Instagram, and Facebook. The Affiliate/Promoter Defendants were among the more prominent BITCONNECT recruiters, but were certainly not the only ones to preach the false gospel of BITCONNECT to unsuspecting investors in the United States and abroad.

On January 17, 2018 -- as the unsustainable growth of BITCONNECT's scheme grew larger, and the sound of government regulators coming to take a closer look into BITCONNECT's operations grew louder -- BITCONNECT suddenly shut down its trading platform and lending

---

[1] As defined in the Second Amended Class Action Complaint [DE 19], the term "BITCONNECT" collectively refers to Defendants BITCONNECT INTERNATIONAL PLC, a foreign corporation; BITCONNECT LTD., a foreign corporation; BITCONNECT TRADING LTD., a foreign corporation -- three wholly interrelated corporate entities that were used interchangeably as instrumentalities for the fraud described in the Second Amended Class Action Complaint.

program, a maneuver that precipitated an almost immediate ninety percent (90%) plummet in the value of BITCONNECT's investors' $2.5+ billion holdings. Not surprisingly, as quickly as the value of Plaintiffs' and the Class' investments in BITCONNECT disappeared, so too did the Affiliate/Promoter Defendants. Several of them fled the United States, deleted from their social media accounts all of their BITCONNECT promotional materials, and sought shelter from the legal process that was about to come find them. Sure enough, by the time the instant lawsuit was commenced (just one week after BITCONNECT shut its doors), the Affiliate/Promoter Defendants had left their residences and went into hiding in hotels or other non-disclosed locations both domestically and abroad. As detailed in the affidavits of non-service attached hereto, multiple attempts at serving process upon the Affiliate/Promoter Defendants have been made, but the Affiliate/Promoter Defendants have successfully made themselves scarce and avoided being served.

Despite hiding from process servers and angry BITCONNECT victims, though, some of the Affiliate/Promoter Defendants continue to publish fresh content daily, if not more frequently, on social media channels -- both denying any responsibility for the harm inflicted upon Plaintiffs and the Class, and promoting new financial scams from which the Affiliate/Promoter Defendants seek to continue their dangerous activities. The Affiliate/Promoter Defendants are undeniably active (and bold) on social media, even as they evade process servers acting to formally serve them with a copy of the instant lawsuit.

The Affiliate/Promoter Defendants have gone into hiding and cannot be served under traditional methods of service of process. Thus, the most reasonably calculated method to formally apprise the Affiliate/Promoter Defendants of the pendency of this action and afford them an opportunity to present their objections is for the Court to authorize Plaintiffs to employ the now well-settled alternative method of electronic service, whether by electronic mail or through social media.

# PLAINTIFFS SHOULD BE PERMITTED TO
# SERVE THE AFFILIATE/PROMOTER DEFENDANTS ELECTRONICALLY

### ELECTRONIC SERVICE HAS BEEN AUTHORIZED BY THIS COURT ON NUMEROUS OCCASIONS

1. Service via the methods proposed herein has been approved by this Court on multiple occasions as valid and appropriate methods of service. *See*, *Leidel, et al. v. Project Investors, Inc.*, Case No. 9:16-cv-80060-KAM (S.D. Fla. March 29, 2016) (approving service by e-mail under Rule 4(e) upon absconded Florida resident; "The service authorized by this order will provide Defendants with sufficient notice and opportunity to be heard in this case."); *Tracfone Wireless, Inc. v. Hernandez*, 2015 WL 5165718, at *6 (S.D. Fla. Sept. 1, 2015) ("[T]he Court finds that it is proper to exercise its discretion under Fed.R.Civ.P. 4(f)(3) and allow service of process to be effectuated via FedEx and e-mail."); *Gaffigan v. Does 1-10*, 689 F.Supp.2d 1332, 1342 (S.D. Fla. 2010) ("Under certain circumstances, courts have allowed service by e-mail and have found that it was the most likely method to reach defendants."); *Chanel, Inc. v. Zhixian*, 2010 WL 1740695 (S.D. Fla. April 29, 2010) (Court approved service of process by e-mail and found that such service satisfies due process requirements).

2. Other courts have likewise approved service by electronic means, including through social media channels. *See, e.g.*, *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process."), cited with approval by *Gaffigan*, *supra*.; *AMTO LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at *7 (S.D.N.Y. June 1, 2015) (permitting service by e-mail on Russian defendant); *F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) (permitting service by e-mail and Facebook upon defendant in India); *Friendfinder*, 2007 WL 1140639, at *2 (permitting service by e-mail on defendants in India and Switzerland); *Marchex Sales, Inc. v. Tecnologia Bancaria, S.A.*, 2015 WL 3793731, at *5 (E.D. Va. June 15, 2015) (permitting service by e-mail on defendant in Switzerland); *St. Francis Assisi v. Kuwait Fin. House*, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016) (permitting service by Twitter); *United States v. The*

*Pub. Warehousing Co.*, 2017 WL 661580, at *4 (N.D. Ga. Feb. 17, 2017) (permitting service by LinkedIn); *WhosHere, Inc. v. Orun*, 2014 WL 670817, at *1 (E.D. Va. Feb. 20, 2014) (permitting service by Facebook and LinkedIn); *UBS Fin. Servs. Inc. v. Berger*, 2014 WL 12643321, at *3 (N.D. Cal. Apr. 24, 2014) (permitting service by e-mail and LinkedIn).

3. There would be no prejudice to the Affiliate/Promoter Defendants allowing for alternative service to their last known electronic address or through certain social media channels.

4. Moreover, the proposed methods of service are the fastest constitutionally-adequate methods and the most likely and most reasonably certain means by which to provide notice to the Affiliate/Promoter Defendants of the charges brought against them in this action and afford them an opportunity to present their answer to the charges against them.

### ELECTRONIC SERVICE IS REASONABLY CALCULATED TO APPRISE THE AFFILIATE/PROMOTER DEFENDANTS OF THE CHARGES AGAINST THEM AND AFFORD THEM AN OPPORTUNITY TO PRESENT THEIR DEFENSES

5. Electronic service is likely to reach each of the Affiliate/Promoter Defendants and is reasonably calculated, under all the circumstances, to apprise the Affiliate/Promoter Defendants of the pendency of the action and afford them an opportunity to present their objections.

6. "Service by e-mail alone comports with due process where," as here, "a plaintiff demonstrates that the e-mail is likely to reach the defendant." *F.T.C. v. PCCare247 Inc.*, Case No. 12-cv-7189-PAE, 2013 WL 841037, at *4 (S.D.N.Y. March 7, 2013) (collecting cases); *Rio Prop.*, 284 F.3d at 1017 ("Considering the facts presented by this case, we conclude not only that service of process by e-mail was proper -- that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond -- but in this case, it was the method of service most likely to reach [the defendant].").

7.      The Affiliate/Promoter Defendants each maintain active e-mail accounts and social media presences on YouTube, Twitter, Instagram, and Facebook -- even addressing on those channels the charges brought against them in this lawsuit, *to wit*:

**Glenn Arcaro**

8.      Process servers have attempted to serve GLENN ARCARO at his Moorpark, California home with a copy of the lawsuit in this matter; however, all of those efforts have been fruitless. *See*, **Exhibit "A"** hereto.

9.      Upon information and belief, GLENN ARCARO has been traveling across the globe (Bali, Hong Kong, Bali, Republic of Georgia, Maldives, and Colombia) since BITCONNECT ceased its business operations; and he has no known plans to return to the United States. The following is a snapshot of a recent discussion with GLENN ARCARO's assistant about his itinerary:



10.     While GLENN ARCARO is traveling abroad, the most effective and direct way to reach him is through his e-mail address: livefreenow@protonmail.com.

11. In fact, just a few weeks ago, counsel for the plaintiffs in a class action lawsuit against BITCONNECT related to the instant matter corresponded with GLENN ARCARO through that e-mail address to discuss the charges against BITCONNECT.[2]  GLENN ARCARO promptly responded in writing to the e-mail inquiry.[3]

12. Plaintiffs propose to serve GLENN ARCARO through his e-mail account (livefreenow@protonmail.com), with that communication providing notice of the lawsuit and directing him to a link containing copies of the Second Amended Class Action Complaint, summons, and all other materials required to be served.  In addition, a copy will also be sent to Malcolm S. McNeil, Esq. of Arent Fox (Los Angeles, CA) (Malcolm.McNeil@arentfox.com), the attorney who sent a "cease and desist" letter defending GLENN ARCARO against published allegations of wrongdoing in connection with GLENN ARCARO's involvement with BITCONNECT.

### Trevon Brown a/k/a Trevon James

13. TREVON BROWN a/k/a TREVON JAMES ("TREVON JAMES") has likewise evaded service of process, although indications on his very active social media channels suggest that he has not left the country.

14. According to videos TREVON JAMES has posted on YouTube and Instagram, he has left his Myrtle Beach, South Carolina home and is instead sequestering himself at a hotel (or at a variety of hotels) in or about South Carolina.

---

[2] *See*, *Paige v. BitConnect International PLC, BitConnect Ltd., BitConnect Trading Ltd., and Ryan Maasen*, U.S. District Court - Western District of Kentucky, Case No. 3:18-cv-00058-JHM-DW at Docket Entry No. (DE 22-5).

[3] *Id.*  A copy of their written exchange is attached hereto as **Exhibit "B"**.  Interestingly, GLENN ARCARO suggested that his attorney would provide a formal response on his behalf.  Upon information and belief, that attorney is Malcolm S. McNeil, Esq. of Arent Fox (Los Angeles, CA), who sent a January 24, 2018 "cease and desist" letter to a vocal critic of BITCONNECT and GLENN ARCARO.  *See*, https://www.youtube.com/watch?v=brbZKI3MzaM (YouTube video posting copy of the "cease and desist" letter signed by Mr. McNeil on behalf of his client, GLENN ARCARO).

15. Process servers attempting to serve him at his home with a copy of the lawsuit in this matter have been unsuccessful in finding him. *See*, **Exhibit "C"** hereto. As noted in the process server's notes, so too have U.S. Treasury agents stationed outside TREVON JAMES' home been unsuccessful in finding him.

16. Notwithstanding his efforts to evade being served with process and being apprehended by federal law enforcement agents, TREVON JAMES has been extremely active in posting fresh content on his YouTube, Instagram, and Twitter accounts. Attached hereto as **Exhibit "D"** is a composite snapshot of several of TREVON JAMES' recent social media postings, showing that he has posted several videos and comments within the past week.

17. TREVON JAMES even directly addressed this lawsuit in several videos he published, wherein he not only presented his defense but also gave BITCONNECT investors advice on who else to sue.[4] Unfortunately, he has deleted all of those videos from his YouTube channel.

18. Perhaps most audaciously, on March 2, 2018, TREVON JAMES sent a "tweet" to undersigned counsel in response to a message the undersigned had posted relating to the instant lawsuit:

---

[4] *See*, *e.g.*, https://www.youtube.com/watch?v=p_hHTPRax8k (TREVON JAMES defends himself against allegations of wrongdoing concerning his promotion of BITCONNECT investments).



19.     Plaintiffs propose to serve TREVON JAMES through his YouTube account (Trevon James)[5], his new Instagram account (CryptoTrevon)[6], and his Twitter account (@BitcoinTre)[7], with those communication providing notice of the lawsuit and directing him to a link containing copies of the Second Amended Class Action Complaint, summons, and all other materials required to be served.

---

[5] https://www.youtube.com/channel/UCWZbtMeOAb_qpEVUl551l7w.

[6] https://www.instagram.com/cryptotrevon/.

[7] https://twitter.com/bitcointre.

### Ryan Hildreth

20.     Process servers have attempted to serve RYAN HILDRETH at his Irvine, California home with a copy of the lawsuit in this matter; however, all of those efforts have been fruitless. *See*, **Exhibit "E"** hereto.

21.     Much like TREVON JAMES, RYAN HILDRETH has been extremely active on social media promoting cryptocurrency investing, even after the instant lawsuit accusing him of federal securities violations was filed.

22.     Attached hereto as **Exhibit "F"** is a composite snapshot of several of RYAN HILDRETH's recent social media postings, showing that he has posted several videos and comments within the past week.

23.     Plaintiffs propose to serve RYAN HILDRETH through his YouTube account (Ryan Hildreth)[8], his Twitter account (@ryan_hildreth)[9], and the e-mail account (ryanhildreth.rh@gmail.com) he publishes on his Facebook page, with those communication providing notice of the lawsuit and directing him to a link containing copies of the Second Amended Class Action Complaint, summons, and all other materials required to be served.

### Craig Grant

24.     Process servers have attempted to serve CRAIG GRANT at his Miami, Florida home with a copy of the lawsuit in this matter; however, he has thus far successfully evaded service. *See*, **Exhibit "G"** hereto.

25.     CRAIG GRANT was not only one of the most prolific BITCONNECT promoters on YouTube, he has -- since the instant lawsuit was filed -- published on YouTube a flurry of videos

---

[8] https://www.youtube.com/channel/UCmHkBmVjwPbtsa2jJhDc-Dw.

[9] https://twitter.com/ryan_hildreth.

- 10 -

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

in which he extensively discusses his role in the BITCONNECT scheme as well as his relationship with other defendants named in this action, including GLENN ARCARO and TREVON JAMES.

26. Attached hereto as **Exhibit "H"** is a composite snapshot of several of CRAIG GRANT's recent social media postings, showing that he has posted several videos and comments within the past week.

27. Plaintiffs propose to serve CRAIG GRANT through his YouTube account (Craig Grant)[10], his Twitter account (@craiggrant3)[11], and his Instagram account (CraigGrantNow)[12], with those communication providing notice of the lawsuit and directing him to a link containing copies of the Second Amended Class Action Complaint, summons, and all other materials required to be served.

### THE COURT'S USE OF DISCRETION IS WARRANTED HERE

28. Since BITCONNECT abruptly shuttered its business operations, the Affiliate/Promoter Defendants have largely gone into hiding -- except for their continued use of electronic mail and frequent appearances through their social media accounts and their willingness to discuss this lawsuit and how they would defend themselves.

29. Several of the Affiliate/Promoter Defendants have publicly conceded through their social media accounts that they are already aware of the lawsuit.

30. Due to the volatile -- and somewhat ephemeral -- nature of cryptocurrency, time is of the essence in this matter. Moreover, with each passing day, the value of the BitConnect Coins distributed to Plaintiffs and the Class continue to be reduced to nothingness as the worldwide cryptocurrency community comes to believe that which Plaintiffs already believe: that

---

[10] https://www.youtube.com/user/craigrantnow.

[11] https://twitter.com/craigrant3.

[12] https://www.instagram.com/craigrantnow/.

BITCONNECT is nothing more than a pyramid/Ponzi scheme whose self-created BitConnect Coins are worthless.

31. In light of the foregoing, the Court is warranted to exercise its discretion in allowing Plaintiffs to expeditiously serve process upon the Affiliate/Promoter Defendants through electronic means.

**WHEREFORE,** Plaintiffs CHARLES WILDES, FRANCISCO DORIA, AKIVA KATZ, JAMES GURRY, RONALD NELSON, and JUSTIN PERRY, individually and on behalf of all other persons similarly situated as defined in the Second Amended Class Action Complaint filed herein, respectfully moves this Honorable Court for entry of an Order granting this motion permitting electronic service upon Defendants GLENN ARCARO, an individual; TREVON BROWN a/k/a TREVON JAMES, an individual; RYAN HILDRETH, an individual; and CRAIG GRANT, an individual.

Respectfully submitted,

**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone: (954) 516-6000

By: _____
DAVID C. SILVER
Florida Bar No. 572764
E-mail: DSilver@SilverMillerLaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail: JMiller@SilverMillerLaw.com

*Counsel for Plaintiffs*

Dated: March 7, 2018