# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

### Civil Action No. 9:18-cv-80086-DMM

CHARLES WILDES, individually; FRANCISCO DORIA, individually;
AKIVA KATZ, individually; JAMES GURRY, individually;
RONALD NELSON, individually; and JUSTIN PERRY, individually;
and on behalf of All Others Similarly Situated;
      Plaintiffs,

v.

BITCONNECT INTERNATIONAL PLC, a foreign corporation;
BITCONNECT LTD., a foreign corporation;
BITCONNECT TRADING LTD., a foreign corporation;
JOSHUA JEPPESEN, an individual; GLENN ARCARO, an individual;
TREVON BROWN a/k/a TREVON JAMES, an individual;
RYAN HILDRETH, an individual; CRAIG GRANT, an individual;
JOHN DOE NO. 1 a/k/a NICHOLAS TROVATO a/k/a CRYPTONICK, an individual;
RYAN MAASEN, an individual; and JOHN DOE NOS. 2-10, individuals;
      Defendants.

_____/

### PLAINTIFFS' MOTION FOR LEAVE TO SERVE PROCESS
### BY INTERNATIONAL MAIL OR FEDEX AND BY ELECTRONIC MEANS
### ON BITCONNECT CORPORATE DEFENDANTS

Plaintiffs CHARLES WILDES, FRANCISCO DORIA, AKIVA KATZ, JAMES GURRY,

RONALD NELSON, and JUSTIN PERRY ("Plaintiffs"), individually and on behalf of all other

persons similarly situated as defined in the Second Amended Class Action Complaint filed herein

(Docket Entry No. ["DE"] 19), by and through undersigned counsel and pursuant to Fed.R.Civ.P.

4(f)(3), 4(h)(2), and Local Civil Rule 7.1, hereby request entry of an Order permitting Plaintiffs to

effectuate service of process by international mail or FedEx and by electronic means upon the

following defendants in this matter: BITCONNECT INTERNATIONAL PLC, a foreign

corporation; BITCONNECT LTD., a foreign corporation; and BITCONNECT TRADING LTD.,

a foreign corporation (collectively the "BITCONNECT Corporate Defendants").

In further support of their motion, Plaintiffs state as follows:

## INTRODUCTION

This nationwide class action is brought by Plaintiffs CHARLES WILDES, FRANCISCO DORIA, AKIVA KATZ, JAMES GURRY, RONALD NELSON, and JUSTIN PERRY individually and on behalf of a class of similarly situated investors (the "Class Members" or the "Class") who contributed millions of dollars' worth of cryptocurrency to a trading platform and lending program fraudulently promoted and operated by Defendants.  BITCONNECT INTERNATIONAL PLC, BITCONNECT LTD., and BITCONNECT TRADING LTD. -- each of which is a foreign for-profit company organized in England and Wales and incorporated under the Companies Act 2006 as a private company -- are all parts of the same foreign technology organization (collectively "BITCONNECT") that conducted its business on the internet, principally by means of websites accessible at www.bitconnect.co and www.bitconnectcoin.co.   The BITCONNECT Corporate Defendants are wholly interrelated and are used interchangeably as instrumentalities for the fraud described in the Second Amended Class Action Complaint.

According to their publicly-filed corporate registries, the BITCONNECT Corporate Defendants purport to maintain their principal places of business at the following addresses:

| | |
|---|---|
| BITCONNECT INTERNATIONAL PLC | Grant Thornton House 22 Melton Street, Kings Cross London, United Kingdom NW 1 2EP |
| BITCONNECT INTERNATIONAL PLC | The Panorama Park Street Ashford, United Kingdom TN24 8EZ |
| BITCONNECT TRADING LTD. | 23 St. Elizabeth Avenue Bootle, United Kingdom L20 6FA |

In mid-January 2018, BITCONNECT boasted a market cap of over $2.5 billion.  However, that purported fortune appears to have been built through the use of fraudulent means and a wide-reaching Ponzi/pyramid scheme that defrauded investors, made a mockery of state and federal

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

securities laws, and employed an army of social media mercenaries who were paid to bring more unsuspecting victims into the fraud.

On January 17, 2018 -- as the unsustainable growth of BITCONNECT's scheme grew larger, and the sound of government regulators coming to take a closer look into BITCONNECT's operations grew louder -- BITCONNECT suddenly shut down its trading platform and lending program, a maneuver that precipitated an almost immediate ninety percent (90%) plummet in the value of BITCONNECT's investors' $2.5+ billion holdings.  Not surprisingly, as quickly as the value of Plaintiffs' and the Class' investments in BITCONNECT disappeared, so too did the commonly-held belief that the BITCONNECT Corporate Defendants actually had their business operations based in the United Kingdom.  Despite BITCONNECT organizing its corporate entities in the United Kingdom, intrepid private investigations quickly revealed that the people actually running BITCONNECT were scattered across the globe in countries such as the Philippines, Russia, Hong Kong, and Malta.[1]  While it is not entirely clear who or where the actual principals behind the BITCONNECT Corporate Defendants are, it appears that none of them can be found at the addresses registered with government officials in the United Kingdom.

Because the BITCONNECT Corporate Defendants operate fluid, non-traditional businesses that do not require their key decisionmakers to occupy stationary places of business, Plaintiffs respectfully request that to formally apprise the BITCONNECT Corporate Defendants of the pendency of this action and afford them an opportunity to present their objections, Plaintiffs be authorized to simultaneously serve the BITCONNECT Corporate Defendants by international mail or FedEx and -- in an abundance of caution, and in conjunction with service by international carrier and FedEx -- by employing now well-settled alternative methods of electronic service, including

---

[1] *See, e.g.*, https://www.cryptowatchdogs.org/the-founder-of-bitconnect-exposed.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

service by electronic mail at BITCONNECT's known e-mail addresses ([support@bitconnect.co](support@bitconnect.co);
[support@bitconnectcoin.co](support@bitconnectcoin.co); [info@bitconnect.co](info@bitconnect.co); and [legal@bitconnect.co](legal@bitconnect.co)) and through a social
media channel at which BITCONNECT maintains an account (*e.g.*, Twitter: @bitconnect). All
BITCONNECT promotions were done over the internet and social media channels; therefore,
Plaintiffs respectfully request and submit that as a supplement to service by international mail or
FedEx, they should be permitted to serve BITCONNECT using the means by which the company
conducted its business and communicated with the members of the Class.

**PLAINTIFFS SHOULD BE PERMITTED TO
SERVE THE BITCONNECT CORPORATE DEFENDANTS
BY INTERNATIONAL MAIL OR FEDEX AND THROUGH ELECTRONIC MEANS**

**SERVICE BY INTERNATIONAL MAIL, FEDEX, AND ELECTRONIC MEANS
UNDER FEDERAL RULE OF CIVIL PROCEDURE 4
HAVE ALL BEEN AUTHORIZED BY THIS COURT ON NUMEROUS OCCASIONS**

1.      Rule 4(h)(2) of the Federal Rules of Civil Procedure provides that a "foreign
corporation . . . must be served . . . at a place not within any judicial district of the United States, in
any manner prescribed by Rule 4(f) for service an individual, except personal delivery under
(f)(2)(C)(i)."

2.      Rule 4(f)(3) of the Federal Rules of Civil Procedure provides that "an individual . . .
may be served at a place not within any judicial district of the United States . . . by other means not
prohibited by international agreement, as the court orders."

3.      Service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief." *Rio Prop.,
Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). To the contrary, "court-directed service
under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)" and "the advisory
notes indicate the availability of alternate service of process under Rule 4(f)(3) without first attempting
service by other means." *Id.* Of particular relevance here, "the advisory notes suggest that in cases of
'urgency,' **Rule 4(f)(3) may allow the district court to order a 'special method of service,' even**

- 4 -

**if other methods of service remain incomplete or unattempted**.”  *Id.* (emphasis added); *see also,* *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 563 (C.D. Cal. 2012) (“A plaintiff need not pursue other methods of service before requesting that the court authorize an alternative method under Rule 4(f)(3).”); *Williams-Sonoma, Inc. v. Friendfinder Inc.*, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (“Although . . . a plaintiff must obtain court approval before attempting to effect service [under] Rule 4(f)(3) before service will be considered effective, a plaintiff is not first required to attempt service under Rule 4(f)(1) or Rule 4(f)(2).”).

4.     Service via the methods proposed herein (by international mail or FedEx and by electronic means) has been approved by this Court on multiple occasions as valid and appropriate methods of service.  *See,* *Leidel, et al. v. Project Investors, Inc.*, Case No. 9:16-cv-80060-KAM (S.D. Fla. March 29, 2016) (approving service by **e-mail** upon absconded Florida resident; “The service authorized by this order will provide Defendants with sufficient notice and opportunity to be heard in this case.”); *Tracfone Wireless, Inc. v. Hernandez*, 2015 WL 5165718, at *6 (S.D. Fla. Sept. 1, 2015) (“[T]he Court finds that it is proper to exercise its discretion under Fed.R.Civ.P. 4(f)(3) and allow service of process to be effectuated via **FedEx and e-mail**.”); *In re Certified*, Adv. Pro. No. 11-02725-RAM (Bankr. S.D. Fla. Jan. 4, 2012) (approving service by **international mail and by FedEx** upon corporate defendants in United Kingdom); *Gaffigan v. Does 1-10*, 689 F.Supp.2d 1332, 1342 (S.D. Fla. 2010) (“Under certain circumstances, courts have allowed service by **e-mail** and have found that it was the most likely method to reach defendants.”); *Chanel, Inc. v. Zhixian*, 2010 WL 1740695 (S.D. Fla. Apr. 29, 2010) (Court approved service of process by **e-mail** and found that such service satisfies due process requirements).

5.     Other courts have likewise approved service by international mail, FedEx, and by electronic means, including through social media channels.  *See, e.g., Rio Properties, supra* at 1018 (“[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court,

- 5 -

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

**e-mail** may be the only means of effecting service of process."), cited with approval by *Gaffigan*, *supra*; *Shaw v. Vircurex*, Case No. 1:18-cv-00067-MEH (D. Colo. Feb. 21, 2018) (permitting service by **e-mail** to "customerservice@vircurex.com" upon foreign corporate defendant whose physical whereabouts are unknown and concealed); *AMTO LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at *7 (S.D.N.Y. June 1, 2015) (permitting service by **e-mail** on Russian defendant); *F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) (permitting service by **e-mail and Facebook** upon defendant in India); *Friendfinder*, 2007 WL 1140639, at *2 (permitting service by **e-mail** on defendants in India and Switzerland); *Marchex Sales, Inc. v. Tecnologia Bancaria, S.A.*, 2015 WL 3793731, at *5 (E.D. Va. June 15, 2015) (permitting service by **e-mail** on defendant in Switzerland); *St. Francis Assisi v. Kuwait Fin. House*, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016) (permitting service by **Twitter**); *United States v. The Pub. Warehousing Co.*, 2017 WL 661580, at *4 (N.D. Ga. Feb. 17, 2017) (permitting service by **LinkedIn**); *WhosHere, Inc. v. Orun*, 2014 WL 670817, at *1 (E.D. Va. Feb. 20, 2014) (permitting service by **Facebook and LinkedIn**); *UBS Fin. Servs. Inc. v. Berger*, 2014 WL 12643321, at *3 (N.D. Cal. Apr. 24, 2014) (permitting service by **e-mail and LinkedIn**); *Ehrenfeld v. Salim a Bin Mahfouz*, 2005 WL 696769, at *3 (S.D.N.Y. March 23, 2005) (approving service by **certified mail or FedEx**).

6.       As this Court recently stated:

> The Court is required to examine three factors in determining whether to exercise its discretion and permit alternative service of process as requested by Plaintiffs.  First, the Court must be satisfied that the proposed method of service is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Second, the Court must determine that the proposed method of service "minimizes offense to foreign law."  Third, the Court must determine that the facts and circumstances warrant exercise of its discretion under Federal Rule of Civil Procedure 4(f).

*Ghostbed, Inc. v. Casper Sleep, Inc.*, 315 F.R.D. 689, 693-694 (S.D. Fla. 2016) (citations omitted).

7.      As demonstrated below, service upon the BITCONNECT Corporate Defendants by international mail, FedEx, and electronic means satisfies all of the factors the Court must consider.

### SERVICE BY INTERNATIONAL MAIL, FEDEX, AND ELECTRONIC MEANS IS REASONABLY CALCULATED TO APPRISE THE FOREIGN DEFENDANTS OF THE CHARGES AGAINST THEM AND AFFORD THEM AN OPPORTUNITY TO PRESENT THEIR DEFENSES

8.      Service by international mail, FedEx, and electronic means is likely to reach each of the BITCONNECT Corporate Defendants and is reasonably calculated, under all the circumstances, to apprise the BITCONNECT Corporate Defendants of the pendency of the action and afford them an opportunity to present their objections.

### International Mail and FedEx

9.      Service of process by international mail or FedEx comports with the constitutional notions of due process in that it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

10.      Service by such methods has been permitted by several federal courts, including this court.  *See*, *In re Certified*, *supra* (approving service by **international mail and by FedEx** upon corporate defendants in United Kingdom); *Ehrenfeld*, *supra* (approving service by **certified mail or FedEx**); *Mainstream Media, EC v. Riven*, 2009 WL 2157641, at *3 (N.D. Cal. July 17, 2009) (noting that previously the "court granted [Plaintiff's] motion for alternative service on [Defendant] pursuant to Federal Rule of Civil Procedure 4(f)(3), directing that the prior delivery of service documents by [Plaintiff] to [Defendant] via **e-mail, international mail, and international courier (Federal Express)** was effective service of process."); *Broadfoot v. Diaz (In re Int'l Telemedia Assoc.)*, 245 B.R. 713, 719-720 (Bankr. N.D. Ga. 2000) (authorizing service via **facsimile, ordinary mail, and e-mail**).

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

11.     Plaintiffs propose to serve the BITCONNECT Corporate Defendants by international mail or FedEx at the registered addresses for each of the BITCONNECT Corporate Defendants, with each communication providing notice of the lawsuit and attaching copies of the Second Amended Class Action Complaint, summons, and all other materials required to be served.

12.     Following service of the Second Amended Class Action Complaint, summons, and all other materials required to be served, Plaintiffs will file with the Court a copy of the international mailing or FedEx "proof of signature" or substantially similar document as proof of service pursuant to Fed.R.Civ.P. 4(*l*)(2)(B), which provides that when service is made pursuant to Fed.R.Civ.P. 4(f)(2) or 4(f)(3), service may be proved "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee."  Fed.R.Civ.P. 4(*l*)(2)(B).

**Electronic Means**

13.     "Service by e-mail alone comports with due process where," as here, "a plaintiff demonstrates that the e-mail is likely to reach the defendant."  *F.T.C. v. PCCare247 Inc.*, 2013 WL 841037, at *4 (S.D.N.Y. March 7, 2013) (collecting cases); *Rio Properties, supra* at 1017 ("Considering the facts presented by this case, we conclude not only that service of process by e-mail was proper -- that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond -- but in this case, it was the method of service most likely to reach [the defendant].").

14.     Although the people who operate the BITCONNECT Corporate Defendants have not publicly revealed themselves, the companies still maintain numerous e-mail addresses at which they can be reached: support@bitconnect.co; support@bitconnectcoin.co; info@bitconnect.co; and legal@bitconnect.co.

15.    BITCONNECT also maintains a presence on different social media platforms, including Twitter (@bitconnect).[2]

16.    Plaintiffs propose to serve the BITCONNECT Corporate Defendants by e-mail, with each communication providing notice of the lawsuit and attaching copies of the Second Amended Class Action Complaint, summons, and all other materials required to be served.

17.    Additionally, Plaintiffs propose to serve the BITCONNECT Corporate Defendants through BITCONNECT's Twitter account, with that communication providing notice of the lawsuit and directing the BITCONNECT Corporate Defendants to a link containing copies of the Second Amended Class Action Complaint, summons, and all other materials required to be served.

18.    Following electronic service of the Second Amended Class Action Complaint, summons, and all other materials required to be served, Plaintiffs will file with the Court, as proof of service, a document detailing the date, time, and method of electronic service. *Collins v. Doe*, 2012 U.S. Dist. LEXIS 56492, at *4 (S.D. Tex. Apr. 23, 2010) (granting motion for substituted service to be effected "on the successful completion of [an] e-mail transmission" to "provmodel74@gmail.com"). *See also*, Fed.R.Civ.P. 4(*l*)(2)(B), which provides that when service is made pursuant to Fed.R.Civ.P. 4(f)(2) or 4(f)(3), service may be proved "by other evidence satisfying the court that the summons and complaint were delivered to the addressee."

---

[2] https://twitter.com/bitconnect?lang=en.  Although BITCONNECT has not published any fresh postings on Twitter since its abrupt mid-January 2018 closure, the BITCONNECT Twitter account appears to still be an active account and is believed to still be monitored by BITCONNECT.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

### SERVICE BY INTERNATIONAL MAIL, FEDEX, AND ELECTRONIC MEANS UPON THE PURPORTED BRITISH DEFENDANTS DOES NOT OFFEND THE NATIVE LAWS OF THE UNITED KINGDOM AND COMPORTS WITH DUE PROCESS

19.    Although service of process upon foreign individuals or entities typically requires compliance with the conditions of the Hague Service Convention,[3] Plaintiffs respectfully submit that Convention does not apply in an instance like the one presented herein, because the true addresses of the people who operate the BITCONNECT Corporate Defendants are unknown.  *See, e.g.*, *Blumedia, Inc. v. Sordid Ones BV*, 2011 WL 42296, at *3 (D. Colo. Jan. 6, 2011) (noting that the Hague Service Convention does not apply "where the address of the person to be served with the document is unknown") (quoting Service Abroad of Judicial and Extrajudicial Documents, February 10, 1969, 20 U.S.T. 361); *CGC Holding Co., LLC v. Hutchens*, 2011 WL 2559807, at *2 (D. Colo. June 28, 2011) (discussing the Hague Service Convention's inapplicability where defendants' addresses are unknown); *Prediction Co. LLC v. Rajgarhia*, 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention . . . because [defendant's] address is not known to [plaintiff].").

20.    To the extent the Court deems that the requirements of the Hague Service Convention do apply to the instant matter, Plaintiffs' request still satisfies the requirements set forth thereunder.

21.    Article 10(a) of the Hague Service Convention provides that if the country of destination does not object, the Hague Service Convention does not change the freedom to send judicial documents by postal channels directly to persons abroad.

22.    The United Kingdom is a signatory to the Hague Service Convention, which has no specific prohibition that prevents service by international mail, FedEx, or through electronic means.

---

[3] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Criminal Matters (November 15, 1965) (the "Hague Service Convention").

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

### International Mail and FedEx

23.    The United Kingdom does not object to judicial documents being sent by postal channels pursuant to Article 10(a).  *See*, *Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004) (noting that the United Kingdom does not object to judicial documents being sent by postal channels); *see also*, Hague Convention on Private International Law's official website (www.hcch.net), addressing status of United Kingdom's position with respect to particular articles of the Hague Service Convention, which states that with respect to Article 10(a), the United Kingdom has "no opposition."[4]

24.    Numerous federal circuit courts and district courts -- including several district courts within the Eleventh Circuit -- have held that Article "10(a) permits service by mail unless the country has objected to this method."  *Curcuruto v. Cheshire*, 864 F. Supp. 1410 (S.D. Ga. 1994) ("So long as no objection is made by the country where service is being attempted, service by registered mail should be permitted under Article 10(a) of the Hague Convention as an effective means of service."); *Lestrade v. U.S.*, 945 F. Supp. 1557 (S.D. Fla. 1996) (service of IRS petition by mail satisfied Hague Convention); *Conax Florida Corp. v. Astrium Ltd.*, 499 F.Supp.2d 1287, 1293 (M.D. Fla. 2007) (authorizing service by mail upon finding that "Article 10(a) is applicable to service of process"); *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986) (the Second Circuit approved a German plaintiff's service of process by mail, when the plaintiff filed suit in Germany and served by registered mail a defendant in the United States).

### Electronic Means

25.    Electronic service is not prohibited by international agreement (including the Hague Service Convention) and poses minimal, if any, offense to the laws of the United Kingdom.  *See*, *e.g.*, *Jenkins v. Pooke*, 2009 WL 412987 (N.D. Cal. Feb. 17, 2009) (permitting electronic service of process

---

[4] *See*, https://assets.hcch.net/docs/6365f76b-22b3-4bac-82ea-395bf75b2254.pdf at United Kingdom (Contracting State No. 69).

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

upon defendant in United Kingdom; "[T]here are no other international agreements that would prohibit service of process in the United Kingdom via electronic mail.").

26.    Many courts have authorized electronic service upon defendants abroad where the country in which they reside does not prohibit such service. *See, e.g., AMTO LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at *7 (S.D.N.Y. June 1, 2015) (permitting service by e-mail on Russian defendant); *F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) (permitting service by e-mail and Facebook upon defendant in India); *Friendfinder, supra*, at *2 (permitting service by e-mail on defendants in India and Switzerland); *Marchex Sales, Inc. v. Tecnologia Bancaria, S.A.*, 2015 WL 3793731, at *5 (E.D. Va. June 15, 2015) (permitting service by e-mail on defendant in Switzerland); *St. Francis Assisi v. Kuwait Fin. House*, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016) (permitting service by Twitter); *United States v. The Pub. Warehousing Co.*, 2017 WL 661580, at *4 (N.D. Ga. Feb. 17, 2017) (permitting service by LinkedIn); *WhosHere, Inc. v. Orun*, 2014 WL 670817, at *1 (E.D. Va. Feb. 20, 2014) (permitting service by Facebook and LinkedIn); *UBS Fin. Servs. Inc. v. Berger*, 2014 WL 12643321, at *3 (N.D. Cal. Apr. 24, 2014) (permitting service by e-mail and LinkedIn).

27.    In light of the foregoing, the proposed method of service minimizes offense (if any offense even exists) to the laws of the United Kingdom.

## THE COURT'S USE OF DISCRETION UNDER FED.R.CIV.P. 4(f) IS WARRANTED HERE

28.    Lastly, the facts and circumstances warrant exercise of the Court's discretion under Federal Rule of Civil Procedure 4(f).

29.    Since BITCONNECT abruptly shuttered its business operations, the people who operate the BITCONNECT Corporate Defendants have largely gone into hiding, though the companies still purport to maintain physical business addresses in the United Kingdom and maintain numerous e-mail addresses and social media accounts at which they can be reached.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

30.     Due to the volatile -- and somewhat ephemeral -- nature of cryptocurrency, time is of the essence in this matter.  Moreover, with each passing day, the value of the BitConnect Coins distributed to Plaintiffs and the Class continue to be reduced to nothingness as the worldwide cryptocurrency community comes to believe that which Plaintiffs already believe: that BITCONNECT is nothing more than a pyramid/Ponzi scheme whose self-created BitConnect Coins are worthless.

31.     There would be no prejudice to the BITCONNECT Corporate Defendants (which purport to be based in the United Kingdom) allowing for alternative service to their last known business address, last known electronic address, or through certain social media channels.

32.     Moreover, the proposed methods of service -- which comply with Fed.R.Civ.P. 4 -- are the fastest constitutionally-adequate methods and the most likely and most reasonably certain means by which to provide notice to the BITCONNECT Corporate Defendants of the charges brought against them in this action and afford them an opportunity to present their answer to the charges against them.

33.     In light of the foregoing, the Court is warranted to exercise its discretion in allowing Plaintiffs to expeditiously serve process upon the BITCONNECT Corporate Defendants through international mail, FedEx, and electronic means.

**WHEREFORE,** Plaintiffs CHARLES WILDES, FRANCISCO DORIA, AKIVA KATZ, JAMES GURRY, RONALD NELSON, and JUSTIN PERRY, individually and on behalf of all other persons similarly situated as defined in the Second Amended Class Action Complaint filed herein, respectfully moves this Honorable Court for entry of an Order granting this motion permitting service of process by international mail or FedEx and by electronic means upon Defendants BITCONNECT INTERNATIONAL PLC, a foreign corporation; BITCONNECT LTD., a foreign corporation; and BITCONNECT TRADING LTD., a foreign corporation.

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

Respectfully submitted,

**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:        (954) 516-6000

By: _____
        DAVID C. SILVER
        Florida Bar No. 572764
        E-mail: DSilver@SilverMillerLaw.com
        JASON S. MILLER
        Florida Bar No. 072206
        E-mail: JMiller@SilverMillerLaw.com

        *Counsel for Plaintiffs*

Dated:  March 12, 2018