## THE UNTIED STATES DISTRIC COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ D.C.

FEB 2 2 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

PATRICK ARGIRO                          )

        Plaintiff'                      )

                      )        CASE No.

                      )

                      )        **VERIFIED AMENDED COMPLAINT**

**V.**                     )        **FOR DECLARATORY RELIEF**

                      )        **AND DAMAGES**

                      )

                      )

BITCONNECT INTERNATIONAL, PLC,          )

A foreign corporation,                  )

BITCONNECT LTD., a foreign corporation  )

BITCONNECT TRADING LTD.,                )

A foreign corporation,                  )

GLENN ARCARO, an individual,            )

TREVON BROWN, a/k/a TREVON JAMES,       )

An individual,                          )

RYAN HILDRETH, an individual,           )

CRAIG GRANT, an individual,             )

JOHN DO NO., a/k/a CRYPTONICK,          )

~~RYAN HILDRETH~~                        )

RYAN MAASEN                             )

JOHN DOE 2-10, individuals              )

                      )

           Defendants                  )

                      )

## COMPLAINT

Plaintiff, Patrick Argiro, ("Argiroi"), Pro-Se, for a Complaint against Defendants,

individually, and collectively plead under the statute engaged in "racketeering activity"

Bitconnect International, ("BCI"), Bitconnect LTD, ("LTD"), Bitconnect Trading, LTD., Tibbetts,

1

Keating & Butler, ("TRADING"), Glenn Arcaro ("Arcaro"), Trevon Borwn, ("BROWN"), Ryan Hildreth, ("HILDRETH"),Carig Grant, ("GRANT"), state as follows:

## INTRODUCTION

1.  Bitconnect scammed thousands of Floridians and hundreds of thousands of Americans out of millions and millions of dollars through a website called bitconnect.co.

2.  Bitconnect took advantage of the increased attention, interest and success of cryptocurrencies and legitimate companies and technology to convince Plaintiff and the class thatthey would make money on their investment in Bitconnect's product.

3.  As part of their scam, Bitconnect relied upon, communicated with and otherwise benefited from people like Maasen. Maasen created YouTube videos that marketed Bitconnectand convinced people to deposit money onto Bitco nnect's website.

4.  But Bitconnect was both a pyramid scheme and a Ponzi scheme. That is, it reliedon new money from new users, who were in turn expected to get more new users to produce morenew money, while not actually engaging in any real activity that would produce income, profits or benefit to investors.

5.  In its scheme, Bitconnect required Plaintiff and the Class to provide Bitconnect with Bitcoin, which it would exchange for Bitconnect Coins ("BCC"). With this transaction, Bitconnect promised to Plaintiff and the Class fixed returns as well as a guarantee that the principalinvestment/loan amount would be paid in full on date certain.

6.   Instead, Bitconnect shut down its platform, took all of Plaintiff and the Class's money, and left them with BCC, which is either entirely worthless or has significantly less valuethan Bitconnect promised.

7.   Plaintiff was damaged and Bitconnect and Maasen have profitedhandsomely at the expense of Plaintiff and the Class.

8.   Plaintiff seeks monetary damages for these losses, in an amount to be determinedat trial.

9.   Plaintiff also seeks injunctive relief, in the form of: (1) specific enforcement and/orrescission of the contract between Bitconnect and Plaintiff ; (2) a return of all moneyand/or cryptocurrencies given to Bitconnect by Plaintiff ; (3) disgorgement of allmonies earned by Defendants due to their conduct; and/or (4) an immediate order enjoiningBitconnect and its owners, members and Board of Directors from transferring, selling, spendin or otherwise dissipating assets so that Plaintiff can recover the money due and owing to him.

10.  This is a federal-question and diversity action involving statutory claims under the Federal Statutes, illustrated herein, and common law claims under Florida law. Plaintiffs assert claims against Defendants federal unfair competition, tortious interference with contract, breach of contract, and common law misappropriation Conversion of assets, commingling, embezzlement and theft of funds.

11.  Defendants used their legal relationship to intentionally and maliciously interfere with Plaintiffs' contracts and business relations in the industry.

12.  The relationship was created as an elaborate artifice, using multiple level

3

Defendants to unlawfully induce Plaintiff to turn over assets.

13.     The combination of these acts as properly plead is an enterprise as defined under 18

USC Section 1961(4).

14.     The primary cause of this action is a widespread criminal *enterprise* engaged in a

*pattern of racketeering activity* across State lines, and a conspiracy to engage in

*racketeering activity* involving numerous RICO predicate acts during the past ten (10)

calendar years.

15.     The predicate acts alleged here cluster around obstruction of justice, obstruction of

civil investigations, interference with a judicial proceeding, filing false documents,

obstruction of State and local law enforcement, forgery, altering legal documents,

intentional interference with a contract and lease agreement, disenfranchisement of

a business and dismantling of same in violation of same 18 U.S.C. §§ 2319, 2320,

1512, 1513, 2315, 1503, 1510, 1511, and 1581 and 1588 respectively.

16.     Other RICO predicate acts, although *appearing* to be isolated events, were actually

part of the overall conspiracy and *pattern of racketeering activity* alleged herein, *e.g.*

mail fraud and bank fraud.  See 18 U.S.C. §§1341 and 1344 respectively.

17.     The primary objective of the racketeering *enterprise* has been to inflict severe and

sustained economic hardship upon Plaintiff, with the intent of impairing,

obstructing, preventing and discouraging Plaintiff from continuing doing business as

it had in the Defendant premises for over twenty years.

18.     At all times relevant to this action, Defendants conducted the affairs of the

enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §

4

1962(c), (d)

19.     Under 18 U.S.C. § 1961(1), "racketeering activity" includes any act under 18 U.S.C. § 1343 (wire fraud) or 18 U.S.C. § 1341 (mail fraud). The Defendants voluntarily and intentionally devised or participated in a scheme to defraud others out of money. The Defendants did so with the intent to defraud. It was reasonably foreseeable that interstate wire or mail communications would be used in furtherance of their fraudulent activities and, in fact, interstate mail wire communications were used in furtherance of their fraudulent activities.

20.     In furtherance of the conspiracy to violate 18 U.S.C. § 1962 (c), Defendants caused to be transmitted in interstate commerce materially incomplete disclosure documents and induced veterans to enter into agreements that are void and unenforceable under federal law, all in violation of the Federal Anti-Assignment Acts, 18 U.S.C.§ 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 2 (aiding and abetting wire fraud), 18 U.S.C. § 1962 (c) (RICO) and 18 U.S.C. § 1962 (d) (RICO Conspiracy)

21.     The purpose of the enterprise is to enrich the Defendants by inducing or defrauding Defendant.

22.     The Defendants have engaged in "a pattern of racketeering activity" by committing or aiding and abetting in the commission of at least two acts of racketeering activity (i.e., at least wire fraud and mail fraud) within the last 10 years within the meaning of 18 U.S.C. §1961(5). To wit; (1) fraudulently and intentionally terminate the lease agreement to the business premises, (2) forge legal documents and use in a legal proceeding, (3) elicited illegal information about the business practices of Plaintiff

and the profitability of said company, (4) eradicate any efforts to settle and conspire with other to close the business and remove Plaintiff from the business premises, (5) negotiating in bad faith to steal the corporate portfolio of business, the identity and clientele, (4) intentionally engage others to establish the same business and expose the true intent to defraud Plaintiff, (5) Reap millions of dollars annually through this fraudulent scheme, at the expense of Plaintiff.

23.    In addition, thereto, the Defendants Fraud Scheme was a violation of the Connecticut fraud statute, Ann. § 18.2-178

24.    Further, Defendant continues to breach the agreement and its incorporated terms and conditions, specifically profit from the new tenant business in the premises. Defendants conduct constitutes wanton and malicious behavior warranting punitive damages.

25.    Defendant's conduct as alleged above violates multiple state and federal laws and constitutes unlawful business practices within the meaning of Connecticut Business & Professions Code § 735.

26.    By virtue of the acts described above, and in violation of 31 U.S.C. §§ 3729-3733, for each of the "illegal acts", (1) Fraud in the inducement to vacate the premises, (2) false promises and representations in a business negotiation, (3) Fraudulent representations to a court in a legal proceeding, (4) forgery and illegal execution of a general release, (5) myriad of lies, deceptive statement and fraudulent representations identified herein and (6) defendants knowingly made, used, or caused to be made or used, false records or statements to get/material to false or

fraudulent control of the Plaintiff business and earned good will. In violation of U.S.C. § 3729(a)(2) (1986) and 31 U.S.C. § 3729(a)(1)(B) (West 2010).

27. These deliberately false associations that Defendant has created between and Plaintiffs threaten to confuse consumers, deceive the public, and damage Plaintiffs' businesses.

28. As a result, the Plaintiff has incurred actual damages, exclusive of interest and costs, in an amount to be determined at trial. 43. Pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(2)(1986) and 31 U.S.C. § 3729(a)(1)(B) (West 2010), the defendant is liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty for each of the false or fraudulent claims herein, plus three (3) times the amount of damages under the statute.

29. Plaintiffs seek damages, declaratory judgment and injunctive relief as appropriate

## JURISDICTION

30. This Court has original jurisdiction in this action based on 28 USCS § 1331, 1332, 1367 and 1391 as there is Federal Question Jurisdiction derived from Federal statutory and decisional law involving the first and third causes of action.

31. The court has Supplemental Jurisdiction is based on 28 USCS § 1367 as the second cause of action derives from State law and arises from the same operative facts because they are so related to Plaintiff's federal-question claims that they are part of the same case or controversy.

32. **This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.**

7

§ 1332(d), because the amount incontroversy exceeds $5,000,000, exclusive of costs
and interest; and minimal diversity exists. ThisCourt also has supplemental
jurisdiction over the Florida state law claims pursuant to 28 U.S.C.§ 1367.11.

33.    This Court has jurisdiction over the Defendants because the injuries occurred inthis
District because of the specific actions of the Defendants purposefully, knowingly
andintentionally reached this District. Bitconnect operated a website and allowed
Plaintiff and theClass to sign up for the website with their Florida address. Maasen
published dozens of videoson Youtube.com that he knew would be viewed in this
District, and accepted the benefit oftransacting with Florida citizens by receiving
money from Plaintiff and the Class who signed up for Bitconnect under
Maasen's affiliate code. This affiliate code earned Maasen money that he generated
because of his specific contacts in and activities directed towards Kentucky


34.    Finally, the jurisdiction of this Court is invoked to secure protection and redress
deprivation of rights guaranteed by federal law, which rights provide for
injunctive relief and other relief for illegal acts. The amount in controversy in this
action exceeds the jurisdictional limits of this Court.

## VENUE

35.    Venue is proper in the Southern District of Florida , pursuant to 28 USCS Section
1391 (b) (2) as the events giving rise to this action occurred in this district.

36.    Venue is proper in the Western District of Florida  under 28 U.S.C. § 1391because a

8

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District, viewed Defendants' representations and misrepresentations in this District, engaged in commerce with Defendants from his computer inthis District, and otherwise specifically performed his end of the bargain in this District.

## PARTIES

37.   The Plaintiff 404 Republic Court, Deerfield Beach, FL., 33442. He invested his funds in the Defendants illegal enterprize and fraudulent scheme.

38.   Defendants Bitconnect International, PLC, Bitconnect LTD and Bitconnect Trading, LTD (collectively, "Bitconnect") are foreign, for-profit companies organized under thelaws of the United Kingdom, doing business worldwide through the website bitconnect.co.

39.   Bitconnect International's principal place of business is Grant Thornton House, 22 Melton Street, Kings Cross, London, United Kingdom NW 1 2EP

40.   Bitconnect LTD's principal place of business is The Panorama, Park Street,Ashford, United Kingdom TN24 8EZ.17.

41.   Bitconnect Trading LTD's principal place of business is 23 St. Elizabeth Avenue, Bootle, United Kingdom, L20 6FA.18.

42.   Ryan Maasen is a citizen of Tulsa, Oklah

## FACTS COMMON TO ALL ALLEGATIONS

9

43.     The primary cause of this action is a widespread criminal *enterprise* engaged in a *pattern of racketeering activity* across State lines, and a conspiracy to engage in *racketeering activity* involving numerous RICO predicate acts during the past ten (10) calendar years.

### FACTUAL ALLEGATIONS

44.     A blockchain is a distributed record of transactions, usually managed by a peer-to- peer network of computers that validates the transactions.

45.     Bitcoin, a digital currency, is the most well-known type of blockchain and becamesynonymous with blockchain technology in the public consciousness in 2017 thanks to the huge spike in Bitcoin's price. Bitcoin began 2017 at around $1,000 per coin, and reached highs of above $19,000 in early December, before falling back to around $12,000 in mid-January 2018.

46.     Alongside Bitcoin, other blockchain "coins" had huge increases in 2017. For instance, Ethereum, another blockchain, had its coin, ETH, priced at around $8 on January 1, 2017,and ended 2017 at around $721

47.     Bitcoin, ETH and all cryptocurrency coins are volatile, unstable, subject to thewhims of investors worldwide, and undergo huge price swings on a daily basis and across variousdifferent exchanges. Cryptocurrency is inherently volatile.

48.     Against this backdrop, Bitconnect created a trading and lending platform that promised substantial, fixed returns and a complete return of principal at a fixed time in the futurethat benefited from volatility.

10

49. That is, users like Plaintiff and the Class would invest money in Bitconnect through a "lending" platform, Bitconnect would pay them a daily interest rate, and a bonus interest percentage, and then return the principal amount "lent" or invested.

50. Bitconnect promised these returns through a secret, proprietary trading algorithmcalled "volatility software interes which it claimed would produce returns sufficient to pay these fixed interest rates plus bonuses for bigger investors.

51. Bitconnect repeatedly referred to this as an investment, and offered and sold itsinvestments through its "Bitconnect Lending Program

52. To effectuate the transactions described in this Complaint, Bitconnect created its own coin called BitConnect Coin ("BCC"). BCC had no inherent value and no use other than trading for Bitcoin.

53. Under the "Bitconnect Lending Program," investors would "invest" into the BitConnect BCC Exchange with Bitcoin either by using Bitcoin already owned or purchasingBitcoin with a fiat currency.

54. Once the investor deposited his or her Bitcoin into the Bitconnect BCC Exchange platform, Bitconnect instructed the investors to sell his or her Bitcoin to Bitconnect in exchangefor Bit connect's digital coin, BCC

55. Then, Bitconnect instructed the investors to "lend" their BCC back to BitConnect ,explaining that the BCC "lent" will be used to fund the trading activities of its secret, proprietarytrading system called "volatility software

56. On January 9, 2018, the Secretary of State of North Carolina issued a TemporaryCease and Desist Order against Bitconnect to stop them from violating

11

state securities laws. Manyof the details and allegations herein were alleged by North Carolina in seeking and issuing itsOrder.

57.     Bitconnect describes itself as "an open source all in one bitcoin and crypto community platform designed to provide multiple investment opportunities with cryptocurrencyeducation where it is entirely possible to find the independence we all desire, in a community oflike-minded, freedom loving individuals who, like you, are seeking the possibility of income stability in a very unstable world."

58.     One of his videos is still available through another channel:https://www.youtube.com/watch?v=mTVvO5l0oKQ (last accessed January 25, 2018).43.

59.     Plaintiff incorporates each and every representation made in that video into thisComplaint. Because the transcript of the video is too long to include in the Complaint, Plaintiffoffers the following examples of the representations.

60.     In the video, Maasen makes numerous representations about Bitconnect and hisgains, the average daily interest rate, how he is familiar with the Bitconnect team and that theyhave a great support team, that if a user invested more, he or she would be able to make moresooner, that the investor would get the money back at the end of the term (said multiple times inmultiple different ways), and other similar representations, all of which Plaintiff and the Classviewed and relied upon.

61.     Maasen knew that viewers of his video were young, as he specifically referred to two years as a "short" period of time, even if the college aged or high school kids watching thevideo thought it was a long time.

12

62. Maasen specifically represented that Plaintiff and the Class would get their principal back in a specific amount of time (299 days with a $100 investment).

63. Maasen specifically represented that within two years Plaintiff and the Class couldmake a million or more dollars from this investment.

64. Maasen specifically represented in the video that he was demonstrating investmentreturns and that it really worked.

65. Maasen published dozens of substantially similar videos with substantially similar representations, and Plaintiff and the Class viewed and relied upon the representations in Maasen'svideos to choose to sign up under Maasen's affiliate program, deposit money int Bitconnect, andlose that money.

66. Bitconnect and Maasen published the same message about investment, namely, thatthis was a guaranteed daily interest payment, with bonuses, and a guaranteed return of principalafter a certain amount of time. Maasen encouraged his viewers, including Plaintiff and the Class,to re-invest the daily interest payments back directly into more Bitconnect lending. Thus, evenPlaintiff and the Class who received interest payments did not actually make money or keep those profits, and lost all profits when Bitconnect closed down the lending program and left investorswith worthless BCC.

67. Bitconnect repeatedly referred to the lending program as an investment on its website:

   a. "You can invest BitConnect coin in BitConnect lending platform exclusively from the BitConnect Dashboard. This investment optioninvolves profiting from

BitConnect trading bot and volatility software You will receive daily profit based on your investment option;

b. "Upon investment term completion, you will receive your CAPITAL

c. BACK to take out from the BitConnect lending platform or optionally reinvest back in lending platform to continue receiving daily profit;" and "It takes 15 days to mature your coin from last received interest block. Once you received interest block in your staking wallet, you are required to wait for another 15 days to find next interest block."

68.  Bitconnect provided daily interest charts that showed no days with negative returnson the entire chart:

69.  An average daily interest rate of 1% would produce average yearly returns of 3,000% which, while rare in financial markets, are in line with the returns seen in crypto marketsin 2017, and therefore Plaintiff and the Class reasonably believed that these returns were availableto them here.

70.  This is especially true because Maasen personally invested in and profited fromBCC, as he represented in his videos, and these returns had been consistent for months.

71.  Plaintiff and Class would have expected to profit from the efforts of Bitconnect andits agents.

72.  Plaintiff and Class would have believed, based on Bitconnect's statements in its promotional materials, that investors could profit by merely holding and staking BCC tokens, orenjoying the guaranteed returns provided by Bitconnect's proprietary, secret trading system that it calls "volatility software" Further, investors

14

would have expected that Bitconnect and its agentswould expend significant efforts to continue to develop the proprietary, secret trading system that it calls "volatility software," and that such development would increase the value of their BCC.

73. Bitconnect represented to Plaintiff and the Class that "Investing on BitConnect platform...is a safe way to earn a high rate of return on your investment without having to undergoa significant amount of risk."

74. Bitconnect also represented to Plaintiff and the Class that "The interest rate that we can guarantee on your investment while using our investment platform is calculated by ourBitConnect Price Volatility Software and accrued daily."

75. Based on the statements listed above, Plaintiff and the class reasonably expectedthat they would profit solely from the essential managerial efforts of Bitconnect.

76. Bitconnect investments are "securities" as defined in KRS 292.310(19).

77. Bitconnect unlawfully offered and sold unregistered securities in theCommonwealth in violation of KRS 292.340.

78. Further, in violation of KRS 292.330(1), Bitconnect unlawfully transacted businesswith individuals in the Commonwealth as a broker-dealer without registering as a "broker dealer."

79. Ryan Maasen failed to register as an agent under the law of the Commonwealthas required by KRS 292.330(3)

80. In violation of KRS 292.330(3), Ryan Maasen unlawfully transacted business withindividuals in the Commonwealth without registering as an agent.

81. Under KRS 292.310, it is unlawful for any person or entity, in connection with the offer or sale of any security, whether offered or sold indirectly or directly: "(a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person

82. This will be a substantive part of the case before this court. The Defendants availed their interest in the Plaintiff's successful business entity and were willing to use "illegal" measure to unlawfully acquire same.

83. The combination of these Defendants is an enterprise as defined under 18 U.S.C. § 1961(4).

84. At all times relevant to this action, Mr. Corbett conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

85. Under 18 U.S.C. § 1961(1), "racketeering activity" includes any act indictable under 18 U.S.C. § 1343 (wire fraud) or 18 U.S.C. § 1341 (mail fraud). The Defendants voluntarily and intentionally devised or participated in a scheme to defraud others out of money. The Defendants did so with the intent to defraud. It was reasonably foreseeable that interstate wire or mail communications would be used in furtherance of their fraudulent activities and, in fact, interstate mail wire communications were used in furtherance of their fraudulent activities

16

86. In furtherance of the conspiracy to violate 18 U.S.C. § 1962 (c), Defendants caused to be transmitted in interstate commerce materially incomplete disclosure documents and induced veterans to enter into agreements that are void and unenforceable under federal law, all in violation of the Federal Anti-Assignment Acts, 18 U.S.C. 6:17-cv-02362-MGL Date Filed 09/01/17 Entry Number 1 Page 26 of 29 -27- § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 2 (aiding and abetting wire fraud), 18 U.S.C. § 1962 (c) (RICO) and 18 U.S.C. § 1962 (d) (RICO Conspiracy).

87. Specifically, in fall of 2010, Plaintiff and Defendant, Stefanou engaged in negotiations for the sale of the business. Despite the Plaintiff's good faith efforts to sell the business, the matter was frustrated by the fraudulent scheme of the Defendants.

88. Plaintiff chronicles the facts to illustrate to this reviewing court the calculated and illegal actions of the Defendants to unlawfully seize the business assets of the Plaintiff.

89. The Defendants engaged in a systematic effort of legal pleadings, false accusations and undue influence that perplexed Plaintiff and caused the eventual loss of business.

90. The fraud and concerted efforts was exposed in the following actions, including but not limited to the following:

   a. The Plaintiffs have been injured by reason of this violation of 18 U.S.C. § 1962, in that as a direct and proximate result of the complained-of acts, the Plaintiffs have suffered damages including, but not limited to, the payment of exorbitant and

17

unconscionable fees in connection with these legally prohibited transactions

## COUNT I – TORTIOUS INTERFERENCE WITH CONTRACT

91. Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein. Substance prevails over form.

92. Plaintiff's contract with the Defendants, was at all times herein, a valid

and enforceable contracts. Plaintiff has fulfilled all of its contractual obligations under

these agreements.

93. Defendant had knowledge of the agreement and intentionally interfered with same.

94. Defendant's continue to do so, while shielding the conduct in frivolous judicial pleadings, false and forged general releases and intentionally fabricated claims of breach of said contract.

95. As a result of the Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including but not limited to remedies available in law for breach of same.

96. Defendants conduct has also caused irreparable injury to Plaintiff's goodwill and reputation, an injury which is and continues to be ongoing and irreparable. Plaintiff lacks an adequate remedy at law, and an award of monetary damages alone cannot fully compensate Plaintiff for its injuries.

97. Accordingly, Plaintiff is entitled to a permanent injunction.

98.  Furthermore, Defendants continues to operate his in a way that damages Plaintiff,

99.  Defendants conduct constitutes wanton and malicious behavior warranting punitive damages.

100.  As a result of the tortious interference Plaintiff has suffered and will continue to suffer damages, including but not limited to irreparable harm, consequential and incidental damages.

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendants, and award Orbitz Worldwide the following relief: (i) preliminarily enjoin Defendants from tortuously interfering with the Plaintiff contracts; (ii) permanently enjoin Defendant from tortuously interfering with the contracts; (iii) award damages in Plaintiff's favor and against Defendants in an amount not less than 10 million dollars, in excess of (iv) award punitive damages in Plaintiff's favor and against Defendants wanton and malicious conduct; (v) award Plaintiff its costs; and (vi) grant such other or further relief as the Court deems just and equitable.

### COUNT II – BREACH OF CONTRACT

101.  Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

102.  Plaintiff's contract with the Defendants, was at all times herein, valid

and enforceable contracts. Plaintiff has fulfilled all of its contractual obligations under

these agreements.

103. Defendant continues to breach the agreement and its incorporated terms and conditions, specifically profit from the new tenant business in the premises.

104. Defendants conduct constitutes wanton and malicious behavior warranting punitive damages.

105. As a result of the tortious interference and breach herein, Plaintiff has suffered and will continue to suffer damages, including but not limited to irreparable harm, consequential and incidental damages.

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendants, and award Orbitz Worldwide the following relief: (i) preliminarily enjoin Defendants from tortuously interfering with the Plaintiff contracts; (ii) permanently enjoin Defendant from tortuously interfering with the contracts; (iii) award damages in Plaintiff's favor and against Defendants in an amount not less than 10 million dollars, in excess of (iv) award punitive damages in Plaintiff's favor and against Defendants wanton and malicious conduct; (v) award Plaintiff its costs; and (vi) grant such other or further relief as the Court deems just and equitable.

## COUNT III – MISAPPROPRIATION

106. Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein. Substance prevails over form.

107. Plaintiff expended significant time, labor, and financial resources on developing its

business, and not less than twenty years at the Defendant's business location.

108.  Plaintiff investment was in excess of five-hundred thousand dollars. Said investment included, corporate renovations to the business premises, advertising, additional staff and further infusion of capital to grow the business in accordance with the disclosed plan to the Defendants.

109.  Plaintiff strived to remain unique and a business plan with a successful growth over the twenty years.

110.  Plaintiff categorically disclosed the business plan and corporate successes to the Defendants.

111.  However, the Defendants engaged in a systematic effort to dismantle the Plaintiffs and used the information in that capacity.

112.  Said information was used in an unlawful business purpose.

113.  The predicate acts alleged here cluster around infringement on the business of Plaintiff with the intent on a takeover of same.

114.  The acts include, but are not limited to obstruction of justice, obstruction of civil proceeding, tampering with evidence, false representations, forgery of a general release and conspiracy to defraud the Plaintiffs.

115.  At all times herein, during the twenty years at the Defendant business premises, Plaintiff relied on the lease agreement, the integrity of the parties involved herein, and the prerequisite truth of the matter asserted.

116.  Plaintiff disclosed the profitability of the business, the corporate successes and the future business plan and growth in good faith.

117. Specifically, Plaintiff disclosed the internal corporate valuation of the business and the net worth of three million five hundred thousand dollars.

118. The disclosures were in good faith in the attempt to negotiate the sale and/or lease extension of said business.

119. Defendants used the elicited information for illegal purposes.

120. The primary objective of the Defendant *enterprise* has been to inflict severe and sustained economic hardship upon Plaintiff, with the intent of stealing the business and earned good will.

121. As a result of the tortious interference and breach herein, Plaintiff has suffered and will continue to suffer damages, including but not limited to irreparable harm, consequential and incidental damages.

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendants, and award Orbitz Worldwide the following relief: (i) preliminarily enjoin Defendants from tortuously interfering with the Plaintiff contracts; (ii) permanently enjoin Defendant from tortuously interfering with the contracts; (iii) award damages in Plaintiff's favor and against Defendants in an amount not less than 10 million dollars, in excess of (iv) award punitive damages in Plaintiff's favor and against Defendants wanton and malicious conduct; (v) award Plaintiff its costs; and (vi) grant such other or further relief as the Court deems just and equitable.

### COUNT IV-CONSPIRACY TO ENGAGE IN A
### *PATTERN OF RACKETEERING ACTIVITY*:
### 18 U.S.C. §§1965(5), 1962(D)

22

122. Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein. Substance prevails over form.

123. At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did conspire to acquire and maintain an interest in a RICO *enterprise* engaged in a *pattern of racketeering activity*, in violation of 18 U.S.C. §§1962(b) and (d).

124. At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did also conspire to conduct and participate in said RICO *enterprise* through a *pattern of racketeering activity*, in violation of 18 U.S.C. §§1962(b) and (d).

125. During the ten (10) calendar years preceding March 1, 2003 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§1961 (1)(a) and (b) in violation of 18 U.S.C. §§1962(b) and (d).

126. Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of section18 U.S.C. §§1962(b) and (d). (Prohibited activities *supra*).

127. Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this honorable Court. Said construction rule was never codified in Title 18 of the United States Code,

23

128.   Plaintiff categorically disclosed the business plan and corporate successes to the
       Defendants.

129.   However, the Defendants engaged in a systematic effort to dismantle the Plaintiffs
       and used the information in that capacity.

130.   Said information was used in an unlawful business purpose.

131.   The predicate acts alleged here cluster around infringement on the business of
       Plaintiff with the intent on a takeover of same.

132.   The acts include, but are not limited to obstruction of justice, obstruction of civil
       proceeding, tampering with evidence, false representations, forgery of a general
       release and conspiracy to defraud the Plaintiffs.

133.   At all times herein, during the twenty years at the Defendant business premises,
       Plaintiff relied on the lease agreement, the integrity of the parties involved herein,
       and the prerequisite truth of the matter asserted.

134.   Plaintiff disclosed the profitability of the business, the corporate successes and the
       future business plan and growth in good faith.

135.   Specifically, Plaintiff disclosed the internal corporate valuation of the business and
       the net worth of three million five hundred thousand dollars.

136.   The disclosures were in good faith in the attempt to negotiate the sale and/or lease
       extension of said business.

137.   Defendants used the elicited information for illegal purposes.

138.   The primary objective of the Defendant *enterprise* has been to inflict severe and
       sustained economic hardship upon Plaintiff, with the intent of stealing the business

and earned good will.

139.  Their calculated plight to dismantle the business was initiated and conducted in a concerted effort of fraud, deception and illegal and vexatious litigation. Emphasis added.

140.  The Defendants embarked on the "concerted" efforts to steal the Plaintiff business and earned "good will"

141.  The Defendants "collectively", have created an elaborate artifice using multiple corporate entities and existing business and establish professionals to unlawfully induce Plaintiff to assign their business and earned good will over.

142.  The combination of these Defendants is an enterprise as defined under 18 U.S.C. § 1961(4).

143.  At all times relevant to this action, Mr. Corbett conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

144.  Under 18 U.S.C. § 1961(1), "racketeering activity" includes any act indictable under 18 U.S.C. § 1343 (wire fraud) or 18 U.S.C. § 1341 (mail fraud). The Defendants voluntarily and intentionally devised or participated in a scheme to defraud others out of money. The Defendants did so with the intent to defraud. It was reasonably foreseeable that interstate wire or mail communications would be used in furtherance of their fraudulent activities and, in fact, interstate mail wire communications were used in furtherance of their fraudulent activities

145.  In furtherance of the conspiracy to violate 18 U.S.C. § 1962 (c), Defendants caused to

be transmitted in interstate commerce materially incomplete disclosure documents and induced veterans to enter into agreements that are void and unenforceable under federal law, all in violation of the Federal Anti-Assignment Acts, 18 U.S.C. 6:17-cv-02362-MGL Date Filed 09/01/17 Entry Number 1 Page 26 of 29 -27- § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 2 (aiding and abetting wire fraud), 18 U.S.C. § 1962 (c) (RICO) and 18 U.S.C. § 1962 (d) (RICO Conspiracy).

146.   Specifically, in fall of 2010, Plaintiff and Defendant, Stefanou engaged in negotiations for the sale of the business. Despite the Plaintiff's good faith efforts to sell the business, the matter was frustrated by the fraudulent scheme of the Defendants.

147.   All Defendants have used instrumentalities of interstate commerce, including but not limited to the U.S. Postal Service, private delivery services, interstate wires, federally chartered national banking associations, federally insured banks and financial institutions, interstate highways, and common carriers to transmit information in furtherance of their scheme as described below and to transfer the money scammed from veterans among themselves and to third parties in interstate commerce and across state lines. Without limitation, one such bank account used by the Defendants in interstate commerce is the IOLTA account (or accounts) maintained by Defendants Kern-Fuller and Upstate Law Group.

148.   Under 18 U.S.C. § 1961(1), "racketeering activity" includes any act indictable under 18 U.S.C. § 1343 (wire fraud) or 18 U.S.C. § 1341 (mail fraud). The Defendants voluntarily and intentionally devised or participated in a scheme to defraud others

out of money.

149.   The Defendants did so with the intent to defraud. It was reasonably foreseeable that interstate wire or mail communications would be used in furtherance of their fraudulent activities and, in fact, interstate mail wire communications were used in furtherance of their fraudulent activities.

150.   In furtherance of the conspiracy to violate 18 U.S.C. § 1962 (c), Defendants caused to be transmitted in interstate commerce materially incomplete disclosure documents, forged releases, business property of the Plaintiff's under federal law, all in violation of the Federal Anti-Assignment Acts, 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 2 (aiding and abetting wire fraud), 18 U.S.C. § 1962 (c) (RICO) and 18 U.S.C. § 1962 (d) (RICO Conspiracy).

151.   The Defendants have engaged in "a pattern of racketeering activity" by committing or aiding and abetting in the commission of at least two acts of racketeering activity (i.e., at least wire fraud and mail fraud) within the last 10 years within the meaning of 18 U.S.C. §1961(5). 93. The purpose of the enterprise is to enrich the Defendants by inducing or defrauding veterans – often of limited means and poor credit – into entering into agreements that are unlawful and overreaching.

152.   Moreover, further acts and events occurred <u>after</u> August 1, 2001, which also qualify as RICO predicate acts that constitute *further* probable causes for all the relief requested *infra*.

153.    For example, Plaintiff herein alleges that obstruction of justice did in fact occur *whenever* Plaintiff was deprived of specific relief from the federal district courts in Sacramento, California.

154.    The Plaintiffs have been injured in their business or property by reason of this violation of 18 U.S.C. § 1962, in that as a direct and proximate result of the complained-of acts, the Plaintiffs have suffered damages including, but not limited to, the payment of exorbitant and unconscionable fees in connection with these legally prohibited transactions.

155.    The Defendants reap millions of dollars annually through this fraudulent scheme, typically at the expense of desperate veterans who face financial challenges. 96. Plaintiffs seek damages, declaratory judgment and injunctive relief as appropriate.

Wherefore, pursuant to the statutes at 18 U.S.C. 1964(a) and (c), Plaintiff requests judgment against all named Defendants as follows:

(i)That this Court liberally construe the RICO laws and thereby find that all Defendants, both jointly and severally, have acquired and maintained, both directly and indirectly, an interest in and/or control of a RICO enterprise of persons and of other individuals who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of 18 U.S.C. 1962(b) (Prohibited activities).

(ii) That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from acquiring or maintaining, whether directly or indirectly, any interest in or control of any RICO enterprise of persons, or of other

individuals associated in fact, who are engaged in, or whose activities do affect, interstate or foreign commerce.

(iii)That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO enterprise alleged

(iv) That all Defendants pay to Plaintiff treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(b), according to the best available proof.

(v)That all Defendants pay to Plaintiff all damages sustained by Plaintiff in consequence of Defendants' several violations of 18 U.S.C. 1962(b), according to the best available proof.

(vi)That Plaintiff have such other and further relief as this Court deems just and proper, under the circumstances of this action.

(vii)That this Court liberally construe the RICO laws and thereby find that all Defendants have associated with a RICO enterprise of persons and of other individuals who were associated in fact, all of whom did engage in, and whose activities did affect, interstate and foreign commerce in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

(viii)That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering in violation of 18 U.S.C. 1962(c) supra and from all other violation(s) of applicable State and federal law(s).

(ix)for each Defendant, there are actual, consequential, and punitive damages

**COUNT V-UNFAIR BUSINESS PRACTICES BUS. & PROF. CODE § 735 (A)**

156. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

157. Defendant's conduct as alleged above violates multiple state and federal laws and constitutes unlawful business practices within the meaning of Connecticut Business & Professions Code § 735.

158. Plaintiff expended significant time, labor, and financial resources on developing its business, and not less than twenty years at the Defendant's business location.

159. Plaintiff investment was in excess of five-hundred thousand dollars. Said investment included, corporate renovations to the business premises, advertising, additional staff and further infusion of capital to grow the business in accordance with the disclosed plan to the Defendants.

160. Plaintiff strived to remain unique and a business plan with a successful growth over the twenty years.

161. Plaintiff categorically disclosed the business plan and corporate successes to the Defendants.

162. However, the Defendants engaged in a systematic effort to dismantle the Plaintiffs and used the information in that capacity.

163. Said information was used in an unlawful business purpose.

164. The predicate acts alleged here cluster around infringement on the business of Plaintiff with the intent on a takeover of same.

165. The acts include, but are not limited to obstruction of justice, obstruction of civil proceeding, tampering with evidence, false representations, forgery of a general release and conspiracy to defraud the Plaintiffs.

166. At all times herein, during the twenty years at the Defendant business premises, Plaintiff relied on the lease agreement, the integrity of the parties involved herein, and the prerequisite truth of the matter asserted.

167. Plaintiff disclosed the profitability of the business, the corporate successes and the future business plan and growth in good faith.

168. Specifically, Plaintiff disclosed the internal corporate valuation of the business and the net worth of three million five hundred thousand dollars.

169. The disclosures were in good faith in the attempt to negotiate the sale and/or lease extension of said business.

170. Defendants used the elicited information for illegal purposes.

171. The primary objective of the Defendant *enterprise* has been to inflict severe and sustained economic hardship upon Plaintiff, with the intent of stealing the business and earned good will.

172. Plaintiff is informed and believes and thereon alleges that Defendant continues to engage in some or all of the aforementioned unfair and unlawful business practices.

173. Plaintiff seeks an injunction prohibiting Defendant from engaging in the unfair and unlawful conduct described herein. Plaintiff also seeks attorneys' fees pursuant to the private attorney general doctrine, as codified in Connecticut Civil Code.

174.    As a direct, foreseeable and proximate result of Defendant's violation of the unfair business practices, Plaintiff has suffered and sustained damages in an amount according to proof.

### COUNT VI-BREACH OF COVENANT OF GOOD FAITH

175.    As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

176.    Plaintiff and Defendant had an agreement that Plaintiff would be able to perform the duties of an internal auditor in accordance with federal and state regulations and commonly understood business practices, without fear of loss of the leased premises or business, being threatened physically and otherwise, and without having his performance evaluation downgraded and bonus reduced because he spoke up about unlawful and improper practices.

177.    The agreement between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing, which obligated Defendant to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would deprive Plaintiff of the benefits of the agreement.

178.    Plaintiff has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the agreement.

179. Plaintiff is informed and believes, and thereon alleges, that Defendant knew Plaintiff had fulfilled, and was ready, willing and able to continue to fulfill all of his duties and conditions under the agreement.

180. Plaintiff expended significant time, labor, and financial resources on developing its business, and not less than twenty years at the Defendant's business location.

181. Plaintiff investment was in excess of five-hundred thousand dollars. Said investment included, corporate renovations to the business premises, advertising, additional staff and further infusion of capital to grow the business in accordance with the disclosed plan to the Defendants.

182. Plaintiff strived to remain unique and a business plan with a successful growth over the twenty years.

183. Plaintiff categorically disclosed the business plan and corporate successes to the Defendants.

184. However, the Defendants engaged in a systematic effort to dismantle the Plaintiffs and used the information in that capacity.

185. Said information was used in an unlawful business purpose.

186. The predicate acts alleged here cluster around infringement on the business of Plaintiff with the intent on a takeover of same.

187. The acts include, but are not limited to obstruction of justice, obstruction of civil proceeding, tampering with evidence, false representations, forgery of a general release and conspiracy to defraud the Plaintiffs.

188. At all times herein, during the twenty years at the Defendant business premises,

Plaintiff relied on the lease agreement, the integrity of the parties involved herein, and the prerequisite truth of the matter asserted.

189. Plaintiff disclosed the profitability of the business, the corporate successes and the future business plan and growth in good faith.

190. Specifically, Plaintiff disclosed the internal corporate valuation of the business and the net worth of three million five hundred thousand dollars.

191. The disclosures were in good faith in the attempt to negotiate the sale and/or lease extension of said business.

192. Defendants used the elicited information for illegal purposes.

193. The primary objective of the Defendant *enterprise* has been to inflict severe and sustained economic hardship upon Plaintiff, with the intent of stealing the business and earned good will.

194. Defendant breached the implied covenant of good faith and fair dealing under the agreement by terminating Plaintiff without good cause.

195. As a direct, foreseeable and proximate result of Defendant's breach of the implied covenant, Plaintiff has suffered and sustained damages in an amount according to proof.

**COUNT VII-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

196. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

197.   Defendant engaged in outrageous conduct towards Plaintiff with the intention to cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional distress, and with wanton and reckless disregard for the injurious result to Plaintiff, as set forth hereinabove.

198.   Plaintiff expended significant time, labor, and financial resources on developing its business, and not less than twenty years at the Defendant's business location.

199.   Plaintiff investment was in excess of five-hundred thousand dollars. Said investment included, corporate renovations to the business premises, advertising, additional staff and further infusion of capital to grow the business in accordance with the disclosed plan to the Defendants.

200.   Plaintiff strived to remain unique and a business plan with a successful growth over the twenty years.

201.   Plaintiff categorically disclosed the business plan and corporate successes to the Defendants.

202.   However, the Defendants engaged in a systematic effort to dismantle the Plaintiffs and used the information in that capacity.

203.   Said information was used in an unlawful business purpose.

204.   The predicate acts alleged here cluster around infringement on the business of Plaintiff with the intent on a takeover of same.

205.   The acts include, but are not limited to obstruction of justice, obstruction of civil proceeding, tampering with evidence, false representations, forgery of a general release and conspiracy to defraud the Plaintiffs.

206. At all times herein, during the twenty years at the Defendant business premises, Plaintiff relied on the lease agreement, the integrity of the parties involved herein, and the prerequisite truth of the matter asserted.

207. Plaintiff disclosed the profitability of the business, the corporate successes and the future business plan and growth in good faith.

208. Specifically, Plaintiff disclosed the internal corporate valuation of the business and the net worth of three million five hundred thousand dollars.

209. The disclosures were in good faith in the attempt to negotiate the sale and/or lease extension of said business.

210. Defendants used the elicited information for illegal purposes.

211. The primary objective of the Defendant *enterprise* has been to inflict severe and sustained economic hardship upon Plaintiff, with the intent of stealing the business and earned good will.

212. Defendants conduct set forth hereinabove was extreme and outrageous and an abuse of the authority and position of Defendant. The above-described conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress. This conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected from an employer.

213. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain pain and suffering, extreme and severe mental anguish and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for treatment, and for incidental medical expenses; and Plaintiff

has suffered and continues to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

214. Plaintiff is informed and believes and thereon alleges that Defendant and its managing agents, managers, officers, and/or directors committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

### COUNT VIII-FRAUD

215. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

216. A party has a cause of action for common law fraud when (1) representation of fact was made, (2) the representation was material and the person relied on the representation, (3) the person making the representation knew of its falsity, and (4) the injured party suffered as a result of the reliance of such false representation.

217. Defendants "agreed" in writing to re-let the premises to the Plaintiff for a period of ten years, Defendant was intentionally deceptive, failed to honor the terms of the writing and refused to perform in accordance with same.

218. Defendants used the Fraudulent scheme to deceptively convert the asset and earned good will of Plaintiffs.

219. The Defendant Fraud Scheme violated both the federal and state fraud statutes, in that the scheme was intended to fraudulently obtain money from persons through the use of illegal business practices.

220. The Defendants Fraud Scheme was a violation of the Connecticut fraud statute, Ann. § 18.2-178

221. All Defendants have used instrumentalities of interstate commerce, including but not limited to forged documents and intentional interference with corporate business.

222. The primary cause of this action is a widespread criminal *enterprise* engaged in a *pattern of racketeering activity* across State lines, and a conspiracy to engage in *racketeering activity* involving numerous unlawful acts during the past ten (10) calendar years.

223. The predicate acts alleged here cluster around fraud and illegal taking of earned good will and ongoing business.

224. Defendants, thus, made fraudulent misrepresentations, and the Plaintiff relied on those fraudulent misrepresentations and provided services to the Defendants.

225. The primary objective of the Defendants has been to inflict severe and sustained economic hardship upon Plaintiff, with the intent of impairing, obstructing, preventing and discouraging Plaintiff from doing business at the Defendant premises.

226. Defendants' unconscionable acts are fraudulent, and they were committed intentionally.

227. As a direct, foreseeable and proximate result of Defendant's fraud, Plaintiff has suffered and sustained damages in an amount according to proof.

### COUNT IX-FALSE CLAIMS ACT, 31 U.S.C. § 3729(A)(1)(B)
### 31 U.S.C. § 3729(A)(2) (1986)
### USING A FALSE RECORD OR STATEMENT TO GET A FALSE CLAIM PAID
### MATERIAL TO A FALSE CLAIM

228. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

229. By virtue of the acts described above, and in violation of 31 U.S.C. §§ 3729-3733, for each of the "illegal acts", (1) Fraud in the inducement to vacate the premises, (2) false promises and representations in a business negotiation, (3) Fraudulent representations to a court in a legal proceeding, (4) forgery and illegal execution of a general release, (5) myriad of lies, deceptive statement and fraudulent representations identified herein and (6) defendants knowingly made, used, or caused to be made or used, false records or statements to get/material to false or fraudulent control of the Plaintiff business and earned good will. In violation of U.S.C. § 3729(a)(2) (1986) and 31 U.S.C. § 3729(a)(1)(B) (West 2010).

230. Most poignantly, Defendants caused the filing of the false records or statements to obtain a dismissal of a court proceeding, forged general releases and fabricated other legal documents.

231. As a result, the Plaintiff has incurred actual damages, exclusive of interest and costs, in an amount to be determined at trial. 43. Pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(2)(1986) and 31 U.S.C. § 3729(a)(1)(B) (West 2010), the defendant is liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty for each of the false or fraudulent claims herein, plus three (3) times the amount of damages under the statute.

## COUNT X-CONNECTICUT UINFAIR TRADE PRACTICES ACT C.G.S. $$ 42-I l0a to 42-110q ("CUTPA").

232. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

233. At all relevant times, the defendants have been, and continue to be, engaged in the conduct of trade or commerce, as defined in section 42-110a(4) of the Connecticut General Statutes.

234. The foregoing conduct by the defendants constitutes unfair competition or unfair deceptive acts or practices, or both, in the conduct or trade or commerce, and thereby constitutes a violation of the Connecticut Unfair Trade Practices Act, C.G.S., section, 42-I l0a to 42-110q ("CUTPA").

235. The plaintiffs have suffered an ascertainable loss of money or property as a result of the defendants 'violation of CUTPA, as previously set forth, and are entitled to recover damages, including punitive damages and costs.

236. In accordance with the mandates of CUTPA, the plaintiffs have advised the Attorney General of the State of Connecticut, as well as the Commissioner of Consumer

237. Protection for the State of Connecticut, of its CUTPA claim against the defendants by mailing a copy of this Complaint to each respective office.

## COUNT XI-CIVIL CONSPIRACY

238. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

239. The Defendants engaged in a civil conspiracy to deprive the Plaintiffs of their business.

240. The primary purpose or object of the combination is to injure the plaintiffs (and other) as they seek to avoid the application of the Federal Anti-Assignment Acts. They do this by engaging in ongoing misrepresentations concerning the nature of the underlying transactions.

241. The predicate acts alleged here cluster around criminal infringement of an ongoing business, tampering with legal documents, obstruction of justice, obstruction of civil investigations and forgery.

242. The activities of the Defendants in furtherance of the civil conspiracy have injured the Plaintiffs by subjecting them to unconscionable fees and by collecting and distributing sums from the veterans in a fashion prohibited by Federal law.

243. Plaintiffs seek damages, declaratory and injunctive relief as appropriate

41

## COUNT XI-FORGERY SECTION 53 (A) -139

244.    As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

245.    The Defendants are engaged in a civil conspiracy to deprive Plaintiff of their business.

246.    Defendants specifically forged the general release as prescribed herein.

247.    By their own admission the Plaintiff business was successful, the lease extended and the legal proceeding frivolous.

248.    Despite the foregoing admissions, Plaintiff was systematically evicted, subjected to to illegal court proceedings and a false and forged general release as to same.

249.    Defendants have created and styled themselves as "partners" or as part of a "team." Their activities reflect the joint assent of two or more parties in furtherance of an unlawful enterprise.

250.    The primary purpose or object of the combination is to injure the plaintiffs as they seek to dismantle the Plaintiff's business.

251.    The activities of the Defendants in furtherance of the civil conspiracy have injured the Plaintiffs by subjecting them to unconscionable fees and by collecting and distributing sums from the veterans in a fashion prohibited by Federal law.

252.    Plaintiffs seek damages, declaratory and injunctive relief as appropriate

### COUNT XII-28 USCS SECTION 1391 MAIL FRAUD

253. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

254. The Defendants are engaged in a civil conspiracy to deprive veterans of their pensions and benefits in violation of the Federal Anti-Assignment Acts.

255. The Defendants are engaged in a civil conspiracy to deprive Plaintiff of their business.

256. Defendants specifically forged the general release as prescribed herein.

257. By their own admission the Plaintiff business was successful, the lease extended and the legal proceeding frivolous.

258. Despite the foregoing admissions, Plaintiff was systematically evicted, subjected to to illegal court proceedings and a false and forged general release as to same.

259. Defendants have created and styled themselves as "partners" or as part of a "team." Their activities reflect the joint assent of two or more parties in furtherance of an unlawful enterprise.

260. The primary purpose or object of the combination is to injure the plaintiffs as they seek to dismantle the Plaintiff's business.

261. The activities of the Defendants in furtherance of the civil conspiracy have injured the Plaintiffs by subjecting them to unconscionable fees and by collecting and distributing sums from the veterans in a fashion prohibited by Federal law.

262. The activities of the Defendants in furtherance of the civil conspiracy have injured the Plaintiffs by subjecting them to unconscionable fees and by collecting and distributing sums from the veterans in a fashion prohibited by Federal law.

263. Plaintiffs seek damages, declaratory and injunctive relief as appropriate

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, requests that this Court:

1. That this Court liberally construe the RICO laws and thereby find that all Defendants, both jointly and severally, have acquired and maintained, both directly and indirectly, an interest in and/or control of a RICO *enterprise* of *persons* and of other individuals who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of 18 USC 1962 (b).

2. That all Defendants and all their directors, officers, employees, agents, servants and all other *persons* in active concert or in participation with them, be enjoined *temporarily* during pendency of this action, and *permanently* thereafter, from acquiring or maintaining, whether directly or indirectly, any interest in or control of any RICO *enterprise* of *persons*, or of other individuals associated in fact, who are engaged in, or whose activities do affect, interstate or foreign commerce.

3. That all Defendants and all their directors, officers, employees, agents, servants and all other *persons* in active concert or in participation with them, be enjoined *temporarily* during pendency of this action, and *permanently* thereafter, from acquiring or maintaining, whether directly or indirectly, any interest in or control of any RICO *enterprise* of *persons*, or of other individuals associated in fact, who are engaged in, or

whose activities do affect, interstate or foreign commerce.

4. That all Defendants and all of their directors, officers, employees, agents, servants and all other *persons* in active concert or in participation with them, be enjoined *temporarily* during pendency of this action, and *permanently* thereafter, from committing any more predicate acts in furtherance of the RICO *enterprise* alleged in

5. That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of *racketeering activity* in violationof 18 U.S.C. 1962 (b) of  and from all other violation(s) of applicable State and federal law(s).

6. That judgment be entered for Plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962 of, according to the best available proof in an amount not less than five million dollars. ($5,000,000.00)

7. That all Defendants pay to Plaintiff treble (triple) damages, under authority of 18 U.S.C. 1962, for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962, according to the best available proof.

8. That all Defendants pay to Plaintiff His costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees, at a minimum of $150.00 per hour worked (Plaintiff's standard professional rate at start of this action).

9. That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962 (b) and from all other violation(s) of applicable State and federal law(s), be

deemed to be held in constructive trust, legally foreign with respect to the federal zone

[*sic*], for the benefit of Plaintiff, His heirs and assigns

10. Preliminarily enjoin Defendants from tortuously interfering with the Plaintiff right to do business in the future,

11.  Permanently enjoin Defendant from tortuously interfering with the contracts,

12. Damages in Plaintiff's favor and against Defendants in an amount not less than 10 million dollars, in excess of

13. Punitive damages in Plaintiff's favor and against Defendants wanton and malicious conduct in an amount not less than one million dollars, ($1,000,000.00)

14. Award Plaintiff its costs; and

15. Order Defendants to pay compensatory damages for Plaintiff

16. Emotional pain and suffering, in an amount to be proven at trial;

17. Order Defendants to pay exemplary and punitive damages;

18. Order Defendants to pay attorneys' fees and costs of the action;

19. Order Defendants to pay interest at the legal rate on such damages as Appropriate, including pre- and post-judgment interest; and

20. Grant any further relief that the Court deems just and proper. Plaintiff demands judgment against the Defendant Union and its agents, individually, jointly and severally, and the court for:

21. To declare that the General release was forged and has no legal consequence is this date nullified as a matter of law and is void.

22.  That Plaintiff have such other and further relief as this Court deems just and proper,

46

18-cv-60392-BLOOM-VALLE

under the circumstances of this action.

]

Respectfully Submitted

Patrick Argiro,
Plaintiff-Pro-SE

404 Republic Court,
Deerfield Beach, FL., 33442

Date: February 12, 2018

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury as to all issues

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2018, the foregoing was filed by hand delivery and

Notice of this filing will be sent to all parties by certified overnight mail, return receipt

requested. I certify the foregoing by me to be true.

Patrick Argiro,
Plaintiff-Pro-SE
404 Republic Court,
Deerfield Beach, FL., 33442