# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

|  |  |
|---|---|
| IN RE BITCONNECT SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Lead Case No.: 9:18-cv-80086-DMM

## YOUTUBE'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

BRIAN M. WILLEN (admitted *pro hac vice*)
ELI B. RICHLIN (admitted *pro hac vice*)
Wilson Sonsini Goodrich & Rosati P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY  10019
Tel: (212) 999-5800

NATHAN BERMAN, Fla. Bar No. 0329230
Zuckerman Spaeder LLP
101 East Kennedy Blvd.
Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010

*Counsel for YouTube, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................................2

    A.    BitConnect and the Promoter Defendants.............................................................2

    B.    Plaintiffs' Allegations About YouTube ...............................................................2

    C.    Procedural History ...............................................................................................3

ARGUMENT ............................................................................................................................4

I.    Plaintiffs' Claim Against YouTube Should Be Dismissed For Lack of Personal
Jurisdiction ..................................................................................................................4

    A.    Plaintiffs Allege No Basis For Asserting General Jurisdiction Over
YouTube .............................................................................................................4

    B.    Plaintiffs Allege No Factual Basis For Asserting Specific Jurisdiction ................5

II.    Plaintiffs' Claim Against YouTube Is Barred By Section 230 ............................................6

    A.    Section 230 Broadly Immunizes Online Service Providers Against Claims
Seeking To Hold Them Liable For Third Party Content .........................................6

    B.    YouTube Meets The Requirements For Section 230 Immunity............................7

        1.    YouTube Is The Provider Of An "Interactive Computer Service"..............8

        2.    YouTube's Users Provided The Information At Issue ...............................8

        3.    Plaintiffs Seek To Hold YouTube Liable As A Publisher........................12

III.    The TAC Fails To State A Claim For Failure To Warn .........................................16

    A.    YouTube Did Not Have A "Special Relationship" With Plaintiffs......................16

    B.    YouTube Had No Duty To Warn Where It Did Not Have Superior
Knowledge Of The Relevant Risks.......................................................................20

CONCLUSION........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ADA v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010)...................................................16

*Alm v. Van Nostrand Reinhold Co.*, 480 N.E.2d 1263 (Ill. App. Ct. 1985)...................18

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316 (11th Cir. 2006)......................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ *passim*

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008) ................5

*Barnes v. Yahoo! Inc.*, 570 F.3d 1096 (9th Cir. 2009)........................................ *passim*

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003).....................................................7, 10

*Bennett v. Google LLC*, 882 F.3d 1163 (D.C. Cir. 2018) .................................... *passim*

*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998)................................................12

*Boynton v. Burglass*, 590 So.2d 446 (Fla. 3d DCA 1991)............................................17

*Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129 (Fla. 1st DCA 2017) ................20

*Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015) .......................4

*Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003) ................................17

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .............................................................5

*Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW,
      2016 U.S. Dist. LEXIS 152126 (N.D. Cal. Nov, 2, 2016)...................................8

*Diamond Crystal Brands, Inc. v. Food Movers, Int'l, Inc.*,
      593 F.3d 1249 (11th Cir. 2010) .......................................................................4

*Doe No. 14 v. Internet Brands, Inc.*, No. CV 12-3626-JFW,
      2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016).........................18, 19

*Doe v. Am. Online, Inc.*, 783 So. 2d 1010 (Fla. 2001).............................................7, 15

*Doe v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016)........................................13-15

*Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016)................................. *passim*

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008) ................................................................ 13-15

*Dowbenko v. Google, Inc.*, 582 Fed. Appx. 801 (11th Cir. 2014) ........................................ *passim*

*Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359-LB,
  2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017) ............................................... 19

*Ecomed LLC v. Asahi Kasei Med. Co.*, No. 17-61360-CIV,
  2018 U.S. Dist. LEXIS 126084 (S.D. Fla. July 26, 2018) ................................................. 6

*Estate of Johnson v. Badger Acquisition of Tampa LLC*,
  983 So. 2d 1175 (Fla. 2d DCA 2008) ............................................................................. 17

*Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ..................... *passim*

*Gavra v. Google Inc.*, No. 5:12-CV-06547-PSG,
  2013 U.S. Dist. LEXIS 100127 (N.D. Cal. July 17, 2013) ................................................ 8

*Goddard v. Google, Inc.*, No. C08-2738 JF (PVT),
  2008 U.S. Dist. LEXIS 101890 (N.D. Cal. Dec. 17, 2008) .............................................. 12

*Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150 (N.D. Cal. 2017) ............................... 8, 12

*Gonzalez v. Google, Inc.*, No. 16-cv-03282-DMR,
  2018 U.S. Dist. LEXIS 138367 (N.D. Cal. Aug. 15, 2018) .............................................. 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ....................... 4, 5

*Green v. Am. Online*, 318 F.3d 465 (3d Cir. 2003) ................................................... 14- 16

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) ...................................... *passim*

*High Tech Indus. v. Bethel Transp., Ltd.*, No. 18-14173-CIV,
  2018 U.S. Dist. LEXIS 96060 (S.D. Fla. June 6, 2018) .................................................... 6

*Hunt v. Slippery Dip of Jacksonville, Inc.*, 453 So. 2d 139 (Fla. 1st DCA 1984) ............... 20

*Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781 (Fla. 1st DCA 2003) ............................... 17

*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014) .................... *passim*

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) ...................................................... 10

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.D.C. 2014) ................................................. *passim*

*Knight v. Merhige*, 133 So. 3d 1140 (Fla. 4th DCA 2014) ......................................... 17, 18

*Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150 (N.D. Cal. 2008) ............................ 2

*Lewin v. McCreight*, 655 F. Supp. 282 (E.D. Mich. 1987)...........................................................18

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013)....................................5

*M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC,
    809 F. Supp. 2d 1041 (E.D. Mo. 2011)...........................................................................12

*McAllister v. Robbins*, 542 So. 2d 470 (Fla. 1st DCA 1989)........................................................20

*McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533 (D. Md. 2016)........................... *passim*

*Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM,
    2018 U.S. Dist. LEXIS 121775 (S.D. Fla. July 19, 2018)....................................................8

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009)............ *passim*

*O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016) ........................................................7, 10

*Palmer v. Shearson Lehman Hutton, Inc.*, 622 So. 2d 1085 (Fla. 1st DCA 1993).......................17

*Roblor Mktg. Group, Inc. v. Gps Indus., Inc.*, 645 F. Supp. 2d 1130
    (S.D. Fla. 2009)........................................................................................................................4

*Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311 (M.D. Fla. 2015) .............. *passim*

*Silver v. Karp*, No. 14-80447-CIV-COHN/SELTZER,
    2014 U.S. Dist. LEXIS 119462 (S.D. Fla. Aug. 27, 2014)...................................................6

*Twiss v. Kury*, 25 F.3d 1551 (11th Cir. 1994)...............................................................................17

*United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009) ....................................................4

*Univ. Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007)........................................ *passim*

*Walden v. Fiore*, 571 U.S. 277 (2014).............................................................................................6

*Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991)....................................................18

*Wolf v. Celebrity Cruises, Inc.*, 683 Fed. Appx. 786 (11th Cir. 2017) ..........................................5

*Zamora Radio, LLC v. Last.fm Ltd.*, No. 09-20940-CIV,
    2011 U.S. Dist. LEXIS 69101 (S.D. Fla. June 28, 2011) ....................................................5

*Zelig v. County of Los Angeles*, 45 P.3d 1171 (Cal. 2002)...........................................................19

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997)..................................................... *passim*

**STATUTES**

47 U.S.C. § 230...................................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 12(b)(2)......................................................................................................1, 4, 6

Fed. R. Civ. P. 12(b)(6).........................................................................................................1, 8

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendant YouTube, LLC ("YouTube") submits this memorandum of law in support of its motion to dismiss Plaintiffs' Third Amended Class Action Complaint ("TAC").

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs are investors who lost money investing in a cryptocurrency investment program known as BitConnect. In this lawsuit, Plaintiffs allege that BitConnect was actually a Ponzi scheme, and they assert a variety of securities, fraud, and other claims against various entities and individuals related to BitConnect. Plaintiffs do not claim that YouTube perpetrated or participated in this alleged fraud, and YouTube was not named as a defendant in any of the previous iterations of Plaintiffs' complaints.

Now, however, Plaintiffs seek to hold YouTube liable for BitConnect's alleged wrongdoing. The TAC asserts a single cause of action against YouTube, premised on the theory that YouTube had a legal duty to warn Plaintiffs about the risks involved in investing in BitConnect. The source of this purported duty is a set of promotional videos that BitConnect affiliates allegedly uploaded to YouTube's website. Plaintiffs claim that YouTube acted negligently by failing to remove those videos or to warn Plaintiffs that the videos may contain misleading information about BitConnect. Whatever the merits of Plaintiffs' allegations against BitConnect and its affiliates, their claim against YouTube fails as a matter of law. That claim should be dismissed for three independent reasons.

*First*, Plaintiffs do not allege any basis for this Court to assert personal jurisdiction over YouTube. Other than bare legal conclusions, the TAC offers no jurisdictional allegations whatsoever, and it certainly pleads no facts about any connections that YouTube might have to Florida, whether generally or specifically based on the actions it supposedly took (or failed to take) in regard to BitConnect. Plaintiffs bear the burden of providing such allegations in their complaint, and their failure to do so requires dismissal under Fed. R. Civ. P. 12(b)(2).

*Second*, Plaintiffs' claim against YouTube is barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"). This statute provides broad immunity to online service providers like YouTube against efforts to hold them liable for allowing allegedly harmful content created by others to be available on their services. Indeed, courts in two recent cases have dismissed similar failure to warn claims against other online platforms. *See Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018); *McDonald v. LG*

*Elecs. USA, Inc.*, 219 F. Supp. 3d 533 (D. Md. 2016). The same result is warranted here.

*Third*, Plaintiffs' failure to warn claim fails on its own terms. A duty to warn can arise only in narrow circumstances, such as where a "special relationship" exists between the plaintiff and the defendant. But courts have repeatedly held that no such relationship exists between operators of general purpose websites such as YouTube and their scattered, diverse set of users. That rule applies here, and it rules out holding YouTube liable on a failure to warn theory.

Because the defects in Plaintiffs' claim are insurmountable, the Court should dismiss YouTube from this case with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    BitConnect and the Promoter Defendants

This case arises from a cryptocurrency-related investment program called BitConnect, which was allegedly promoted by several affiliates, including Defendants Glenn Arcaro, Trevon Brown a/k/a Trevon James, Ryan Hildreth, Craig Grant, John Doe No. 1 a/k/a Nicholas Trovato a/k/a Cryptonick, Ryan Maasen, and John Doe Nos. 2-10 ("the Promoter Defendants"). The allegations in the TAC relate primarily to these Promoter Defendants and BitConnect-related entities and directors (including BitConnect International PLC, BitConnect Ltd., BitConnect Trading Ltd., Joshua Jeppensen, and Arcaro, collectively, the "BitConnect Defendants"), rather than to YouTube. Plaintiffs, who invested in BitConnect, allege that the BitConnect program was a Ponzi scheme and that they were victims of it. Plaintiffs have asserted 11 causes of action against the BitConnect Defendants and the Promoter Defendants, including violations of federal and state securities law, fraud claims, civil conspiracy, and additional state law claims. TAC ¶ 2. None of these claims is directed at YouTube.

### B.    Plaintiffs' Allegations About YouTube

YouTube operates a popular website and related online service that allows people from all over the world to post videos of their choosing and to view videos created and uploaded by other YouTube users. *See Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1152 (N.D. Cal. 2008) (describing YouTube as a "popular Internet video hosting site" that "provides 'video sharing' or 'user generated content.'").[1] The quantity and variety of videos posted on YouTube is

---

[1] The use of YouTube, including posting and viewing content on the service, is governed by a Terms of Service ("TOS"), which expressly requires that legal claims be brought in California

(continued...)

almost unimaginable. *See, e.g.,* Jack Nicas, *YouTube Notches Global Video Milestone*, W.S.J., Feb. 28, 2017 ("400 hours of video are uploaded to YouTube each minute, or 65 years of video a day."). YouTube is incorporated in Delaware, and its principal place of business is in San Bruno, California. TAC ¶ 40.

While YouTube was not named as a defendant in any of the previous versions of Plaintiffs' complaint, the TAC asserts a single claim against YouTube: for negligent failure to warn, presumably under Florida law. TAC ¶¶ 232-238. This claim arises from various videos uploaded to YouTube by the Promoter Defendants, videos through which those Defendants are alleged to have promoted and solicited investments in BitConnect. *Id.* ¶¶ 7, 33-39, 85, 107, 122-129. Plaintiffs allege that the Promoter Defendants posted hundreds of videos on YouTube touting BitConnect and recruiting investors to the program, and that these videos collectively were viewed by millions of people. *Id.* ¶¶ 122-129. Plaintiffs contend that some viewers of the Promoted Defendants' videos "were successfully solicited to invest" in BitConnect. *Id.* ¶ 142.

Plaintiffs do not allege that YouTube created or contributed any of the information in the BitConnect videos or that YouTube itself solicited or promoted any investments in BitConnect. Instead, Plaintiffs seek to hold YouTube liable for having provided an online platform that the Promoter Defendants used to publish their allegedly misleading videos and for failing to take action to protect Plaintiffs against the alleged effects of those videos. *Id.* ¶¶ 122-143. To that end, Plaintiffs assert that YouTube failed to discharge its supposed obligation "to delist or demonetize the videos uploaded by BitConnect and its affiliate promoters" (*id.* ¶ 135) and "to warn [Plaintiffs] of the dangers associated with investing" in BitConnect (*id.* ¶ 236).

### C.  Procedural History

The putative class initiated this action on January 24, 2018, and then filed amended complaints on January 30, 2018 and February 27, 2018. Dkt. 1, 5, 14, 19. None of those iterations of the complaint named YouTube—they instead were directed solely to BitConnect, its

---

(...continued from previous page)

and be governed by California law. https://www.youtube.com/static?template=terms. Because Plaintiffs do not allege specific facts related to their use of YouTube, YouTube does not, for purposes of this motion to dismiss, assert arguments based on the forum-selection or choice-of-law provisions in the TOS. But YouTube reserves its right to invoke those and any other relevant provisions of the TOS should it be appropriate to do so in any further proceedings in this case.

officers and directors, and its promoters. *Id.* On June 19, 2018, the Court consolidated four separately filed securities class actions against those defendants and appointed lead plaintiffs and co-lead counsel. Dkt. 46. On June 21, 2018, the Court set a schedule for the Plaintiffs to file a new operative complaint in the consolidated actions and for all defendants to respond. Dkt. 47. On July 3, 2018, Plaintiffs filed the TAC, in which Plaintiffs for the first time added YouTube as a defendant. Dkt. 48.

## ARGUMENT

Plaintiffs' claim against YouTube should be dismissed for three separate reasons. First, Plaintiffs fail to allege an adequate basis for the Court to exercise personal jurisdiction. Second, Plaintiffs' claim is barred by Section 230 of the Communications Decency Act. Third, Plaintiffs' claim fails as a matter of law because YouTube had no duty to warn Plaintiffs about the risks of investing in BitConnect.

## I.  PLAINTIFFS' CLAIM AGAINST YOUTUBE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

As an initial matter, Plaintiffs' claim fails for lack of personal jurisdiction and should be dismissed under Fed. R. Civ. P. 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers, Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Plaintiffs have not done so here. There are two different forms of personal jurisdiction: "Specific jurisdiction attaches only to suits arising from a defendant's contact with the forum, whereas general jurisdiction can more broadly attach to suits unrelated to defendant's contacts with the forum." *Roblor Mktg. Group, Inc. v. Gps Indus., Inc.*, 645 F. Supp. 2d 1130, 1150 (S.D. Fla. 2009); *see generally Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). Here, beyond threadbare legal conclusions that do not even mention YouTube, the TAC offers no allegations whatsoever that would establish personal jurisdiction over YouTube on either theory.

### A.  Plaintiffs Allege No Basis For Asserting General Jurisdiction Over YouTube

A court may assert general jurisdiction over foreign corporations only "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the foreign State." *Wolf v. Celebrity Cruises, Inc.*, 683 Fed. Appx. 786, 791 (11th Cir. 2017) (*citing Goodyear*, 564 U.S. at 919). Only a "limited set of affiliations with a forum will

render a defendant amenable to all-purpose jurisdiction there"—indeed, the "paradigm" all-purpose forums for general jurisdiction are a corporation's "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Only in the "exceptional case" may "a corporation's operations in a forum other than its formal place of incorporation or principal place of business . . . be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 139 n.19. Plaintiffs do not even try to meet those demanding standards. They acknowledge that YouTube is neither incorporated nor based in Florida. TAC ¶ 40. Nor does the TAC offer any other facts that would establish that YouTube is "at home" in this State. TAC ¶ 22. The absence of any such allegations leaves the Court with no basis to assume general jurisdiction over YouTube.

**B.      Plaintiffs Allege No Factual Basis For Asserting Specific Jurisdiction**

Plaintiffs' allegations are equally deficient regarding specific jurisdiction. "[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). The inquiry requires showing that "(1) the defendant purposefully directed its activities towards residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Zamora Radio, LLC v. Last.fm Ltd.*, No. 09-20940-CIV, 2011 U.S. Dist. LEXIS 69101, at *14 (S.D. Fla. June 28, 2011) (*quoting Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008)).

As with general jurisdiction, Plaintiffs fail to allege any facts that could establish specific jurisdiction as to YouTube. The TAC contains no allegations that YouTube, in supposedly failing to remove or warn about certain BitConnect videos or activities, "purposefully directed its activities" towards Florida residents, and there is no suggestion in the complaint that Plaintiffs' duty to warn claim in any way "arises out of or relates to" any forum-directed activities that YouTube might have undertaken. Indeed, the TAC does not even allege that any Plaintiff resided in Florida, much less that they viewed the Promoter Defendants' YouTube videos in Florida. All that Plaintiffs offer is a conclusory, threadbare recital of the "minimum contacts" standard, one that is supported by not a single concrete factual allegation. TAC ¶ 22. That is not sufficient. *See Silver v. Karp*, No. 14-80447-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 119462, at *9

(S.D. Fla. Aug. 27, 2014) (finding jurisdictional allegations "conclusory, not well pleaded, and not entitled to a presumption of truth") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Lacking any allegations that even gesture at the showing that they would have to make to establish that YouTube's "suit-related conduct" created "a substantial connection with" Florida, *Walden v. Fiore*, 571 U.S. 277, 284 (2014), Plaintiffs have not pleaded personal jurisdiction.

In short, because Plaintiffs have failed to allege any factual basis upon which this Court could assert personal jurisdiction as to YouTube, their claim must be dismissed under Rule 12(b)(2). *See, e.g.*, *Ecomed LLC v. Asahi Kasei Med. Co.*, No. 17-61360-CIV, 2018 U.S. Dist. LEXIS 126084, at *13-15 (S.D. Fla. July 26, 2018) (dismissing complaint for failure to allege facts sufficient to establish personal jurisdiction over defendant); *High Tech Indus. v. Bethel Transp., Ltd.*, No. 18-14173-CIV, 2018 U.S. Dist. LEXIS 96060, at *8-9 (S.D. Fla. June 6, 2018) (complaint "devoid of any factual allegations warranting this Court's exercise of jurisdiction over Defendant" requires dismissal).

## II. PLAINTIFFS' CLAIM AGAINST YOUTUBE IS BARRED BY SECTION 230

Even if the Court had jurisdiction over YouTube, Plaintiffs' claim is barred by federal law. Section 230(c)(1) of the Communications Decency Act ("CDA"), 47 U.S.C. § 230 "establish[es] broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 & n.3 (11th Cir. 2006) (*quoting Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). This immunity protects YouTube here and requires dismissal with prejudice of Plaintiffs' claim.[2]

### A. Section 230 Broadly Immunizes Online Service Providers Against Claims Seeking To Hold Them Liable For Third Party Content

In enacting Section 230, Congress recognized that the internet offers "a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity." 47 U.S.C. § 230(a)(3). The statute codifies "the policy of the

---

[2] Because Section 230 is a categorical bar to Plaintiffs' claim against YouTube, it is appropriate to dismiss Plaintiffs' claim with prejudice. Section 230's broad application would make it futile for Plaintiffs to try to amend their complaint to address the deficiencies in their personal jurisdiction allegations (*see supra* Section I) and in their attempt to state a claim on the merits (*see infra* Section III). *See, e.g.*, *McDonald*, 219 F. Supp. 3d at 540 n.6.

United States (1) to promote the continued development of the Internet and other interactive computer services" and "(2) to preserve the vibrant and competitive free market that presently exists for the Internet" (*id.* § 230(b)). *Bennett v. Google LLC*, 882 F.3d 1163, 1165 (D.C. Cir. 2018). To that end, Section 230(c)(1) mandates that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

Under this provision, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred." *Zeran*, 129 F.3d at 330; *see also, e.g.*, *Dowbenko v. Google, Inc.*, 582 Fed. Appx. 801, 805 (11th Cir. 2014) (same); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014) (same); *Batzel v. Smith*, 333 F.3d 1018, 1031 n.18 (9th Cir. 2003) (same). The statute expressly preempts any contrary state laws or causes of action. 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."); *accord Doe v. Am. Online, Inc.*, 783 So. 2d 1010 (Fla. 2001) (holding that Section 230 barred negligence claim under Florida law); *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) (same). In short: "If a website displays content that is created entirely by third parties, . . . [it] is immune from claims predicated on that content." *O'Kroley v. Fastcase, Inc.,* 831 F.3d 352 (6th Cir. 2016) (quoting *Jones*, 755 F.3d at 408).

Because Section 230 provides an "immunity from suit rather than a mere defense to liability," it should attach "at the earliest possible stage of the case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254–255 (4th Cir. 2009); *accord Jones*, 755 F.3d at 417. In particular, courts are to dismiss claims at the pleadings stage wherever the service provider's immunity "is evident from the face of the complaint." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.D.C. 2014); *see, e.g.*, *Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS 121775 (S.D. Fla. July 19, 2018) (applying Section 230 to dismiss complaint under Rule 12(b)(6)). After all, Section 230 is intended not only to "protect websites not merely from ultimate liability, but [also] from having to fight costly and protracted legal battles." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008).

### B.     YouTube Meets The Requirements For Section 230 Immunity

There is an established three-part test for immunity under Section 230(c)(1). A claim is

barred when: "(1) the defendant asserting immunity is an interactive computer service provider, (2) the particular information at issue was provided by another information content provider, and (3) the claim seeks to treat the defendant as a publisher or speaker of that information." *Jones*, 755 F.3d at 409; *see also, e.g.*, *Bennett*, 882 F.3d at 1166; *Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009); *Mezey*, 2018 U.S. Dist. LEXIS 121775, at *2-3. It is clear from the face of Plaintiffs' complaint that these elements are all met here.

1.      <u>YouTube Is The Provider of An "Interactive Computer Service"</u>

First, YouTube is unquestionably the provider of an "interactive computer service" under Section 230. The statute defines that term broadly: an "interactive computer service" includes "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2); *accord* TAC ¶¶ 137, 142 (alleging that Plaintiffs viewed videos on YouTube that the Promoter Defendants had created and uploaded). As numerous courts have held, YouTube—like other similar online platforms that allow users to post and view content—plainly meets this definition. *See, e.g.*, *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1163–1164 (N.D. Cal. 2017) (undisputed that YouTube is an "interactive computer service provider"); *Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW, 2016 U.S. Dist. LEXIS 152126, at *20-21 (N.D. Cal. Nov. 2, 2016) ("the YouTube website provides or enables computer access by multiple users to a computer server"); *Gavra v. Google Inc.*, No. 5:12-CV-06547-PSG, 2013 U.S. Dist. LEXIS 100127, at *4-9 (N.D. Cal. July 17, 2013) (claims against Google relating to YouTube videos covered by CDA); *accord Roca Labs*, 140 F. Supp. 3d at 1318 ("Websites that allow third parties to make posts regarding a product or service . . . have been held to be interactive computer services.").

2.      <u>YouTube's Users Provided The Information At Issue</u>

It is equally clear that the material at issue was not provided by YouTube, but rather by "another information content provider." "The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Here, Plaintiffs seek to hold YouTube liable for videos created and developed by the Promoter Defendants (and perhaps other third party YouTube users). TAC ¶ 135 (asserting that YouTube failed to discharge its supposed obligation "to delist or demonetize the videos uploaded by BitConnect and its affiliate promoters"). While Plaintiffs claim that YouTube was or should

have been aware of the BitConnect videos, they do not even try to suggest that YouTube created any of those videos, posted them to the service, or had anything to do with the development of their content. To the contrary, the complaint leaves no doubt that the videos were authored and uploaded by the Promoter Defendants (or third parties). *Id*. ¶¶ 123-129. That alone satisfies the second element of Section 230(c)(1) immunity. *See, e.g.*, *Klayman*, 753 F.3d at 1358 ("a website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online"); *Bennett*, 882 F.3d at 1167 (second factor satisfied where plaintiff "alleges that only [third party]—and not Google— created the offensive content on the blog"); *Dowbenko*, 582 Fed. Appx. at 805 (Google entitled to Section 230 immunity based on article "authored and posted" by "two anonymous bloggers").

Plaintiffs' various efforts to plead around this problem do not work. Plaintiffs describe YouTube as "an active participant" in distributing the BitConnect videos. TAC ¶ 235. That is just a legal conclusion, supported by no actual factual allegations, which is not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678; *accord Nemet*, 591 F.3d at 258 (rejecting "threadbare and conclusory" allegations that defendant created content at issue). But even if it were credited, Plaintiffs' allegation is irrelevant. What matters under Section 230 is not whether a service provider "participated" in the distribution of allegedly harmful content. *See Jones*, 755 F.3d at 410 (explaining that "development" under § 230(f)(3) "means something more involved than merely displaying or allowing access to content created by a third party; otherwise § 230(c)(1) would be meaningless"). As the Ninth Circuit has explained: "proliferation and dissemination of content does not equal creation or development of content." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1271 (9th Cir. 2016).[3]

Instead, the test is whether the service provider "contributes materially to the alleged illegality of the content." *Jones*, 755 F.3d at 410 (quoting *Roomates.com,* 521 F.3d at 1167–68); *accord Roca Labs*, 140 F. Supp. 2d at 1322. This is a demanding standard. "A material

---

[3] This reflects the general rule that "traditional editorial functions" performed in connection with third-party content do not make the service provider responsible for that content. *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016); *see also Batzel*, 333 F.3d at 1031 ("the exclusion of 'publisher' liability necessarily precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message").

contribution to the alleged illegality of the content does not mean merely taking action that is necessary to the display of allegedly illegal content. Rather, it means being responsible for what makes the displayed content allegedly unlawful." *Jones*, 755 F.3d at 410; *see also Herrick*, 306 F. Supp. 3d at 589. Only where "it is very clear that the website directly participates in developing the alleged illegality" should immunity be lost. *Roommates.com*, 521 F.3d at 1174. By contrast, "in cases of enhancement by implication or development by inference . . . section 230 must be interpreted to protect websites." *Id*. at 1174-75; *see, e.g*., *Nemet*, 591 F.3d at 257 (service provider immune from claims based on user-posted comments where allegations did not show that defendant "contributed to the allegedly fraudulent nature of the comments at issue").

Plaintiffs' allegations do not come close to satisfying this requirement. Nothing in the TAC remotely suggests that YouTube took any actions that contributed to the allegedly fraudulent or misleading nature of the BitConnect videos. There certainly is no suggestion that YouTube "require[d] users to post illegal or actionable content as a condition of use." *Jones*, 755 F.3d at 416. Instead, Plaintiffs rely on allegations that defy established law. For example, allegedly "driving traffic" (TAC ¶ 233) or "funneling" viewers toward certain content (*id*. ¶ 234) is not a material contribution. In *Dowbenko*, the Eleventh Circuit squarely held that Google was not responsible for third-party content based on allegations that it "manipulated its search results to prominently feature the article at issue." 582 Fed. Appx. at 805. The Middle District of Florida followed that holding in *Roca Labs*. There, the plaintiff claimed that a website operator had tried to drive traffic to allegedly defamatory comments posted on its site by putting links to the posts on Twitter and using search engine optimization techniques. The court rejected these arguments: "providing links to negative [customer]-review posts does not preclude Section 230 immunity." *Roca Labs.*, 140 F. Supp. 3d at 1321; *accord Gonzalez v. Google, Inc.*, No. 16-cv-03282-DMR, 2018 U.S. Dist. LEXIS 138367, at *35 (N.D. Cal. Aug. 15, 2018) ("Google's use of an algorithm that aggregates user and video data to make content recommendations across YouTube . . . does not turn Google into an 'information content provider' with respect to the videos themselves.").

The same is true of Plaintiffs' assertions that YouTube somehow learned "the meaning and intent behind videos published on YouTube" (TAC ¶ 234) or, conversely, that it "ignored or overlooked" evidence regarding the content of those same videos (*id*. ¶ 134). While these allegations are contradictory (and unsupported by any facts), whether Plaintiffs' contention is that YouTube knew or did not know about the substance of the BitConnect videos makes no

difference. "It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech." *Univ. Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) ("Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content."); *see also Zeran*, 129 F.3d at 331-33 (rejecting argument that online services lose Section 230 protection if "they have actual knowledge of the defamatory statements upon which liability is predicated"); *Jones*, 755 F.3d at 416-17 (6th Cir. 2014) (website does not become the "creator or developer" of content by adding its own comments that purportedly "ratify and adopted" allegedly defamatory statements).

Plaintiffs next charge YouTube with "[d]eveloping policies and procedures to effectuate its goals." TAC ¶ 234; *accord* ¶ 130 (describing YouTube as "a unilateral gatekeeper in formulating policies and procedures that determine which videos get monetized and greatly influence which videos get ushered to the top of its search engine"). It is unclear what this cryptic allegation is supposed to mean, but YouTube does not become a creator or developer merely because it, like most service providers, has policies for operating its service and regulating the content that users post. *See, e.g.*, *Klayman*, 753 F.3d at 1359-60 (rejecting effort to defeat immunity based on "a section of Facebook's Statement of Rights and Responsibilities, which says: 'We do our best to keep Facebook safe'"); *Lycos*, 478 F.3d at 419 ("message board postings do not cease to be 'information provided by another information content provider' merely because the 'construct and operation' of the web site might have some influence on the content of the postings"). Just recently, for example, the D.C. Circuit rejected the argument that "by establishing and enforcing its Blogger Content Policy, Google is influencing—and thus creating—the content it publishes." *Bennett*, 882 F.3d at 1167.[4]

Finally, Plaintiffs' suggestion that YouTube might have allowed the Promoter Defendants to earn money from ads displayed alongside their videos (TAC ¶¶ 120-122), does not

---

[4] The fact that Google, in the period after the claims in this case arose, imposed specific restrictions on cryptocurrency advertisements (TAC ¶ 138) certainly does not void YouTube's immunity. Any such argument would defy a core purpose of Section 230: "to encourage service providers to self-regulate." *Zeran*, 129 F.3d at 331 ("§ 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions"); *see also Roommates.com*, 521 F.3d. at 1170-1171 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.").

make YouTube into the "developer" of those videos. While there is no factual support for Plaintiffs conclusory allegation that YouTube had a "close business relationship" with the Promoter Defendants (*id.* ¶¶ 116-17), it makes no difference here. As a matter of law, the "provision of neutral tools, including targeted advertising, does not equate to content development under section 230"—at least where, as here, those "tools do not encourage the posting of unlawful or objectionable material." *Gonzalez*, 282 F. Supp. 3d at 1168. Likewise, there is no "for-profit exception to § 230's broad grant of immunity." *M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC, 809 F. Supp. 2d 1041, 1050 (E.D. Mo. 2011). Generating revenue from allegedly unlawful content does not "turn a service provider into an information content provider." *Roca Labs*, 140 F. Supp. 3d at 1323 (rejecting argument that website operator lost immunity "because companies can pay to have testimonials placed" on the site); *see also Goddard v. Google, Inc.*, No. C08-2738 JF (PVT), 2008 U.S. Dist. LEXIS 101890, at *10 (N.D. Cal. Dec. 17, 2008) (the "fact that a website elicits online content for profit is immaterial").[5]

In short, Plaintiffs have not alleged that any actions YouTube took in connection with the BitConnect videos were "something more than a website operator performs as part of its traditional editorial function" (*Nemet*, 591 F.3d at 258) or that in any way contributed to the purportedly unlawful nature of those videos. Even taking Plaintiffs' allegations at true, YouTube "has done nothing in this case that might make the misinformation at issue its own, rather than that of another information content provider." *Lycos*, 478 F.3d at 421.

       3.    <u>Plaintiffs Seek To Hold YouTube Liable As A Publisher</u>

As for the last element, Plaintiffs seek to hold YouTube liable as a publisher of the BitConnect videos. "The broad construction accorded to section 230 as a whole has resulted in a capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party." *Doe v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir.

---

[5] The same is true whether the service provider allows the user who created the material at issue to earn money from those postings. In *Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998), for example, the court explained that Section 230 applies "even where the interactive service provider has an active, even aggressive role in making available content prepared by others"—including paying a user under a written contract to publish allegedly defamatory content. *Id.* at 52; *see also, e.g., Gonzalez*, 282 F. Supp. 3d at 1170 (rejecting argument that allegedly sharing ad revenue with users would mean that YouTube is a "content developer" of those users' videos).

2016); *accord Doe v. MySpace Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) ("Courts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content."). The test is simple: "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Barnes v. Yahoo! Inc*, 570 F.3d 1096, 1101-02 (9th Cir. 2009). No matter how Plaintiffs try to spin their claim, this is just such a case.

a.     *Section 230 bars claims seeking to hold service providers liable for failing to protect against third-party content*

Plaintiffs allege that YouTube "[b]reached its duty of reasonable care" to protect them against videos posted by the Promoter Defendants, a duty which YouTube allegedly assumed when it undertook to either allow the Promoter Defendants to publish or when it chose to remove other categories of potentially harmful videos. TAC ¶¶ 131, 135-136. The essence of this claim is that YouTube should have done more to stop the allegedly misleading videos from being published on its service or to shield others from the effects of those videos. Plaintiffs specifically fault YouTube for failing "to delist or demonetize the videos uploaded by BitConnect and its affiliate promoters." *Id.* ¶ 135; *accord id.* ¶ 131 (alleging that YouTube did not do enough to enforce its "policies designed to prevent bad actors . . . from disseminating harmful" content). These assertions aim squarely at the "traditional editorial functions" that Section 230 protects. *Zeran*, 129 F.3d. at 327.

"Indeed, the very essence of publishing is making the decision whether to print or retract a given piece of content." *Klayman*, 753 F.3d at 1359; *see also Barnes*, 570 F.3d at 1102 ("publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content"); *Herrick*, 306 F. Supp. 3d at 590 ("publication" includes the "communication or transmission of information, and the failure to remove information communicated by another party"). Making such determinations "is precisely the kind of activity for which Congress intended to grant absolution with the passage of section 230." *Roommates*, 521 F.3d at 1171-1172; *Bennett*, 882 F.3d at 1168 ("the decision to print or retract is fundamentally a publishing decision for which the CDA provides explicit immunity"); *McDonald*, 219 F. Supp. 3d at 538 (Section 230 bars claims based on duty to "to edit and filter third-party content").

Unsurprisingly, then, courts have consistently "rejected claims that attempt to hold website operators liable for failing to provide sufficient protections to users from harmful content

-13-

created by others." *Backpage*, 817 F.3d at 21; *see, e.g., Klayman*, 753 F.3d at 1359 (Facebook immune from claims based on its failure to remove inflammatory "Intifada" pages that plaintiff found offensive); *MySpace,* 528 F.3d at 419-20 (MySpace immune from claim seeking to hold it liable for "failure to implement basic safety measures to protect minors"); *Green v. Am. Online*, 318 F.3d 465 (3d Cir. 2003) (AOL immune from claim that it failed to protect user against harmful computer virus disseminated by others on its network); *Herrick*, 306 F. Supp. 3d at 590 (Grindr immune from claim that it "failed to incorporate adequate protections against impersonating or fake accounts"). Such claims seek to impose liability on service providers for their editorial judgments—and thus impermissibly "treat" them as the "publisher" of others' content. Plaintiffs' effort to do so here falls squarely within Section 230's protections.[6]

      *b.*    *Plaintiffs cannot escape Section 230 by asserting a failure to warn claim*

        Plaintiffs cannot avoid that result by casting their claim as one for negligent failure to warn. Section 230 is concerned with substance, not labels. "[W]hat matters is not the name of the cause of action … but whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101; *accord MySpace*, 528 F.3d at 420 ("No matter how artfully Plaintiffs seek to plead their claims, the Court views Plaintiffs' claims as directed toward MySpace in its publishing, editorial, and/or screening capacities."). Because the application of the immunity "does not depend on the form of the asserted cause of action," courts "have invoked the prophylaxis of section 230(c)(1) in connection with a wide variety of causes of action"—specifically including negligence. *Backpage*, 817 F.3d at 19; *see, e.g., Green*, 318 F.3d at 470 (liability for the "alleged negligent failure to properly police [AOL's] network for content transmitted by its users . . . would 'treat' AOL 'as the publisher or speaker' of that content"); *Doe v. Am. Online*, 783 So. 2d at 1017 (Section 230 bars liability for "negligent failure to control the content of users' publishing of allegedly illegal postings on the Internet").

---

    [6] The result would be no different insofar as Plaintiffs aim their allegations at YouTube's broader content policies, rather than its specific actions in regard to the BitConnect videos. *See, e.g., Lycos*, 478 F.3d at 422 ("Lycos's decision not to reduce misinformation by changing its web site policies was as much an editorial decision with respect to that misinformation as a decision not to delete a particular posting. Section 230 immunity does not depend on the form that decision takes.").

That Plaintiffs allege failure to *warn*, in addition to failure to *remove*, makes no difference. Two recent cases squarely hold that Section 230 applies to failure to warn claims similar to the one made here. In *Herrick*, 306 F. Supp. 3d at 591-92, the court dismissed failure to warn claims against Grindr, an online dating app. The plaintiff was a Grindr user whose former boyfriend used the app to impersonate him, leading him to be harassed and threatened. The plaintiff alleged that Grindr failed to warn him about this risk. *Id.* at 584-86. But Section 230 barred these claims because they "require treating Grindr as the 'publisher' of the impersonating profiles." As the court explained: "The warning proposed by *Herrick* is only necessary because Grindr (as publisher) does not police or remove objectionable content. Although it is indirect, liability under such a theory nevertheless depends on Grindr's decision to publish the impersonating profiles without reviewing them first." *Id.* at 591.

Similarly, in *McDonald*, the court held that Amazon was immune from a claim seeking to hold it liable for failing to warn about the risks of buying rechargeable batteries from a third-party seller on its platform where batteries the plaintiff had purchased exploded and caused injury. 219 F. Supp. 3d at 538-39. This claim impermissibly sought to treat Amazon as the speaker or publisher of third-party content—no matter whether the plaintiff sought to impose a duty to "edit and filter content posted by third parties" or a duty "to speak alongside content posted by third parties." *Id.* at 538. *McDonald* relied on the Fifth Circuit's decision in *MySpace*, which applied Section 230 to reject "plaintiff's contention that the website had an obligation to warn or somehow shield its users from potentially harmful third-party content." *Id.* at 539 (citing *MySpace*, 528 F.3d at 420).

This case is no different. Plaintiffs' fundamental theory is that YouTube "was negligent in promulgating harmful content and in failing to address certain harmful content on its network." *Green*, 318 F.3d at 471. Plaintiffs thus attempt to hold YouTube "liable for decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role." *Id.* (quoting *Zeran*, 129 F.3d at 332-33). By casting their theory in the guise of a failure to warn claim, Plaintiffs do not escape that problem, they only reinforce it.[7] No matter what label they give it, Plaintiffs' cause of action is premised on the

---

[7] The Ninth Circuit's decision in *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), is not to the contrary. There, though the court held that the CDA did not provide immunity

(continued...)

idea that YouTube had a duty to take protective action in regard to third party content on its platform. As *Herrick* recognized, imposing liability on a service provider for failing to post warnings about content on its platform is "no different" from penalizing it for failing to remove or edit that content. 306 F. Supp. 3d at 591. Such claims are barred by Section 230, and "[n]o amount of artful pleading can avoid that result." *Lycos*, 478 F.3d at 418.

## III.   THE TAC FAILS TO STATE A CLAIM FOR FAILURE TO WARN

Even apart from the overarching federal protection provided by Section 230, Plaintiffs' claim against YouTube should be dismissed. Only "a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679; *see also ADA v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) ("[W]hen plaintiffs have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). Plaintiffs do not meet that requirement here. Their failure to warn claim fails: as a matter of law, YouTube did not have a duty to warn Plaintiffs of the risks of investing in BitConnect.

### A.   YouTube Did Not Have A "Special Relationship" With Plaintiffs

A failure to warn claim falls under the umbrella of negligence, and a plaintiff therefore must adequately plead, among other elements, the existence of a "duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (alterations in original) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* ("*Prosser and Keeton*") § 30, at 164-65 (5th ed. 1984)). Whether a duty is owed presents a threshold question of law to be determined by the court. *See Estate of Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1180 (Fla. 2d DCA 2008); *see also Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783 (Fla. 1st DCA 2003) (duty "is a threshold legal question; if no legal duty exists, then no action for negligence may lie.").

---

(...continued from previous page)

against the plaintiff's negligent failure to warn claim, the court relied upon the fact that the bad actors did *not* post any content to the defendant's website. *Id.* at 851. In that scenario, allowing a failure to warn claim to proceed "would not require Internet Brands to remove any user content or otherwise affect how it publishes or monitors such content." *Id.* Here, by contrast, Plaintiffs' claim against YouTube is specifically based on content *posted* on YouTube. In *Herrick*, the court distinguished *Internet Brands* on this basis, correctly holding that the Ninth Circuit's decision does not apply to such a case. 306 F. Supp. 3d at 392.

Because a duty to warn would make a defendant liable for someone else's misconduct, such a duty can be imposed only in limited circumstances. *Accord Boynton v. Burglass*, 590 So.2d 446, 448 (Fla. 3d DCA 1991) ("Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third party."). "A traditional analysis of a defendant's liability in negligence for the criminal acts of another links the existence of a legal duty to the defendant's *special relationship* to the injured party or to the defendant's ability to control some aspect of the criminal act." *Knight v. Merhige*, 133 So. 3d 1140, 1144 (Fla. 4th DCA 2014) (emphasis added). "[U]nder the common law, a person has no duty to control the conduct of another *or to warn those placed in danger by such conduct* unless a *special relationship* exists between the defendant and the persons whose behavior needs to be controlled or the foreseeable victim of such conduct." *Twiss v. Kury*, 25 F.3d 1551, 1555 (11th Cir. 1994) (emphasis added) (defendant owed no common law duty to plaintiff investors) (*citing Palmer v. Shearson Lehman Hutton, Inc.,* 622 So. 2d 1085 (Fla. 1st DCA 1993)). Such "relationships are protective by nature, requiring the defendant to guard his charge against harm from others." *Knight*, 133 So. 3d at 1145 (citing *Prosser and Keeton* § 56, at 383).

Here, Plaintiffs allege no relationship with YouTube that would impose upon YouTube a legal duty to warn. Plaintiffs are no differently situated that any of YouTube's billions of users around the world. YouTube hosts videos posted by those users or allows them to view videos that others have posted. This relationship is not "protective by nature." Although YouTube has rules about what can be posted, YouTube has not undertaken to protect such users from all the possible harmful consequences of the wide array of videos that may be found on the service, much less to warn users of risks that might be posed by specific videos.[8] The relationship between YouTube and Plaintiffs does not come close to the kind of special relationship—such as

---

[8] Plaintiffs point to YouTube's policies that impose guidelines about what kinds of content may be posted on the service. TAC ¶¶ 131-133. But such rules—which are ubiquitous among websites and other online services that host user-submitted content—do not somehow foist upon YouTube a legal duty to warn, especially where YouTube's Terms of Service expressly disclaim all warranties regarding any product or service offered by third parties through YouTube. *See* <https://www.youtube.com/static?template=terms>. Any alternative rule not only is unsupported by the law, it would have pernicious consequences, creating disincentives for service providers to formulate content rules lest they be charged with failing to alert users to specific content that may be potentially dangerous or risky.

that between landlords and tenants, employers and employees, jailers and prisoners, hospitals and patients, and schools and students—that gives rise to a duty to warn under Florida law. *See Knight*, 133 So. 3d at 1145-46. YouTube is aware of no case holding that a "special relationship" exists between an online service provider and its users that would have required YouTube to warn Plaintiffs about the risks associated with BitConnect.[9]

To the contrary, in several recent cases, courts have specifically rejected duties to warn in similar contexts. For example, in *Internet Brands*, the court, on remand from the Ninth Circuit, dismissed a failure to warn claim against a website operator based on risks that the plaintiff faced from individuals who gathered her contact information from the website, then lured her into a face-to-face meeting and assaulted her. *Doe No. 14 v. Internet Brands, Inc.*, No. CV 12-3626-JFW (PJWx), 2016 U.S. Dist. LEXIS 192144, at *4 (C.D. Cal. Nov. 14, 2016). The court held at the pleading stage that the website operator had no duty to warn. *Id.* at *14. As a matter of law, no "special relationship" existed between the website and either the perpetrators of the crime or the plaintiff, "who, along with at least 600,000 others, were members" of the website. *Id.* at *11.

> The relationship between [the plaintiff] and Internet Brands, a website operator, does not fall under any of the well-recognized "special relationships" under California law, and the Court has not found, nor have the parties cited, any case in which courts have found the existence of a "special relationship" or imposed a duty under similar or analogous circumstances.

*Id.* at *12.[10] The court added that imposing a duty to warn under such circumstances "would also

---

[9] Indeed, courts have consistently rejected imposing a duty to warn on traditional publishers for the content supplied by third-party authors. *See, e.g.*, *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991) ("no publisher has a duty as a guarantor"); *Lewin v. McCreight*, 655 F. Supp. 282, 283-4 (E.D. Mich. 1987) (given "the weighty societal interest in free access to ideas, and potentially unlimited liability, it would be unwise to impose a duty to warn of 'defective ideas' upon publishers of information supplied by third party authors"); *Alm v. Van Nostrand Reinhold Co.*, 480 N.E.2d 1263 (Ill. App. Ct. 1985) (rejecting duty because the burden of "scrutinizing" procedures contained in their publications is too great, and because "the scope of liability would extend to an undeterminable number of potential readers"). The same policy concerns counsel against holding that YouTube had a duty to warn Plaintiffs here.

[10] While *Internet Brands* involved California law, the elements for a negligent failure to warn claim in California are the same as those under Florida law. *See Zelig v. County of Los Angeles,* 45 P.3d 1171, 1182 (Cal. 2002) (no duty to warn absent a "special relationship"). In any event, it is not clear why Florida law rather than California law should apply to the claim in this case. YouTube, of course, is based in California, and Plaintiffs do not allege that they lived in Florida or have any connection to Florida. *See supra* Section I. But, because it should make no

(continued...)

-18-

likely cause website operators to inundate and overwhelm their users with warnings, ultimately diluting the effectiveness of such warnings," and could have a "'chilling effect' on the internet by opening floodgates of litigation." *Id.* at *14.

The court in *Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359-LB, 2017 U.S. Dist. LEXIS 194524, at *29-39 (N.D. Cal. Nov. 26, 2017), rejected a similar claim asserting that a website owed a duty to warn users about dangerous items offered for sale by other users. Following *Internet Brands*, the court held that "a website has no 'special relationship' with its users." *Id.* at *36. Similarly, in *Beckman v. Match.com, LLC*, the court held that a website operator—specifically an online dating service—had no special relationship with its users or duty to warn them of the risks they may face from other users of the service. No. 2:13-CV-97 JCM (NJK), 2017 U.S. Dist. LEXIS 35562, 2017 WL 1304288, at *4 (D. Nev. Mar. 10, 2017). This Court should do the same here. Like the plaintiffs in *Internet Brands*, *Dyroff*, and *Beckman* who asserted claims against website operators for failing to warn them from dangers posed by other users, Plaintiffs do not and cannot allege any special relationship between them and YouTube. Such claims fail as matter of law.[11]

Finally, Plaintiffs' allegations about the relationship between YouTube and the Promoter Defendants (TAC ¶¶ 116-130) cannot support a claim. YouTube did not have a "special relationship" with the Promoter Defendants, who were simply users of YouTube's service. While Plaintiffs sprinkle the TAC with references to "partnership" and the "the YouTube Partner Program" in regards to the relationship between YouTube and the Promoter Defendants, it is clear from the Complaint that "partner" as used in this context means little more than a user who uploaded videos that received more than a certain number of views and thus was eligible to share advertising revenue generated by the videos. TAC ¶¶ 120-121. Such "partnership" does not fundamentally transform the relationship between YouTube and such users. Indeed, YouTube no

---

(...continued from previous page)
difference to the outcome, YouTube assumes solely for purposes of this motion that Plaintiffs' failure to warn claim arises under Florida law.

[11] Plaintiffs assert that a duty arises from YouTube's use of algorithms to determine which videos get promoted and viewed. *Id.* ¶ 131. But *Dyroff* rejected a very similar theory, explaining that it would "render all social-network websites potentially liable whenever they connect their members by algorithm, merely because the member is a member. This makes no sense practically." *Dyroff*, 2017 U.S. Dist. LEXIS 194524, at *36.

more has a "special relationship" with such users—at least not one that can give rise to a duty to warn—than it does with any other user who posts content on its service. Plaintiffs cannot save their failure to warn claim on this basis.

**B.    YouTube Had No Duty To Warn Where It Did Not Have Superior Knowledge of The Relevant Risks**

Plaintiffs' assertion of a duty to warn fails for an additional reason. A defendant has no duty to warn others about risks as to which it has no "superior knowledge," such as "open and obvious" risks. *See, e.g.*, *McAllister v. Robbins*, 542 So. 2d 470, 470 (Fla. 1st DCA 1989) ("no question of duty to warn, since plaintiff's knowledge was equal with that of the defendants"); *Hunt v. Slippery Dip of Jacksonville, Inc.*, 453 So. 2d 139, 139-40 (Fla. 1st DCA 1984) (rejecting duty to warn because "the knowledge of the appellant/invitee of the risk involved in using the water slide was at least equal to that of the appellee"); *accord Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129, 1132 (Fla. 1st DCA 2017) (no duty to warn plaintiff "of the open and obvious condition"). That is precisely the situation here.

Plaintiffs do not (and could not) allege that YouTube had any greater knowledge than they did of the risks inherent in investing in BitConnect's cryptocurrency scheme. In fact, the TAC demonstrates otherwise. The only source that Plaintiffs offer for YouTube's purported knowledge about BitConnect are the "numerous videos posted on YouTube," which Plaintiffs characterize as describing "the fraudulent activity in which the BitConnect Defendants were engaging." TAC ¶ 134. But, of course, all these videos were publicly available on YouTube's service and thus just as accessible to Plaintiffs as they were to YouTube or anyone else. YouTube is not alleged to have had some special access to these videos or to have been involved in their creation. If those videos gave YouTube some reason to know that BitConnect was a risky investment, Plaintiffs would have been in exactly the same position. There was no secret knowledge here. Instead, there was the inherent risk of investing in a novel cryptocurrency scheme, and two parties (Plaintiffs and YouTube) in an equal position to appreciate those risks based on the videos freely available to the public at large. As a matter of law, that scenario does not give rise to a duty to warn.

**CONCLUSION**

For these reasons, Plaintiffs' claim against YouTube should be dismissed and, because any further amendment would be futile, YouTube should be dismissed from this case with prejudice.

Dated:  August 17, 2018                    Respectfully submitted,


                                           /S/ NATHAN M. BERMAN
                                           NATHAN M. BERMAN
                                           FBN: 0329230
                                           NBERMAN@ZUCKERMAN.COM
                                           ZUCKERMAN SPAEDER LLP
                                           101 E. KENNEDY BLVD., SUITE 1200
                                           TAMPA, FLORIDA 33602
                                           (813) 221-1010
                                           (813) 223-7961 (FAX)

                                           BRIAN M. WILLEN (ADMITTED PRO HAC VICE)
                                           BWILLEN@WSGR.COM
                                           ELI B. RICHLIN (ADMITTED PRO HAC VICE)
                                           ERICHLIN@WSGR.COM
                                           WILSON SONSINI GOODRICH & ROSATI P.C.
                                           1301 AVENUE OF THE AMERICAS, 40TH FLOOR
                                           NEW YORK, NY  10019
                                           (212) 999-5800

                                           *Attorneys for YouTube, LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17, 2018, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system thereby serving all registered users in this case.

                                           /s/Nathan M. Berman
                                           Nathan M. Berman