## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE BITCONNECT SECURITIES
LITIGATION

Lead Case No. 9:18-cv-80086-DMM

## DEFENDANT RYAN MAASEN'S MOTION TO DISMISS
## AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

The improperly filed[1] 101-page fifth pleading—the Amended Consolidated Class Action Complaint ("Complaint") [ECF No. 78]—includes six passing references to Defendant Ryan Maasen. These references establish only that Maasen lived in Oklahoma, bought the virtual token BitConnect Coin ("BCC"), promoted BCC on social media, and received compensation for referring others to BCC. In these respects, Maasen is more like Plaintiffs, Albert Parks from Louisiana and Faramarz Shemirani from Dubai, than they care to admit. Like many BCC purchasers, Maasen grew his balance through the referral program. And like Plaintiffs, Maasen lost a considerable sum when BCC's value plunged in January 2018. Indeed, if not for Plaintiffs' arbitrary exclusion, Maasen fits squarely within the purported Class Plaintiffs would like to represent: individuals and entities who transferred funds to invest in BCC and its related programs and suffered financial injury as a result. [ECF No. 78 ¶ 63.]

Even so, Plaintiffs continue to name Maasen as a Defendant. They do so without alleging a single contact between Maasen and Florida to satisfy the personal jurisdiction requirement or a single interaction they had with Maasen to support their seven Florida claims or their lone federal

---

[1] Plaintiffs filed the Amended Consolidated Class Action Complaint in violation of applicable rules. For this reason, Defendant Ryan Maasen moved to strike the Amended Consolidated Class Action Complaint while also noting that he would argue for its dismissal should circumstances warrant. [ECF No. 79 at 2 n.2.] As the motion to strike remains pending and a response to the Amended Consolidated Class Action Complaint is now due, Maasen submits this motion to dismiss and will file a separate notice withdrawing his motion to strike.

claim against him.  And they again mask these pleading deficiencies by relying on the hypothetical claims of unnamed putative class members and hurling generalized and undifferentiated accusations at Maasen and scores of others.  Plaintiffs repeated pleading failures show that they are trying to conjure personal jurisdiction and state a claim against Maasen where neither exists. Consequently, the Court should dismiss all claims against Maasen with prejudice under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## BACKGROUND

According to Plaintiffs, "BITCONNECT" consisted of four United Kingdom business entities initially operated from India, but later from Dubai.  [ECF No. 78 ¶¶ 28-33.] BITCONNECT's founders introduced the virtual token BCC through an initial coin offering in late 2016 and then established a "BitConnect Exchange" on several websites through which users could purchase BCC with Bitcoin or fiat currency.  [ECF No. 78 ¶¶ 83, 85, 110.]  Once a user held BCC, she could participate in the "BitConnect Lending Program," which offered interest if she agreed to lend her BCC back to BITCONNECT on a short-term basis.  [ECF No. 78 ¶¶ 116-21.] She could also participate in the "BitConnect Staking Program," which offered interest if she held BCC in an account called the "BitConnect-QT Wallet."  [ECF No. 78 ¶¶ 122-25.]  She could take advantage of the "BitConnect Referral Program," through which she could "earn additional income for referring additional investors to investing in BITCONNECT."  [ECF No. 78 ¶ 126.]  Finally, she could hold BCC in hopes that its value increased.  [ECF No. 78 ¶¶ 114-15.]

Plaintiffs claim that before purchasing BCC, they "actively researched" these four ways to use BCC, which they deem the "BitConnect Investment Programs."  [ECF No. 78 ¶ 25.]  Parks made his first purchase in August 2017 and Shemirani made his first purchase in March 2017. [ECF No. 78 ¶¶ 26-27.]  Although neither describe what research they conducted, both claim to

have been "personally, and successfully, solicited by the BITCONNECT Defendants"—their designated moniker for four corporations and 37 individuals including Maasen—in connection with unspecified "public representations and active solicitations to purchase BCCs or participate in the BitConnect Investment Programs." [ECF No. 78 ¶ 25.]  They also conclude that every member of the purported "Class" was "actively involved in researching BITCONNECT . . . prior to purchasing their BCCs" and that general "solicitations" made by all 41 "BITCONNECT Defendants" were "successful in soliciting Plaintiffs and the Class to invest with BITCONNECT." [ECF No. 78 ¶ 180-84.]  Plaintiffs do not claim that they viewed or relied on any specific statements by Maasen in deciding to become involved with BCC and the associated programs.

"[O]n January 16, 2018, BITCONNECT posted an anonymous announcement declaring that BITCONNECT had closed the trading platform" including the BitConnect Exchange and the BitConnect Lending Program.   [ECF No. 78 ¶¶ 189.]  "Within moments of BITCONNECT shutting down its trading and lending platforms, the price of BCC plummeted nearly ninety percent (90%) in value; and the token is believed to be effectively useless now." [ECF No. 78 ¶ 191.] Plaintiffs held BCC that lost value in this crash. [ECF No. 78 ¶¶ 26-27.]  In hindsight, Plaintiffs conclude that BCC and the BitConnect Lending Program had no substance.  They believe that rather than generating interest as promised, BitConnect paid old users with funds provided by new users. [ECF No. 78 ¶ 16, 168, 171, 186.]  They hypothesize that to satisfy the need to bring new users aboard, BITCONNECT recruited a "pyramid" of users from all over the world.  [ECF No. 78 ¶¶ 43-60, 87-92.]  This pyramid allegedly included "top public 'Promoter'" Satish Kumbhani, United States "National Promoters" Glenn Arcaro and Joshua Jeppesen, "National Promoters" in other countries, and eventually "Regional Promoter" Maasen.  [ECF No. 78 ¶¶ 90, 91, 128.]

To support these accusations against Maasen, Plaintiffs' 354-paragraph Complaint offers just six specific references to him.  [ECF No. 78 ¶¶ 2, 58, 91, 167, 170, 206.]  These references convey little information:

- Paragraph 2 identifies Maasen as a defendant.

- Paragraph 58 states that Maasen is "domiciled in Tulsa, Oklahoma," and that he "served as an affiliate/recruiter for BITCONNECT, soliciting hundreds if not thousands of BITCONNECT investors in the United States and abroad through social media sites such as YOUTUBE and Facebook."

- Paragraph 91 accuses Maasen and five others of being "Regional Promoters" who "reported directly to Defendant ARCARO or Defendant JEPPESEN[.]"

- Paragraph 167 notes that Maasen "published dozens of YOUTUBE videos promoting the BitConnect Investment Programs" and states without any factual support that Maasen "appears to have primarily focused his efforts on raising investments from high school and college-age investors."

- Paragraph 170 lumps Maasen in with six others and concludes that BitConnect must have used "new BITCONNECT investors' funds to pay . . . salary and commissions for" each individual's "role in bringing additional victims into this scheme."

- Paragraph 206 claims that Maasen "is believed to have had 20,000+ YOUTUBE subscribers, and over 850,000 views, of nearly 100 BITCONNECT videos he published as a 'partner' on YOUTUBE."

This is the entirety of Plaintiffs' case against Maasen: he talked about BCC and its related programs on social media and received payments from BITCONNECT.  Although the Complaint adds new descriptions of political intrigue and corporate machinations, these fresh allegations do not implicate Maasen.  [*See, e.g.*, ECF No. 78 ¶¶ 34-42, 82-83, 87-109.]  Plaintiffs still do not, because they cannot, allege that Maasen knew BITCONNECT was fraudulent.  Nor do they allege that Maasen sold them BCC or solicited them to buy BCC.  Indeed, they do not describe one specific statement that Maasen made to anyone.  Plaintiffs do not even claim that Maasen ever came to Florida or directed any activities at Florida.  The Complaint's lone reference to Florida is that another defendant, Craig Grant, resides in Miami.  [ECF No. 78 ¶ 56.]

Despite Maasen's near total absence from Plaintiffs' narrative, they seek to hold him personally responsible for $2 billion based on his purported "fraudulent and misleading activities—as well as . . . violation of multiple securities laws[.]"  [ECF No. 78 ¶ 192.]  They raise eight causes of action simultaneously against Maasen and 40 other individuals and entities under (1) Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l; (2) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.203-13; and the Florida common law causes of action for (3) unjust enrichment; (4) fraudulent inducement; (5) fraudulent misrepresentation; (6) negligent misrepresentation; (7) conversion; and (8) civil conspiracy.

## ARGUMENT

The Court should dismiss all claims the Complaint raises against Maasen for two main reasons.  First, Plaintiffs do not allege facts showing that Maasen has any connection to Florida and thus fail to establish that the Court may exercise personal jurisdiction over the claims against Maasen.  Second, even if Plaintiffs had pled facts supporting personal jurisdiction, they have not pled facts supporting any claim for relief against Maasen.

## I.      The Court Should Dismiss All Claims Against Maasen for Lack of Personal Jurisdiction

Plaintiffs must plead facts to support the Court's exercise of personal jurisdiction[2] over Maasen.  *See Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) ("Plaintiff bears the burden of making out a *prima facie* case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion.")  Assessing these facts, the Court determines

---

[2] This motion's references to "personal jurisdiction" are to specific jurisdiction, not general jurisdiction.  The Complaint plainly does not support the Court's exercise of general jurisdiction over Maasen, an Oklahoma resident with no ties to Florida.  Fla. Stat. § 48.193(2) (subjecting to the general jurisdiction of Florida courts a "defendant who is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity[.]")

"(1) whether personal jurisdiction exists over the nonresident defendant under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). The Court may exercise personal jurisdiction over claims against Maasen only if both prongs are satisfied. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *see also Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006) (holding that both statutory and constitutional requirement apply in federal question cases).

Here, the nonresident Plaintiffs allege no events occurring in Florida, no contacts between nonresident Maasen and Florida, and no reason this case belongs in Florida. Plaintiffs thus fail to meet either the statutory or constitutional standard for establishing personal jurisdiction.

### A. Florida's long-arm statute provides no basis for the Court to exercise personal jurisdiction over Maasen

For the Court to exercise personal jurisdiction over Maasen under Florida's long-arm statute, Maasen had to have been "operating, conducting, engaging in, or carrying on a business" in Florida, "[c]omitting a tortious act within" Florida, or "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury . . . [t]he defendant was engaged in solicitation or service activities within this state[.]" Fla. Stat. § 48.193(1)(a)(1), (2), (6)(a).

Plaintiffs do not allege facts showing that Maasen operated in Florida, committed a tortious act in Florida, caused an injury in Florida, or engaged in solicitation or service activities in Florida. To the contrary, the Complaint's only jurisdictional allegation pertaining to Maasen is that he "is an individual domiciled in Tulsa, Oklahoma." [ECF No. 78 ¶ 58.] Moreover, the only injuries described in the Complaint presumably occurred in Louisiana and Dubai, where Plaintiffs reside. Thus, the Court should dismiss the claims against Maasen for lack of personal jurisdiction.

B.  <u>The Fourteenth Amendment Due Process Clause bars the Court's exercise of
personal jurisdiction over Maasen</u>

Even if Plaintiffs' Complaint somehow satisfied Florida's long-arm statute, which it does
not, the Fourteenth Amendment's Due Process Clause restricts the Court's exercise of personal
jurisdiction over Maasen.  Jurisdictional due process analysis requires the Court to determine (i)
whether Maasen has the required minimum contacts with the forum, and (ii) whether the exercise
of jurisdiction over Maasen comports with "traditional notions of fair play and substantial justice."
*Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).  No allegations support either element here.

To have had "minimum contacts" with the forum, Maasen must have had "fair warning"
that his activities could subject him to jurisdiction.  *See Madara*, 916 F.2d at 1516; *Burger King
Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  Florida is the right forum for this analysis despite
the presence of a federal securities claim.  It is true that generally, "the proper forum for minimum
contacts analysis is the United States" where the "court's personal jurisdiction is invoked based on
the . . . federal securities laws[.]"  *S.E.C. v. Carrillo*, 115 F.3d 1540 (11th Cir. 1997).  Here,
however, Plaintiffs bring seven Florida claims against Maasen and lack standing to bring their lone
deficiently pled federal claim against him.  *See* Section II.A, *infra*.  Thus, Plaintiffs cannot credibly
argue for a nationwide "minimum contacts" approach.[3]  *See Republic of Panama v. BCCI Holdings
(Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (permitting plaintiffs to "take advantage
of a federal statute's nationwide service of process provision" for personal jurisdiction purposes
only where "an asserted federal claim is not wholly immaterial or insubstantial").

---

[3] Even if Plaintiffs' federal securities claim against Maasen was colorable, which it is not, the Court
should exercise personal jurisdiction over only that claim, dismiss it, and then decline to extend
pendent personal jurisdiction over the remaining Florida law claims.  *See Leon v. Continental AG*,
301 F. Supp. 3d 1203, 1230-32 (S.D. Fla. 2017) (exercising personal jurisdiction over federal
statutory claim, dismissing that claim under Rule 12(b)(6), and declining to extend pendent
personal jurisdiction over remaining state law claims).

Accordingly, Plaintiffs fail to allege—as they must for "minimum contacts" purposes—that Maasen "purposefully directed his activities" at Florida, that those activities had some effect in Florida, that their claims "ar[o]se out of or related to" such activities, or that Maasen could "reasonably anticipate" litigation in Florida. *See Madara*, 916 F.2d at 1516 (citations and internal quotations omitted); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (holding that defendant's awareness that its products would enter the forum was not enough, on its own, to establish personal jurisdiction). Social media posts made by Maasen outside Florida are not enough. *See, e.g., Madara*, 916 F.2d at 1519 (holding that conducting an interview outside Florida did not subject defendant to personal jurisdiction in Florida, even though defamatory statements made during interview were published in Florida); *Alpha Tech. U.S.A. Corp. v. MLSNA Dairy Supply, Inc.*, No. 13cv1062, 2013 WL 6195766, at *7 (M.D. Fla. Nov. 26, 2013) (dismissing claims for lack of personal jurisdiction where YouTube video was viewed in Florida, but there was no indication that defendants purposefully directed the video to Florida residents).

Additionally, despite Plaintiffs' conclusion to the contrary [ECF No. 78 ¶ 22], subjecting Maasen to the Court's personal jurisdiction would also subvert traditional notions of fair play and substantial justice. In assessing this factor, courts look to "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." *Madara*, 916 F.2d at 1517. Maasen, an Oklahoma resident, would face a substantial burden if forced to defend this lawsuit in Florida, under Florida law, for events occurring outside Florida. *See, e.g., Bioheart, Inc. v. Peschong*, No. 13cv60304, 2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013) (holding that California defendant would bear

a substantial burden in defending action in Florida).  Further, Florida has no interest in providing a forum for nonresident Plaintiffs to seek redress for injuries occurring elsewhere.  *Id.*

Last year, in *Bristol-Myers Squibb Company v. Superior Court*, the Supreme Court reaffirmed that for courts to exercise specific personal jurisdiction, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  582 U.S. ___, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  *Bristol-Myers* was a mass tort case in which hundreds of plaintiffs—some California residents but mostly nonresidents—brought claims against a nonresident pharmaceutical manufacturer for injuries occurring after they consumed the drug Plavix.  *Id.* at 1777.  "The California Supreme Court held that the California courts ha[d] specific jurisdiction to entertain the nonresidents' claims" despite the absence of any connection to California.  *Id.*  The Supreme Court reversed, holding that California courts could not exercise personal jurisdiction over the claims of nonresident plaintiffs against a nonresident defendant for injuries suffered outside California.  *See id.* at 1781.  Crucially for this case, the Supreme Court also observed that the "mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California— and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresident[] [plaintiffs'] claims."  *Id.* at 1781 (emphasis in original).

Plaintiffs' claims against Maasen present the exact personal jurisdiction scenario the Supreme Court considered constitutionally suspect in *Bristol-Myers*: nonresidents, bringing claims against another nonresident, for injuries suffered outside the forum.  Plaintiffs will probably seek to establish personal jurisdiction by relying on the hypothetical claims of putative class members from Florida.  But, as the Supreme Court explained in *Bristol-Myers*, "a defendant's relationship

9

with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 1781 (quoting *Walden v. Fiore*, 571 U.S. ___, 134 S. Ct. 1115, 1123 (2014)). Thus, the Court may not constitutionally exercise personal jurisdiction over Maasen.

That Plaintiffs bring this case in federal court and not state court like in *Bristol-Myers* does not change the analysis. In *Roy v. FedEx Ground Package Systems, Incorporated*, a federal court dismissed a nonresident plaintiff's claims against a nonresident defendant based on events occurring outside the forum. No. 17cv30116, 2018 WL 2324092, at *7-9 (D. Mass. May 22, 2018). The *Roy* court observed that even though *Bristol-Myers* left open "the question of whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court . . . there can be no doubt that the 'settled principles' of specific jurisdiction on which the *Bristol-Myers* Court relied applied here, notwithstanding that this case is in federal and not state court." *Id*.

Further, the fact that this is a putative class action and not a mass tort case like *Bristol-Myers* is irrelevant. "The constitutional requirement[] of due process does not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case." *In re Dental Supplies Antitrust Litig.*, No. 16cv696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017). As such, a growing chorus of federal district courts have applied *Bristol-Myers* to dismiss putative nationwide class action claims brought by nonresidents against other nonresidents based on events occurring outside the forum. *See, e.g.*, *In re Nexus 6P Prod. Liab. Litig.*, No. 17cv02185, 2018 WL 827958, at *3-4 (N.D. Cal. Feb. 12, 2018); *DeBernardis v. NBTY, Inc.*, No. 17cv6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018); *LDGP, LLC v. Cynosure, Inc.*, No. 15cv50148, 2018 WL 439122, at *3 (N.D. Ill. Jan. 16, 2018); *McDonnell v. Nature's Way Products, LLC*, No. 16cv5011, 2017 WL

4864910, at *4 (N.D. Ill. Oct. 26, 2017); *Spratley v. FCA US LLC*, No. 17cv62, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017).  The Court should follow these cases and dismiss nonresident Plaintiffs' claims, based on events occurring outside Florida, against nonresident Maasen.

## II.    The Court Should Dismiss All Claims Against Maasen for Failure to State a Claim

Plaintiffs also fail to state any claim for relief against Maasen.  To survive a Rule 12(b)(6) motion, the Complaint must contain facts that state a claim "plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).  Because Plaintiffs do not state a plausible claim against Maasen based on their own experiences, the Court should dismiss all putative class claims against Maasen as well.  *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (holding that a "claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.")

### A.    The Court should dismiss Count I because Plaintiffs do not allege that Maasen sold them, or solicited them to purchase, unregistered securities

As an initial matter, the sale of unregistered securities claim against Maasen is wholly immaterial and insubstantial because Plaintiffs lack standing: they do not claim to have purchased anything from Maasen or to have received any solicitations from him.  Under the text of Section 12(a) of the Securities Act, "a plaintiff must adequately allege that it purchased securities . . . **from a defendant that actually sold him the securities or actively and successfully solicited his purchase** of the securities."  *City of St. Clair Shores Police v. Nationstar Mortg. Holdings Inc.*, No. 15-61170, 2016 WL 4705718, at *6 (S.D. Fla. June 21, 2016) (emphasis added).  Plaintiffs try in vain to establish standing through a series of legal conclusions: they were "personally, and

successfully, solicited by the BITCONNECT Defendants through public representations and active solicitations to purchase BCCs or participate in the" BitConnect Lending Program [ECF No. 78 ¶ 25]; the "BITCONNECT Defendants"—41 individuals and entities including Maasen— "solicited investments in BCC" [ECF No. 78 ¶ 181]; and the "Promoter Defendants"—16 individuals including Maasen[4]—"each actively solicited investments in BCC . . . largely through YOUTUBE—for the sole purpose of receiving compensation." [ECF No. 78 ¶ 184.] Palpably lacking from these sweeping conclusions are any facts about what Maasen said or did or any specific interaction between Maasen and Plaintiffs. This lack of specificity negates Plaintiffs' standing to bring Count I against Maasen.

In addition to standing, to substantiate their cause of action for sale of unregistered securities, Plaintiffs must "demonstrate that (1) the defendant directly or indirectly sold or offered to sell securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect." *SEC v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004) (stating standard for violations of Section 5 of the Securities Act, the basis for Section 12(a)(1) liability). Even assuming for purposes of this motion that BCC and its associated programs were all "securities" under federal law, the Court should dismiss Count I because

---

[4] Plaintiffs' undifferentiated blanket accusations against groups of Defendants make the Court's task of determining the sufficiency of the allegations exceedingly difficult and render the Complaint a shotgun pleading, warranting dismissal. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018) (A "District Court retains authority to dismiss a shotgun pleading on that basis alone[.]"); *Magluta v. Samples*, 256 F.3d 1282,1284 (11th Cir. 2001) (criticizing "allegations that 'the defendants' engaged in certain conduct, making no distinction among the 14 defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."); *Leon*, 301 F. Supp. 3d at 1226 (holding that generalized allegations against many defendants "which do not distinguish the conduct of [d]efendants . . . are insufficient to meet the requirements of Rule 8"). Dismissal is especially appropriate because one court has already warned Plaintiffs' counsel against filing such pleadings. *See Long v. BitConnect International, PLC*, No. 18cv00154, ECF No. 7, at 2 (M.D. Fla. Feb. 6, 2018).

Plaintiffs do not plausibly allege that Maasen "sold" or "solicited" them to purchase BCC.  "To demonstrate that a defendant sold securities, the [plaintiff] must prove that the defendant was a 'necessary participant' or 'substantial factor' in the illicit sale." *Id.*  For example, a man who negotiated and signed a contract through which his company received unregistered shares it later sold for a windfall in a "pump and dump" scheme "sold securities" for purposes of a violation of Section 5 of the Securities Act and therefore for purposes of Section 12(a)(1) as well.  *Id.*

There are no such supporting allegations here.  The mere facts that Maasen made YouTube videos about BCC or that BITCONNECT paid Maasen do not show that Maasen was a "necessary participant" or "substantial factor" in sales or solicitations to Plaintiffs or to anyone else.  Nor do Plaintiffs' jumbled allegations against several defendants support their legal conclusion that all 16 "Promoter Defendants" including Maasen were "sellers" under the securities laws.  [ECF No. 78 ¶ 184.]  In fact, by relying on these collective allegations, Plaintiffs fail to specify what impact— if any—Maasen had on their own or others' decisions to purchase BCC or participate in the related programs.  Without alleging such facts about what Maasen specifically said or did, Plaintiffs impermissibly attempt to allege a Section 12(a) violation by decree.  *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10cv0302, 2011 WL 4389689, at *10 (C.D. Cal. May 5, 2011) ("Plaintiffs must include very specific allegations of solicitation, including direct communication with Plaintiffs.")  The Court should dismiss the Complaint's securities claim against Maasen for lack of standing and for failure to state a claim.

      B.  <u>The Court should dismiss Count XVI because Plaintiffs' FDUTPA claim is really a securities claim and, in any event, fails to meet the Rule 9(b) standard</u>

Plaintiffs' claim under the FDUTPA fails because that statute does not apply to alleged violations of securities laws.  Courts interpret the FDUTPA in line with the Federal Trade Commission Act (the "FTC Act"), 18 U.S.C. § 5.  *See* Fla. Stat. § 501.204(2) (stating that "due

consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a)(1) of the [FTC] Act" in construing the FDUTPA's terms.)  The "FTC Act has been consistently interpreted to preclude coverage of securities claims in the overwhelming majority of state and federal courts addressing the issue," and courts applying the FDUTPA have held that it does not apply to alleged securities transactions. *Crowell v. Morgan Stanley Dean Witter Servs., Co., Inc.*, 87 F. Supp. 2d 1287, 1294 (S.D. Fla. 2000) (citation and internal quotations omitted) (dismissing FDUTPA claim based on the alleged sale of securities because "[s]everal factors favor the conclusion that securities transactions are not within the intended scope of the [FDUTPA]"); *Rogers v. Cisco Sys., Inc.*, 268 F. Supp. 2d 1305, 1316 (N.D. Fla. 2003) (dismissing FDUTPA claim based on false information provided to securityholders because "the FDUPTA, like most state unfair trade practices acts, is largely modeled after Section 5 of the [FTC Act]").

Plaintiffs admit that their FDUTPA claim derives from alleged violations of "the securities laws" and even claim, with no authority and contrary to *Crowell* and *Rogers*, that "a violation of the securities laws is a *per se* violation of FDUTPA."  [ECF No. 78 ¶ 299.]  They also try to characterize as "deceptive trade practices" BITCONNECT's alleged misrepresentations that it "complied with all applicable securities laws" and that affiliates who were "paid commissions for their sale of BitConnect Investment Programs were properly registered to procure those sales[.]" [ECF No. 78 ¶ 301.]  The Court should reject Plaintiffs' attempt to bootstrap a FDUTPA claim from securities allegations. *See Crowell*, 87 F. Supp. 2d at 1294; *Rogers*, 268 F. Supp. 2d at 1316.

Even if the FDUTPA applied to securities transactions, Plaintiffs state no claim under the statute.  "A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *N. Am. Clearing, Inc. v. Brokerage Computer*

*Sys., Inc.*, 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (citations and internal quotations omitted).

Because Plaintiffs' FDUTPA claim is at least partially based on allegedly fraudulent conduct, the

heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies.   *See Leon v.*

*Continental AG*, 301 F. Supp. 3d 1203, 1226-27 (S.D. Fla. 2017) (applying Rule 9(b) to FDUTPA

claim that sounded in fraud and compiling cases).   The purpose of Rule 9(b) is to place defendants

like Maasen on notice about the "precise misconduct with which they are charged" and to

"protect[] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v.*

*Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  "To satisfy the Rule 9(b) standard,

[fraud claims] must allege: (1) the precise statements, documents, or misrepresentations made; (2)

the time and place of and person responsible for the statement; (3) the content and manner in which

the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud."

*Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007).

    "Generally, to survive a Rule 9(b) motion, a plaintiff claiming fraud must apprise each

defendant of the scope of his or her participation in the alleged fraud." *Ackerman v. Nat'l Prop.*

*Analysts, Inc.*, 887 F. Supp. 494, 505 (S.D.N.Y. 1992).  A "blanket allegation that 'defendants

made representations' without any further specificity is fatal to [a fraud] claim." *Fox Fuel, a Div.*

*of Keroscene, Inc. v. Delaware Cty. Sch. Joint Purchasing Bd.*, 856 F. Supp. 945, 954 (E.D. Pa.

1994).  Consequently, "[i]n a case with multiple defendants, the complaint should contain specific

allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants

together are insufficient." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F.

App'x 81, 86 (11th Cir. 2008) (citing *Ambrosia Coal*, 482 F.3d at 1317).

    Here, Count XVI does not meet the Rule 12(b)(6) or Rule 9(b) standards because it contains

no specific statements Maasen made to Plaintiffs or to anyone else, at any time, about anything.

Although Plaintiffs repeatedly assert that all 41 "BITCONNECT Defendants" made false statements in certain broad categories, these generalized accusations are not enough to support a FDUTPA claim against Maasen specifically. *See W. Coast Roofing & Waterproofing*, 287 F. App'x at 86. And without alleging any statements Maasen specifically made, Plaintiffs cannot allege how Maasen injured them or caused such injury. For these reasons, the Court should dismiss Count XVI for failure to state a claim. *See Llado-Carreno v. Guidant Corp.*, No. 09-20871, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (dismissing FDUTPA claim because the plaintiff's conclusory allegations were "not supported by any specific facts").

> C. The Court should dismiss Counts XVII, XVIII, and XIX because Plaintiffs' fraud
> and misrepresentation claims also fail to meet the Rule 9(b) standard

Plaintiffs' common law fraud and misrepresentation claims against Maasen stem from the flawed notion that each of the 41 "BITCONNECT Defendants" must somehow be liable because Plaintiffs believe that BITCONNECT was a Ponzi scheme. Stating a plausible fraud or misrepresentation claim, though, is not as simple as describing a purported scheme in broad strokes and then alleging generally and with no specific reasons that each of 41 defendants participated.

Fraud in the inducement and fraudulent misrepresentation both require allegations that the defendant (i) made some false statement of material fact, (ii) knew the statement was false, (iii) intended the statement to induce the plaintiff to act, and (iv) that the plaintiff was injured as a result. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808–09 (11th Cir. 2010); *Godelia v. Doe 1*, 881 F.3d 1309, 1321 (11th Cir. 2018). Negligent misrepresentation requires similar allegations, except that the defendant must have acted negligently rather than knowingly. *See Sutherland v. SATO Glob. Sols., Inc.*, No. 17cv61596, 2018 WL 3109627, at *7 (S.D. Fla. Apr. 10, 2018).

Allegations supporting fraud or negligent misrepresentation must also meet the Rule 9(b) standard.  *See, e.g.*, *Stone Invest Dakota LLC v. Bastos*, No. 15-61406-CIV, 2016 WL 200268, at *4 n.3 (S.D. Fla. Jan. 14, 2016) (holding that fraudulent and negligent misrepresentation claims are subject to Rule 9(b)); *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) ("Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims"); *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10cv22153, 2011 WL 4434891, at *4 (S.D. Fla. Sept. 23, 2011) ("A claim for fraudulent inducement is also subject to Rule 9(b) heightened pleading standards.").

As explained above, Plaintiffs fail to make any specific fraud allegations about Maasen. Nowhere in the Complaint do Plaintiffs identify a specific false or misleading statement Maasen made to Plaintiffs.  Likewise, Plaintiffs do not and cannot credibly allege that Maasen had any knowledge that BITCONNECT was a Ponzi scheme.  Instead, Plaintiffs generally allege the same boilerplate against Maasen that they do against several others: he "published dozens of YOUTUBE videos" promoting BCC [ECF No. 78 ¶ 167] and "solicit[ed] hundreds if not thousands of BITCONNECT investors in the United States and abroad . . . ." [ECF No. 78 ¶ 58] while receiving commissions to bring "additional victims into the scheme."  [ECF No. 78 ¶ 170.]  Such broad allegations do not provide the precision Rule 9(b) requires.  *See Ambrosia Coal*, 482 F.3d at 1316-17; *Walker v. Hallmark Bank & Trust, Limited*, 707 F. Supp. 2d 1317, 1318 (S.D. Fla. 2010) (dismissing a peripheral defendant from a fraud case pursuant to Rule 9(b) because Plaintiffs did not allege the defendant's "knowledge of the Ponzi scheme" or that the defendant "made any affirmative misrepresentations to further the alleged fraud." ).

The *Walker* analysis applies here.  Plaintiffs raise the same blanket allegations against Maasen as they do about dozens of others, yet still seek to hold Maasen personally liable for fraud.

17

In doing so, Plaintiffs fail to give Maasen notice of the basis for their fraud claims against him—the very harm Rule 9(b) protects against. Thus, the Court should dismiss Counts XVII through XIX against Maasen.

> **D.** <u>The Court should dismiss Counts XV, XX, and XXI because Plaintiffs fail to state claims for unjust enrichment, conversion, or civil conspiracy</u>

Finally, Plaintiffs bring three ancillary causes of action against Maasen that the Court should also dismiss for failure to state a claim. "To make a claim for unjust enrichment, a plaintiff must show: (1) that plaintiff conferred a benefit on defendant; (2) that defendant has knowledge of the benefit; (3) that defendant has accepted or retained the benefit conferred; and (4) that under the circumstances it would be inequitable for defendant to retain the benefit without paying fair value for it." *Martin v. Creative Mgmt. Grp., Inc.*, No. 10cv23159, 2013 WL 12061809, at *5 (S.D. Fla. July 26, 2013) (citing *Woodburn v. State of Fla. Dep't, of Children and Family Servs.*, 854 F. Supp. 2d 1184, 1204 (S.D. Fla. 2011)). "[A] Plaintiff must show that he or she has **directly** conferred a benefit on a defendant in order to sustain an unjust enrichment claim." *Id.* (emphasis added). "An indirect benefit is not enough to support a claim." *Id.* (citation omitted).

Plaintiffs bring their unjust enrichment claim to recover losses suffered when the value of their BCC dropped, but do not and cannot allege what benefit they directly conferred on Maasen. Instead, they again retreat to the assertion that all 41 "BITCONNECT Defendants" collectively operated "Ponzi/pyramid schemes" and so must pay back any money they made through BCC. [ECF No. 78 ¶ 291.] Plaintiffs' allegation that Maasen and six other defendants received salary and commissions from BITCONNECT [ECF No. 78 ¶ 170] does not save their unjust enrichment claim, as BITCONNECT—not Plaintiffs—conferred that benefit on Maasen. *See Martin*, 2013 WL 12061809, at *6. Because there is no allegation that Plaintiffs directly conferred any benefit on Maasen, the Court should dismiss Count XV for unjust enrichment.

Next, "Florida courts have identified three components to a claim for conversion: an '1) act of dominion wrongfully asserted; 2) over another's property; and 3) inconsistent with Plaintiff's ownership therein.'" *Rich v. Wachovia Bank N.A.*, No. 08cv81575, 2009 WL 10699957, at *3 (S.D. Fla. June 19, 2009) (citing *Del Monte Fresh Produce Co. v. Dole Food Co. Inc.*, 136 F. Supp. 2d 1271, 1294 (S.D. Fla. 2001)). In *Rich*, aggrieved investors raised a conversion claim against a bank for losses in the value of "auction rate securities" they held. *Id.* at *1-2. In dismissing this conversion claim, the court explained that "it appears the Plaintiffs own the auction rate securities, and simply want [the defendant] to compensate for the value they were once worth." *Id.* at *4. Dismissal was appropriate because lost value did not show that the bank wrongfully exercised of dominion over the investors' property. *Id.*

This case resembles *Rich*. The Court should dismiss Count XX because the conversion claim against Maasen does not allege that Maasen took any wrongful act of dominion over Plaintiffs' BCCs or that Plaintiffs asked Maasen to return any property. Rather, Plaintiffs' conversion claim states that someone other than Maasen—BITCONNECT—"has kept Plaintiffs' and the Class Members' funds and assets after Plaintiffs and the Class Members have requested their return[.]" [ECF No. 78 ¶ 327.] Plaintiffs also allege their belief that Maasen received funds from BITCONNECT that originally came from them, but this belief alone does not plausibly show that Maasen exercised wrongful dominion specifically over Plaintiffs' funds. [ECF No. 78 ¶ 329.] The Court should dismiss Count XX because it is Plaintiffs' transparent attempt to recoup from Maasen losses they themselves claim someone else converted.

Finally, "[u]nder Florida law, in order to state a claim for civil conspiracy, a plaintiff must allege: '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d)

damage to plaintiff as a result of the acts done under the conspiracy.'" *Lan Li v. Walsh*, No. 16cv81871, 2017 WL 3130390, at \*6 (S.D. Fla. July 24, 2017) (quoting *Phillip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015)).  "A civil conspiracy derives from the underlying claim that forms the basis of the conspiracy[;] a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim." *Id.* (citing *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007)).

As explained above, Plaintiffs have not plausibly alleged that Maasen was involved in fraudulent conduct or that he knew BITCONNECT was a Ponzi scheme.  Plaintiffs' wholesale accusations against all 41 "BITCONNECT Defendants" do not suffice.  For example, in *Lan Li*, the court dismissed a civil conspiracy claim because it was "unclear what relationship Defendant had with other Defendants, and what agreement he entered into with those Defendants." *Id.* at \*7. The Complaint suffers from this same infirmity.  It fails to distinguish between the acts of many Defendants, rendering the relationship between Maasen and other Defendants unclear.  The Complaint also contains no allegation that Maasen specifically entered any agreement with other Defendants to defraud Plaintiffs.  Thus, the Court should follow *Lan Li* and dismiss Count XXI for failure to allege a civil conspiracy against Maasen.  *See id.*

## CONCLUSION

For the reasons above, the Court should dismiss Plaintiffs' Complaint—their fifth and improperly filed pleading—with prejudice.  *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1057 (11th Cir. 2015) ("Three attempts at proper pleading are enough.")

## <u>REQUEST FOR HEARING</u>

Under Local Rule 7.1(b)(2), Maasen requests oral argument should the Court determine that a hearing would be appropriate upon the conclusion of briefing.

Date: October 25, 2018

Respectfully submitted,

s/ *Kiran N. Bhat*
Ryan K. Stumphauzer, Esq. (Fla. Bar No. 0012176)
rstumphauzer@sslawyers.com
Kiran N. Bhat, Esq. (Fla. Bar No. 1008370)
kbhat@sslawyers.com
Stumphauzer & Sloman, PLLC
SunTrust International Center
One SE 3rd Avenue, Suite 1820
Miami, FL 33131
Tel: (305) 371-9686
Fax: (305) 371-9687

*Attorneys for Defendant Ryan Maasen*

## CERTIFICATE OF SERVICE

I certify that on October 25, 2018, I: (1) electronically filed this document with the Clerk of the Court using CM/ECF, causing service of a copy on counsel of record listed below with an email address, and (2) caused service copies to be mailed to those listed without an email below.

s/ *Kiran N. Bhat*
Kiran N. Bhat, Esq.

## SERVICE LIST

David Chad Silver
DSilver@SilverMillerLaw.com
Jason Stuart Miller
JMiller@SilverMillerLaw.com
Silver Miller
11780 West Sample Road
Coral Springs, FL 33065
Tel: (954) 516-6000

Donald J. Enright
denright@zlk.com
Levi & Korsinsky LLP
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290

John Allen Yanchunis, Sr.
jyanchunis@forthepeople.com
Morgan & Morgan
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505

Steven William Teppler
steppler@abbottlawpa.com
Abbott Law Group PA
2929 Plummer Cover Road
Jacksonville, FL 32223
Tel: (941) 487-0050

Jasper D. Ward
Jones Ward PLC
1205 E. Washington St. Suite 111
Louisville, KY 40206
Tel: (502) 882-6000

Emily Cornelia Komlossy
eck@komlossylaw.com
Ross Adam Appel
raa@komlossylaw.com
Komlossy Law P.A.
4700 Sheridan Street , Suite J
Hollywood, FL 33021
Tel: (954) 842-2021

Joshua Harris Eggnatz
JEggnatz@JusticeEarned.com
Michael James Pascucci
MPascucci@JusticeEaerned.com
Eggnatz Pascucci, P.A.
5400 S. University Drive, Suite 417
Davie, FL 33328
Tel: (954) 889-3359

Michael J. Klein
Stull Stull & Brody
6 E 45th St Ste 500
New York, NY 10017
Tel: (212) 687-7230

Nathan Michael Berman
nberman@zuckerman.com
Zuckerman Spaeder Taylor & Evans
101 E Kennedy Boulevard, Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010

Ryan Hildreth
2801 Kelvin Avenue
Unit 596
Irvine, CA 92614

Brian Willen
bwillen@wsgr.com
Eli B. Richlin
erichlin@wsgr.com
Wilson Sonsini Goodrich Rosati
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel: (212) 497-7781