# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

In re: BitConnect Securities Litigation

Lead Case No: 9:18-cv-80086-DMM

Honorable Donald M. Middlebrooks

## DEFENDANT GLENN ARCARO'S MOTION TO DISMISS
## PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

III.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(2) ..................................................................................................................6

     A.    Florida's Long-Arm Statute Does Not Confer Jurisdiction Over Mr. Arcaro ...........................................................................................................6

     B.    Exercising Jurisdiction over Mr. Arcaro Violates Traditional Notions of Fair Play and Substantial Justice.................................................................7

IV.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) ...............................................................................................................11

     A.    The Securities Claims (Counts I and XII) Fail as a Matter of Law ......................11

          1.    BCC is not a security ..........................................................................12

          2.    Mr. Arcaro did not "sell" or "successfully solicit" BCC to any of the Plaintiffs...............................................................................15

          3.    Plaintiffs Fail to Plausibly Allege that Mr. Arcaro was a "Control Person" as the Term is Defined Under Section 15(a) ................................17

     B.    Plaintiffs' Remaining Claims Should Be Dismissed Under Rule 9(b) .................19

     C.    Plaintiffs Could Not Have Reasonably Relied On Any Alleged Misstatements ...................................................................................................21

     D.    Plaintiffs Have Failed to Establish a Violation of Florida's Deceptive and Unfair Trade Practices Act Claim (Count XIV) ....................................................22

     E.    The Conversion Claim (Count XX) Must be Dismissed Because Mr. Arcaro Never Had The Money Plaintiffs Used to Purchase BCC .......................23

     F.    Claim for Unjust Enrichment (Count XV) Must be Dismissed Because Mr. Arcaro Has Not Received a Benefit from Plaintiffs .......................................24

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aaron Data Sys., Inc. v. GLD Int'l, Inc.*,
  No. 17-62111-CIV, 2018 WL 1973653, (S.D. Fla. Mar. 23, 2018),
  *report and recommendation adopted*, 2018 WL 1972439 (S.D. Fla. Apr. 26,
  2018) ............................................................................................................................23

*Alpha Tech. U.S.A. Corp. v. MLSNA Dairy Supply, Inc.*,
  No. 6:13-CV-1062, 2013 WL 6195766 (M.D. Fla. Nov. 26, 2013) ..........................................9

*Alunni v. Dev'ment Res. Grp., LLC*,
  445 Fed. App'x 288 (11th Cir. 2011) ......................................................................................14

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 183 (11th Cir. 2010) ................................................................................................20

*Am. Overseas Marine Corp. v. Patterson*,
  632 So. 2d 1124 (Fla. Dist. Ct. App. 1994) .............................................................................7

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
  482 F.3d 1309 (11th Cir. 2007) ..............................................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................11

*Baggett v. Electricians Local 915 Credit Union*,
  620 So. 2d 784 (Fla. Dist. Ct. App. 1993) ..............................................................................22

*Barnett v. Blane*,
  No. 11-cv-14345, 2012 WL 12862653 (S.D. Fla. July 3, 2012) .......................................23, 24

*Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*,
  No. 10-22153-CIV, 2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) .........................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................11

*Bensusan Rest. Corp. v. King*,
  126 F.3d 25 (2d Cir. 1997) .......................................................................................................9

*Bently v. Bank of Am., N.A.*,
  773 F. Supp. 2d 1367 (S.D. Fla. 2011) ...................................................................................21

*Brown v. Enstar Grp., Inc.*,
  84 F.3d 393 (11th Cir. 1996) ..................................................................................................18

*CCTV Outlet, Corp. v. Desert Security Sys. LLC,*
  No. 17-cv-60928, 2017 WL 5640717 (S.D. Fla. Aug. 7, 2017) ................................................9

*Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.,*
  770 F. Supp. 2d 1261 (S.D. Fla. 2011) ...................................................................................25

*U.S. ex rel. Citizens United to Reduce & Block Fed. Fraud, Inc. v. Metro. Med.*
  *Ctr., Inc.,*
  No. 89-cv-0592, 1990 WL 10519617 (S.D. Fla. Jan. 11, 1990)..........................................20

*Clay v. AIG Aerospace Ins. Servs., Inc.,*
  61 F. Supp. 3d 1255, 1268 (M.D. Fla. 2014) ..........................................................................7

*In re CNL Hotels & Resorts, Inc. Sec. Litig.,*
  No. 604CV1231ORL31KRS, 2005 WL 1126561 (M.D. Fla. May 9, 2005)....................15, 17

*Craftmatic Sec. Litigation v. Kraftsow,*
  890 F.2d 628 (3d Cir. 1989)...................................................................................................16

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,*
  593 F.3d 1249 (11th Cir. 2010) ...............................................................................................6

*Eberhardt v. Waters,*
  901 F.2d 1578 (11th Cir. 1990) .............................................................................................13

*Edwards v. Prime, Inc.,*
  602 F.3d 1276 (11th Cir. 2010) .............................................................................................24

*Enterprise Rent-A-Car Co. v. Stowell,*
  137 F. Supp. 2d 1151 (E.D. Mo. 2011)....................................................................................9

*Five for Entm't S.A. v. Rodriguez,*
  877 F. Supp. 2d 1321 (S.D. Fla. 2012) ..................................................................................23

*Fraser v. Smith,*
  594 F.3d 842 (11th Cir. 2010) .................................................................................................9

*Griffin v. PaineWebber, Inc.,*
  No. 99 CIV. 2292, 2001 WL 740764 (S.D.N.Y. June 29, 2001)..........................................17

*Grills v. Philip Morris USA, Inc.,*
  645 F. Supp. 2d 1107 (M.D. Fla. 2009)..................................................................................20

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
  466 U.S. 408 (1984)...............................................................................................................7, 8

*Hinkle v. Con'tl Motors, Inc.,*
  268 F. Supp. 3d 1312, 1317 (M.D. Fla. 2017) ........................................................................7

*Imaging Science Found., Inc. v. Kane*,
  09-cv-81288, 2010 WL 2035323 (S.D. Fla. May 24, 2010)..........................................8, 10, 11

*Jackson v. Cal. Newspapers P'ship*,
  406 F. Supp. 2d 893 (N.D. Ill. 2005) ........................................................................................9

*Jackson v. First Fed. Sav. of Ark., F.A.*,
  709 F. Supp. 863 (E.D. Ark. 1988)..........................................................................................17

*Landreth Timber Co. v. Landreth*,
  471 U.S. 681 (1985)..................................................................................................................12

*LBS Petroleum LLC v. Demir*,
  No. 1:15-cv-22880-UU, 2015 WL 12469064 (S.D. Fla. Oct. 28, 2015) ..................................24

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990) .................................................................................................6

*Maine Bank v. Weaver*,
  455 U.S. 551 (1982)..................................................................................................................12

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  No. 2:10-CV-0302, 2011 WL 4389689 (C.D. Cal. May 5, 2011) ............................................17

*In re Mona Lisa at Celebration, LLC*,
  436 B.R. 179 (M.D. Fla. Bankr. 2010) ....................................................................................23

*Neomedia Tech. Inc. v. Airclic, Inc.*,
  No. 04-c-566, 2004 WL 848181 (N.D. Ill. Apr. 16, 2004)........................................................9

*Paige v. Bitconnect Int'l PLC et al.*,
  No. 3:18-cv-00058-CHB-CHL (W.D. Ken. *filed* Jan. 29, 2018)............................................11

*Pinter v. Dahl*,
  486 U.S. 622 (1988)............................................................................................................16, 17

*Rosa v. Amoco Oil Co.*,
  262 F. Supp. 2d 1364 (S.D. Fla. 2003) ....................................................................................22

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) ..............................................................................................16, 17

*Safeguard Support Servs., LLC v. Nationwide Referral Servs., LLC*,
  No. 11-61977-CIV, 2011 WL 13217971 (S.D. Fla. Dec. 15, 2011)........................................24

*Sallah v. Fahrenheit Venture Fund LLC*,
  14-cv-22150, 2014 WL 12629450 (S.D. Fla. Sept. 5, 2014)...................................................24

*Sculptchair, Inc. v. Century Arts, Ltd.*,
   94 F.3d 623 (11th Cir. 1996) ....................................................................8

*SEC v. Koscot Interplanetary, Inc.*,
   497 F.2d 473 (5th Cir. 1974) ..................................................................16

*SEC v. W.J. Howey Co.*,
   328 U.S. 293 (1946)................................................................................13

*Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   295 F.R.D. 540 (S.D. Fla. 2013)........................................................12, 19

*Tancogne v. Aquimpex, S.p.A.*,
   No. 07-cv-22553, 2009 WL 10667749 (S.D. Fla. Mar. 6, 2009) .............7

*In re Tezos Sec. Litig.*,
   No. 17-CV-06779-RS, 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ....17

*Tippens v. Round Island Plantation LLC*,
   No. 09-CV-14036, 2009 WL 2365347 (S.D. Fla. July 31, 2009)..........19

*Villeneuve v. Adv. Business Concepts Corp.*,
   730 F.2d 1403 (11th Cir. 1984) ..............................................................14

*Westwind Limo., Inc. v. Shorter*,
   932 So.2d 571 (Fla. Dist. Ct. App. 2006) ................................................9

*Wolf v. Celebrity Cruises, Inc.*,
   683 Fed App'x 786 (11th Cir. 2007) .........................................................7

*In re Xoma Corp. Sec. Litig.*,
   No. C-91-2252, 1990 WL 357807 (N.D. Cal. Dec. 27, 1991)................17

*Zamora Radio, LLC v. Last.fm LTD.*,
   No. 09-cv-20940, 2011 WL 2580401 (S.D. Fla. June 28, 2011).........9, 10

**Statutes**

15 U.S.C. § 77*l*.................................................................................................15

15 U.S.C. § 77*l*(a) ...........................................................................................12

Fla. Stat. § 48.193(1)(a)(1)-(9) ........................................................................7

Fla. Stat. § 48.193(2)........................................................................................7

**Other Authorities**

*In the Matter of Munchee Inc., Admin. Proc.,* No. 3-18304, Release No. 10445, at
¶ 32 (Dec. 11, 2017), *available at*
https://www.sec.gov/litigation/admin/2017/33-10445.pdf .......................................................13

Jay Clayton, *Statement on Cryptocurrencies and Initial Coin Offerings*, U.S.
Securities and Exchange Commission ("SEC") (December 11, 2017),
*available at* https://www.sec.gov/news/public-statement/statement-clayton-
2017-12-11 ...............................................................................................................................12

*SEC chief says agency won't change securities laws to cater to cryptocurrencies*,
CNBC (June 6, 2018), *available at* https://www.cnbc.com/2018/06/06/sec-
chairman-clayton-says-agency-wont-change-definition-of-a-security.html) .........................12

Defendant Glenn Arcaro ("Arcaro"), through his attorneys, respectfully moves the Court to dismiss Plaintiffs' fourth Amended Consolidated Class Action Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 9(b) (the "Motion").

## I.      INTRODUCTION

Plaintiffs are disappointed cryptocurrency gamblers who now seek to recover losses they claim to have suffered after knowingly bypassing the protections of a central bank system and taking the risk to capitalize on the recent virtual currency frenzy.  After  nearly a year, and the filing of four complaints–their latest a nearly 100-page tome–Plaintiffs still provide neither substance nor facts to support their claim that Defendant Glenn Arcaro participated in a scheme to defraud these cryptocurrency speculators into purchasing BitConnect Coins ("BCC")[1], the virtual currency alleged in their complaints.  Notably, Plaintiffs now admit that the alleged scheme to deceive them started years prior to Arcaro's alleged involvement, yet instead of serving and aggressively prosecuting their case against BitConnect International PLC, BitConnect Ltd., BitConnect Trading LTD, and the additionally named defendants responsible for the development of the BitConnect system (collectively, "BitConnect"), the alleged masterminds of the scheme, or any of its known founders or leaders, Plaintiffs seek to hold liable individuals like Mr. Arcaro, whom they have sued in a jurisdiction where he has no conceivable connection, under laws that do not apply to him, for conduct for which he has no colorable legal responsibility.  As in their prior complaints, Plaintiffs' current claims against Mr. Arcaro suffer fatal jurisdictional, procedural and substantive flaws that require dismissal of the Complaint against him with prejudice.

---

[1] BCC is BitConnect's cryptocurrency coin, self-described as "an open source, peer-to-peer, community driven decentralized cryptocurrency that allow [*sic*] people to store and invest their wealth in a non-government controlled currency, and even earn a substantial interest on investment [*sic*]."  (Compl. at ¶ 84.)

In his motion, Mr. Arcaro makes five arguments as to why this action should be dismissed, and plaintiffs cannot sustain a cognizable cause of action against him:

- First, the Complaint should be dismissed pursuant to Rule 12(b)(2) because the Court lacks personal jurisdiction over Mr. Arcaro.  Plaintiffs had nearly a year to scour the public record and the internet for facts about Mr. Arcaro *and* they had the benefit of his last Motion to Dismiss (Dkt. No. 65) before filing their latest Complaint, but they still do not, and cannot, plead a single fact connecting Mr. Arcaro to the state of Florida.

- Second, Plaintiffs' claims that Mr. Arcaro sold unregistered securities in violation of Sections 12(a) and 15(a) of the Securities Act of 1933, 15 U.S.C. §§ 77*l*, 77o (the "Securities Act") (Counts I, XII) should be dismissed pursuant to Rule 12(b)(6) because BCC is not a security and Mr. Arcaro did not "sell" BCC within the meaning of the statute and relevant case law.

- Third, all of Plaintiffs' remaining claims should be dismissed under Rule 9(b) because Plaintiffs fail to plead with particularity *any* of the necessary facts establishing the "who, what, where, when, and how" of their alleged scheme.

- Fourth, Plaintiffs fail to allege that they reasonably relied on any alleged misstatements made by Mr. Arcaro.)

- Fifth, Plaintiffs' claims for conversion, unjust enrichment, and for violations of the state unfair trade laws contain fatal defects which cannot survive scrutiny.

## II.     BACKGROUND

Counsel for Plaintiffs filed their first complaint in this Court on January 24, 2018, naming the BitConnect entities as well as four individuals who participated in the unregulated affiliate program, including Mr. Arcaro.  (Dkt. No. 1.)  On June 19, 2018, this Court consolidated four actions that were pending in this District, naming Parks and Shermani as lead plaintiffs and

2

appointing, as lead counsel, the same lawyers who filed the first amended complaint almost six months before.  (Dkt. No. 46.)  On July 3, 2018, Plaintiffs filed the third version of their complaint, naming substantially the same parties but adding a dubious claim against YouTube. (Dkt. No. 48.)  Mr. Arcaro moved to dismiss the complaint (Dkt. No. 65), as did the other Defendants which Plaintiffs had managed to serve.[2]  Plaintiffs received a 34-day extension to respond to the motions to dismiss filed by all defendants, but instead of filing an opposition brief, they filed yet another Amended Consolidated Class Action Complaint, in which they did nothing more than explode their already outlandish complaint with dozens of superfluous allegations and a litany of facts that only prove that Mr. Arcaro had no involvement in the scheme to defraud Plaintiffs.  In the latest version of their putative class action complaint, Plaintiffs bring twenty-two claims against thirty-three named defendants and ten John Does arising out of Plaintiffs' voluntary and unregulated purchase of BCC from BitConnect.  Plaintiffs do not, and cannot, allege that BitConnect—or Mr. Arcaro—had any offices, websites, or operations in Florida. Instead, the Complaint alleges all of the BitConnect entities are registered in the United Kingdom and claims that BitConnect "was initially operated from Gujarat, India" before the operations "were migrated to Dubai, United Arab Emirates—more specifically, to the 135th floor of the Burj Khalifa."  (Compl. at ¶ 28-32.)  The Complaint alleges that BitConnect conducts its business on the internet principally by means of two websites, accessible at www.bitconnect.co and www.bitconnectcoin.co.  (Id. at ¶ 77.)  BitConnect is described as an "open source all in one

---

[2] Plaintiffs' counsel has failed, in all of this time and through all of these complaints, to   attempt service on any BitConnect entity despite admitting to knowledge of where they are and, presumably, about the well-recognized and widely-used tools for serving process in the United Kingdom.  Nor is there any evidence that Plaintiffs' counsel has attempted to locate or serve Craig Grant, who Plaintiffs claim is "believed" to be somewhere in Miami -- and is this matter's only conceivable connection to Florida.  (Compl. at ¶ 36.)  Counsel did seek leave of this Court to serve the individually-named defendants electronically, but the request was denied on March 19, 2018.  (Dkt. No. 27.)  They have made no such request as to BitConnect.

bitcoin and crypto community platform designed to provide multiple investment opportunities with cryptocurrency education . . ." (*Id.* at ¶ 78.)  BitConnect is also alleged to sponsor the BitConnect Exchange, an online website where BCC can be purchased.  (*Id.* at ¶ 85.)  Plaintiffs allege that once BCC were purchased, the BitConnect website allowed people to use their BCC in a number of ways.  First, a purchaser could trade or sell their BCC for other cryptocurrencies. (*Id.* at ¶¶ 87, 115.)  Second, the purchaser could participate in the BitConnect Lending Program, in which purchasers lent their BCC back to BitConnect for set intervals of time, accumulating interest for the term of the loan before eventually receiving the return of the principal of the loan. (*Id.* at ¶¶ 117-123.)  Third, purchasers could "stake" their BCC, in which BCC-holders earned interest on their BCC by "holding" them in a BitConnect wallet for at least fifteen (15) days (the "BitConnect Staking Program").  (*Id.* at ¶¶ 124-127.)  The Complaint fails to allege in which, if any, of these uses Plaintiffs engaged after purchasing BCC and how they allegedly were damaged by these uses.

Plaintiffs allege BitConnect ran a "Referral Program," in which "affiliates" who purchased BCC could earn additional income for referring new purchasers.  (*Id.* at ¶¶ 128-129.) Successful referrals resulted in a commission to the referrer, and as set forth in the Complaint, BitConnect encouraged all purchasers to "[i]nvite [their] friends and family to join BitConnect via [their] unique **referral link** to start earning a serious income from [BITCONNECT's] affiliate program" and to "[s]pread the word on **social media** and other **online platforms** to help." (Compl. at ¶ 127 (emphasis in Complaint).)  Purchasers were allowed to participate in the Referral Program after purchasing as little as the equivalent of $100 of BCC.  Plaintiffs conveniently neglect to plead whether they themselves acted as affiliates.

As to Mr. Arcaro personally, the Complaint alleges that he is domiciled in California and began promoting BitConnect in or about June 2017; was an "active Director" of BitConnect; and

4

that he "manage[ed] a team of U.S.-based affiliates/recruiters . . . [and] served as one of the most successful affiliate/recruiters for BITCONNECT himself, soliciting hundreds if not thousands of BITCONNECT investors in the United States and abroad through social media sites such as YOUTUBE and Facebook." (*Id.* at ¶ 51.) Plaintiffs allege that Mr. Arcaro posted YouTube videos and created websites including the "BCC School," an online program meant to teach people "how to participate in cryptocurrency investment opportunities, including the BitConnect Investment Programs." (*Id.* at ¶¶ 153-156, 207.)

Plaintiffs allege that they purchased BCC not from Mr. Arcaro, but through the BitConnect website between August 24, 2017 and November 10, 2017 (Plaintiff Parks) and between March 12, 2017 and December 8, 2017 (Plaintiff Shemirani). (*Id.* at ¶¶ 26-27.) They do not allege that they were in Florida at the time of purchase, but rather that Plaintiffs each reside elsewhere: Parks in Louisiana and Shemirani in Dubai, United Arab Emirates. (*Id.*)

Perhaps as notable as what Plaintiffs include in the Complaint is what they leave out, even after nearly a year of trying and four attempts to file a cognizable claim against Mr. Arcaro. Plaintiffs fail to plead any facts whatsoever connecting Mr. Arcaro to Florida. Plaintiffs do not allege that Mr. Arcaro lived, worked, traveled, paid taxes, owned property, or took any action of any kind in the State. They do not allege that either Plaintiff (or any plaintiff or putative class member) viewed Mr. Arcaro's videos or participated in his supposed BCC School program. Plaintiffs do not allege they used Mr. Arcaro's affiliate referral link to purchase BCC or claim that they relied on any of Mr. Arcaro's statements in deciding to purchase BCC. And while Plaintiffs blame Mr. Arcaro and the other defendants for their alleged BCC losses, Plaintiffs, by their own admission, acknowledge that the sole cause of their alleged losses were the cease and desist orders issued against BitConnect in January 2018 by the Texas State Securities Board and Secretary of State of North Carolina, which they claim caused their BCC to become "effectively

5

useless." (*Id.* at ¶¶ 187-188,191.)  Plaintiffs do not allege that the cease and desist orders were related in any way to Mr. Arcaro, or that his conduct caused those orders to be issued.

## III.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(2)

As an initial matter the Complaint should be dismissed because this Court lacks personal jurisdiction over Mr. Arcaro, a California resident with no ties of any kind to the state of Florida. Whether personal jurisdiction can be asserted over a non-resident defendant is a two-step analysis.[3]  First, the court must determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute; if it does, the Court must then determine whether the defendant's contacts with the forum are sufficient to satisfy the U.S. Constitution's due process requirements.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). To withstand a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff must plead sufficient facts to establish a *prima facie* case of jurisdiction over the defendant.  *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).  Here, Plaintiffs fail to meet their threshold burden for establishing jurisdiction—a deficiency that was addressed at length in the prior motion to dismiss, and which this Complaint does nothing to cure.

### A.    Florida's Long-Arm Statute Does Not Confer Jurisdiction Over Mr. Arcaro

Florida's long-arm statute provides for both specific and general jurisdiction.  The provision confers general jurisdiction over a non-resident defendant who engages "in substantial and not isolated activity within [Florida]," subjecting the defendant "to the jurisdiction of the courts of [Florida], whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2). Said differently, general jurisdiction arises from a nonresident defendant's contacts within the forum such that it is "essentially at home there."  *Wolf v. Celebrity Cruises, Inc.*, 683 Fed App'x

---

[3] To the extent Plaintiffs contend that 15 U.S.C. § 77v precludes the necessity of analysis under Florida's long-arm statute, Arcaro submits that the Securities Act counts (Counts I, XII) must be dismissed.  *See* Section IV.A, *infra*.

786, 792 (11th Cir. 2007).[4]  Specific jurisdiction is conferred over any person that engages in one or more of the acts enumerated in the statute so long as the cause of action has some "connexity" to activities in the state.  Fla. Stat. § 48.193(1)(a)(1)-(9); *Wolf*, 683 Fed App'x at 793.

The Complaint is devoid of allegations that suggest the "direct affiliation, nexus, or substantial connection" between Plaintiffs' claims and actions by Mr. Arcaro necessary to establish specific jurisdiction in Florida.  *Tancogne v. Aquimpex, S.p.A.*, No. 07-cv-22553, 2009 WL 10667749, at *4 (S.D. Fla. Mar. 6, 2009) (quotation and citation omitted).  As Plaintiffs concede, Mr. Arcaro resides in California, and they do not even attempt to allege that they have sustained any injury in Florida.  *See Clay v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1268 (M.D. Fla. 2014) ("Regardless of which enumerated act through which a plaintiff asserts specific jurisdiction, the complaint must allege a cause of action 'arising from' that enumerated act in Florida"; "arising from" requires the place of injury to be within Florida).[5] Without evidence of contacts with the forum state relating the claims in the Complaint, the Court lacks specific jurisdiction over Mr. Arcaro.

**B.**   **Exercising Jurisdiction over Mr. Arcaro Violates Traditional Notions of Fair Play and Substantial Justice**

---

[4] Plaintiffs admit that Mr. Arcaro is a resident of California, not Florida (Compl. at ¶ 51), and they make no attempt to plead any facts suggesting he had the sort of "extensive and pervasive" contacts necessary to support a contention that general jurisdictional can be asserted over Mr. Arcaro.  "[F]or general jurisdiction to exist, the defendant must be found to have maintained 'continuous and systematic general business contacts' with the forum, so that it can properly be considered to be 'present' in the forum."  *Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1127 (Fla. Dist. Ct. App. 1994) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411-12 (1984)).  This is "a much higher threshold than the minimum contacts required to assert specific jurisdiction, for the facts required to assert this general jurisdiction must be extensive and pervasive."  *Id.* at 1127-28 (internal quotation marks omitted); *Hinkle v. Con'tl Motors, Inc.*, 268 F. Supp. 3d 1312, 1317 (M.D. Fla. 2017) (same).

[5] Here, the Complaint implicitly acknowledges that Plaintiffs' injuries did not accrue in Florida because Plaintiffs are foreign residents.  (*See* Compl. at ¶¶ 26-27.)

7

Even if this Court were to find that Florida's long-arm statute conferred jurisdiction over Mr. Arcaro—which Mr. Arcaro does not concede—the limits of the Constitution prohibit haling him into court in this District.  "The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personal jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984).  Even where there is a basis for the assertion of personal jurisdiction under the state statute, the Court must also determine that there are sufficient minimum contacts with the forum to satisfy the Due Process Clause and that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  *Imaging Science Found., Inc. v. Kane*, 09-cv-81288, 2010 WL 2035323, at *3 (S.D. Fla. May 24, 2010) (citations omitted).  Minimum contacts exist where such contacts (1) are related to plaintiffs' cause of action or give rise to it; (2) involve "some purposeful availment" of the privilege of conducting activities within the forum; and (3) are such that a defendant should reasonably anticipate being haled into court there.  *Id.* (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996)).

As the foregoing discussion demonstrates, Plaintiffs cannot meet their burden here.  The single fact to which Plaintiffs point to, to support their allegations, are YouTube videos and an unrelated website allegedly created by Mr. Arcaro.  But "[t]he mere existence of a website that is visible in a forum and that gives information about a company and its products it not enough, by itself, to subject a defendant to personal jurisdiction in that forum."  *CCTV Outlet, Corp. v. Desert Security Sys. LLC*, No. 17-cv-60928, 2017 WL 5640717, at *3 (S.D. Fla. Aug. 7, 2017) (quoting *Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010)); *see also Zamora Radio, LLC v. Last.fm LTD.*, No. 09-cv-20940, 2011 WL 2580401, at *6, 10 (S.D. Fla. June 28, 2011) (exercise of jurisdiction was contrary to the Due Process Clause where the defendant's only "forum-related activities" were "through its website"); *Westwind Limo., Inc. v. Shorter*, 932 So.2d 571,

8

575 n.7 (Fla. Dist. Ct. App. 2006) (posting a hyperlink to a third-party website by itself did not constitute soliciting or transacting business in Florida because defendant demonstrated no effort to target Florida); *Alpha Tech. U.S.A. Corp. v. MLSNA Dairy Supply, Inc.*, No. 6:13-CV-1062, 2013 WL 6195766, at *7 (M.D. Fla. Nov. 26, 2013) (dismissing action where YouTube video was viewed in Florida but there was no indication that defendants purposefully directed the video to Florida residents).[6]

 Here, the Complaint does not allege that the videos allegedly viewed had anything to do with Florida.  Plaintiffs do not allege that the videos were directed to Florida or Florida residents, but rather that the videos were distributed to "the United States and abroad."  (Compl. at ¶ 51.) They do not claim that Mr. Arcaro created the videos in Florida, sent the videos to Florida or referenced the state in any video.  Nor do Plaintiffs allege they watched the videos or accessed the alleged websites (which were not BitConnect websites) in Florida (or even knew that such things existed), participated in the BCC School, or that they purchased—or even *could* purchase—anything directly from Mr. Arcaro through his websites or videos.  There is simply no alleged link between Mr. Arcaro and the purchase of BCC in Florida by Plaintiffs.  Mr. Arcaro's alleged activities or presence on the internet are insufficient to confer jurisdiction over Mr. Arcaro as they fail to involve Florida in any way.

---

[6] Courts across the country have similarly limited reliance on the internet as a basis for establishing personal jurisdiction.  *See, e.g.*, *Jackson v. Cal. Newspapers P'ship*, 406 F. Supp. 2d 893, 898 (N.D. Ill. 2005) ("[p]osting hyperlinks to websites housing national information is not enough to give us personal jurisdiction"); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (same); *Enterprise Rent-A-Car Co. v. Stowell*, 137 F. Supp. 2d 1151, 1159 (E.D. Mo. 2011) ("this Court declines to find that a link to [a third-party] site supports personal jurisdiction where otherwise it is lacking"); *Neomedia Tech. Inc. v. Airclic, Inc.*, No. 04-c-566, 2004 WL 848181, at *6 (N.D. Ill. Apr. 16, 2004) (due to the almost universal accessibility of the internet, conferring personal jurisdiction based on defendant's hyperlink to a non-forum "active website would establish precedent that any website owner who hyperlinks to a website that conducts business online would be susceptible to personal jurisdiction in every state").

302658222 v8

Indeed, allowing passive, internet-based, location-independent activity to confer jurisdiction over a non-resident would decimate the personal jurisdiction analysis altogether. Anyone engaging in business online to any degree would be "susceptible to personal jurisdiction in every state." *Zamora*, 2011 WL 2580401, at *6. Such an outcome is not only untenable but antithetical to the protections intrinsic to the Constitution. *Id.* ("due to the almost universal accessibility of the internet, if we were to confer personal jurisdiction based on defendant's hyperlink to a non-forum 'active' website, it would establish precedent that any website owner who hyperlinks to a website that conducts business online would be susceptible to personal jurisdiction in every state") (quotation and citation omitted).

Finally, traditional notions of fair play and substantial justice also require dismissal of the Complaint as to Mr. Arcaro. To determine whether jurisdiction comports with traditional notions of fair play and substantial justice, a court considers "1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and 5) the shared interest of the states in furthering fundamental substantive social policies." *Imaging Science Found., Inc.*, 2010 WL 2035323, at *6 (citations omitted). Mr. Arcaro is an individual who lives more than 2,500 miles from this court, in California. The burden of defending this case in Florida would be—and already is—significant. *See id.* (burden would be high for California resident to defend himself in Florida). Moreover, it is of no benefit to Plaintiffs for this case to move forward in this District because *neither Plaintiff lives in this jurisdiction* or is alleged to have been harmed here. (Compl. at ¶¶ 26-27.) And Florida's interests in adjudicating Plaintiffs' claims against Mr. Arcaro are no greater than any other state: no conduct is alleged to have taken place in this forum and Florida's state regulators have taken no actions related to BitConnect (as compared to the

10

allegations regarding regulators in Texas and North Carolina).  And since the putative class involves people from all over the country and the world, Plaintiffs' cannot seriously maintain that their interests in obtaining convenient and effective relief are better fulfilled in Florida than in the innumerable other jurisdictions which have actual connections to the parties or the claims.[7]

Plaintiffs have failed to establish that this Court has jurisdiction over Mr. Arcaro based on prevailing federal and state law in Florida, this District, the Eleventh Circuit and the Supreme Court.  Accordingly, the Complaint against him should be dismissed pursuant to Rule 12(b)(2).

## IV.      THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)

The Complaint also fails to adequately state a claim against Mr. Arcaro.  Under Rule 12(b)(6), "[t]o survive motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Pleadings must contain "more than labels and conclusions," and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).  Moreover where, as here, a plaintiffs' claims are based on an alleged fraudulent scheme, each and every one of Plaintiffs' claims must meet the heightened pleading standard under Rule 9(b).  *See Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 545 (S.D. Fla. 2013).

### A.      The Securities Claims (Counts I and XII) Fail as a Matter of Law

Congress "did not intend to provide a broad federal remedy for all fraud" when it adopted the securities laws; rather, these laws apply only if the transactions at issue fall within the definition of "security."  *Maine Bank v. Weaver*, 455 U.S. 551, 556 (1982).  BCC is not a

---

[7] Indeed, there is another BitConnect lawsuit pending.  *See Paige v. Bitconnect Int'l PLC et al.*, No. 3:18-cv-00058-CHB-CHL (W.D. Ken. *filed* Jan. 29, 2018).

security, and for that reason alone, the Securities Act claims should be dismissed.[8]  Moreover, liability under Section 12 is limited to those "who . . . (1) offer[] or sell[] a security in violation of [the Act] . . . to the person purchasing such security from him."  15 U.S.C. § 77*l*(a).  Here, Plaintiffs' Section 12(a) claim fails to allege that Mr. Arcaro was a "seller" or "successful solicitor" of securities to Plaintiffs.  And finally, Section 15 imputes liability only to "control persons" of an entity that violates the Securities Act.  Similarly, the Complaint fails (on its fourth try) to allege facts demonstrating that Mr. Arcaro controlled BitConnect in any respect.  In sum, Plaintiffs' Securities Act claims are fatally flawed and should be dismissed.

 1. BCC is not a security

 The Complaint acknowledges that "[v]irtual currencies are a relatively new phenomenon . . . "  (Compl. at ¶ 230.)  And, as the SEC has made clear, not all crypto-assets are securities.[9]  BCC is only a security if it meets the definition of an "investment contract" under the Supreme Court's test set forth in *SEC v. W.J. Howey Co.*, which requires (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profits to be derived solely from the efforts of others.  328 U.S. 293, 301 (1946) (the "*Howey* test").  All three elements of the *Howey* test must be satisfied in order for BCC to be determined a "security."  BCC does not satisfy any of these requirements, and to date, no court has determined that BCC is a security.

---

[8] Whether a financial instrument constitutes a "security" is a question of statutory interpretation.  *See Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685-86 (1985).

[9] Jay Clayton, *Statement on Cryptocurrencies and Initial Coin Offerings*, U.S. Securities and Exchange Commission ("SEC") (December 11, 2017), *available at* https://www.sec.gov/news/public-statement/statement-clayton-2017-12-11 (last visited Nov. 5, 2018) ("there are cryptocurrencies that do not appear to be securities"); *see also SEC chief says agency won't change securities laws to cater to cryptocurrencies*, CNBC (June 6, 2018), *available at* https://www.cnbc.com/2018/06/06/sec-chairman-clayton-says-agency-wont-change-definition-of-a-security.html) (last visited Nov. 5, 2018) ("Cryptocurrencies: These are replacements for sovereign currencies, replace the dollar, the euro, the yen with bitcoin . . . [t]hat type of currency is not a security.").

The first element of the *Howey* test cannot be met because BCC simply is not an investment of money.  BCC is an unregulated, decentralized cryptocurrency.  It can only be purchased with Bitcoin ("BTC"), another unregulated, decentralized cryptocurrency.  Cryptocurrency as a whole is widely understood to be something *other* and different from fiat currency, and this is true of BCC in particular.  Even the most successful BCC gambler could not purchase anything with BCC: they would have to first trade BCC for some other cryptocurrency which *can* be used in place of fiat currency, or which could be traded to fiat currency.

The second element, the existence of a "common enterprise," is satisfied where the "fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking investment of third parties."  *Eberhardt v. Waters*, 901 F.2d 1578, 1581 (11th Cir. 1990) (citation omitted).  Here, the fortunes of BCC purchaser are not interwoven with the fortunes of BitConnect or Mr. Arcaro, and the facts of this case are distinguishable from those relating to a recent action in which the SEC contended that a token offering met the definition of an investment contract.  *See In the Matter of Munchee Inc., Admin. Proc.,* No. 3-18304, Release No. 10445, at ¶ 32 (Dec. 11, 2017), *available at* https://www.sec.gov/litigation/admin/2017/33-10445.pdf (last visited Nov. 5, 2018).  In *Munchee*, the SEC found that investments in the company were used to build an "ecosystem," to build and revise a mobile phone application where users would use the "app" to sell food and write reviews, which would purportedly, some time in the future, increase the value of "Munchee Tokens."  *Id.* at ¶ 32.  Similar facts do not exist with respect to BCC.  Here, there is no allegation that the proceeds of BCC purchases would be used to invest in or develop any future product or common enterprise.  BCC holders who lent their BCCs would receive the return of their "principle" at the end of the loan no matter whether BitConnect flourished or failed during the loan period.  Similarly, when "staking" BCC, the stakers were entitled to a guaranteed return independent of BitConnect's fortunes.

13

To satisfy the final prong of the *Howey* test, the Eleventh Circuit has articulated that investors must expect their profits to come from the "entrepreneurial or managerial efforts of others." *Villeneuve v. Adv. Business Concepts Corp.*, 730 F.2d 1403, 1404 (11th Cir. 1984) (quotation omitted). "An investor who has the ability to control the profitability of his investment . . . is not dependent upon the managerial skills of others." *Alunni v. Dev'ment Res. Grp., LLC*, 445 Fed. App'x 288, 296 (11th Cir. 2011) (quotation omitted). The unique uses to which BCC could be put make it analogous to the condominiums at issue in *Alunni*, 445 Fed. App'x at 296. In *Alunni*, purchases of condominiums subject to (1) each unit's long-term leases (where the unit had tenants) until they expired; and (2) a one-year period during which plaintiffs had to lease their units through a management company selected by the defendant did not meet either the "common enterprise" or "expectation of profits solely from the efforts of others" prongs because once the existing leases expired and rent was no longer guaranteed, plaintiffs were free to control the units themselves. *Id.* The Eleventh Circuit found it notable that plaintiffs profited even if the agent lost money on an unoccupied unit due to a rent guarantee contained in the one-year agreement. *Id.*

Here, the Complaint fails *Howey* because it alleges that the owners of BCC (including the Plaintiffs here) largely retained complete control of their purchases. For example, the purchaser could buy BCC and "play the market" by trading it on exchanges for other cryptocurrencies or fiat currency. (Compl. at ¶ 114.) By "staking" their BCC, the return of value was purely self-perpetuating. (*Id.* at ¶ 122.) Even if a purchaser decided to loan the BCC back to BitConnect, it was guaranteed the return of its principle regardless of whether the volatility bot was profitable to BitConnect and without regard of any named Defendant's entrepreneurial or managerial efforts. (*Id.* at ¶ 120.) Plaintiffs' causes of action under the Securities Act depend entirely upon

14

BCC being classified a security, and Plaintiffs fail to adequately allege that BCC is such a security within the meaning of the Act.  Counts I and XII should be dismissed.

2.    <u>Mr. Arcaro did not "sell" or "successfully solicit" BCC to any of the Plaintiffs</u>

Plaintiffs also fail to allege that Mr. Arcaro either sold BCC, or successfully solicited the sale of BCC, to Plaintiffs or any other member of the putative class.  Section 12 limits liability to only those persons who "offer[] or sell[] a security" and limits relief to only those persons "purchasing such security from him."  15 U.S.C. § 77*l*.  Plaintiffs do not contend that Mr. Arcaro sold any BCC directly, nor do they allege that he passed title of the purchased BCC to Plaintiffs. *See In re CNL Hotels & Resorts, Inc. Sec. Litig.*, No. 604CV1231ORL31KRS, 2005 WL 1126561, at *10 (M.D. Fla. May 9, 2005) (section extends liability only to those persons who actually transfer title to the security and to those that successfully solicit the purchase).  Instead, Plaintiffs acknowledge that "BITCONNECT - as the direct issuer of BCCs . . . directly offered and sold such investment contract securities."  (Compl. at ¶ 182.)

Plaintiffs, however, claim Mr. Arcaro was a director of BitConnect and make the leap of law and logic to argue that his role as director meant he "controlled its actions and [is] thus equally deemed" a seller.  (*Id.*)  The hollowness of that argument becomes clear when comparing the allegations regarding Mr. Arcaro to those relating to the "Developer Defendants"—who, allegedly, were the "masterminds," "owners," "founders," and "developers" of BitConnect.  (*Id.* at ¶¶ 34-39, 47.)  Notably, Mr. Arcaro is not named among these defendants, nor could he be, but instead is described as a national promoter who "reported directly to Defendant SATISH."  (*Id.* at ¶ 51.); *see also SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 475 (5th Cir. 1974) (not all activities relating to the underlying promotions are "amenable to regulation under the federal

securities laws.")  In any event, such bare legal conclusions cannot support seller liability under Section 12.

Nor do Plaintiffs allege that Mr. Arcaro "successfully solicit[ed]" the sale of BCC to any Plaintiff.  To count as "solicitation," the seller must, at a minimum, directly communicate with the buyer.  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003) (§ 12 claim dismissed where plaintiffs alleged that defendants had participated in stock purchase transaction and had proximately caused investors' purchase by their false and misleading representations or nondisclosures but did not allege direct contact of any kind between defendants and investors) (citing *Craftmatic Sec. Litigation v. Kraftsow,* 890 F.2d 628, 636 (3d Cir. 1989) ("The purchaser must demonstrate direct and active participation in the solicitation of the immediate sale to hold the issuer liable . . .")).  The only allegation in Complaint linking Mr. Arcaro to Plaintiffs is the following:

> Plaintiffs each actively researched BITCONNECT and the BitConnect Investment Programs prior to making their purchases of BCCs . . . .  Accordingly, each of the Plaintiffs were personally, and successfully, solicited by the BITCONNECT Defendants in connection with their public representations and active solicitations to purchase BCCs or participate in the BitConnect Investment Programs

(Compl. at ¶ 25.)  Plaintiffs appear to be using a "proximate cause" or "substantial factor analysis," to establish liability—a method rejected by the Supreme Court in *Pinter v. Dahl*, 486 U.S. 622, 653-54 (1988).[10]  Notably, the Complaint does not allege that Mr. Arcaro actually solicited Plaintiffs or that they decided to participate in the BitConnect "scheme" because of Mr. Arcaro's alleged statements—whatever they may have been.  In fact, Plaintiffs admit that they actively researched BitConnect themselves, ostensibly reviewing the very same information that Mr. Arcaro would have reviewed to trust in the platform himself.  Plaintiffs do not even allege

---

[10] In *Pinter*, the Court rejected the idea that Section 12 created liability for "those who merely assist in another's solicitation efforts."  *Id.* at 651 & n.27.

they viewed a single video allegedly posted by Mr. Arcaro, or that they participated in the supposed BCC school.  *See In re CNL Hotels & Resorts, Inc. Sec. Litig.*, 2005 WL 1126561, at *10 ("To count as 'solicitation,' the seller must, at a minimum, directly communicate with the buyer.") (quoting *Rosenzweig.,* 332 F.3d at 871 ); *Griffin v. PaineWebber, Inc.*, No. 99 CIV. 2292, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) (dismissing § 12 claim because the plaintiff did not allege that "he purchased securities as a result of [the defendant's] solicitation"); *In re Xoma Corp. Sec. Litig.*, No. C-91-2252, 1990 WL 357807, at *8 (N.D. Cal. Dec. 27, 1991) (dismissing § 12 claim because the plaintiffs "do not allege that any particular defendants solicited *any particular plaintiff*, and that is what [§ 12] requires"); *Jackson v. First Fed. Sav. of Ark., F.A.*, 709 F. Supp. 863, 884 (E.D. Ark. 1988) (dismissing § 12 claim); *cf. Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302, 2011 WL 4389689, at *10 (C.D. Cal. May 5, 2011) ("Plaintiffs must include very specific allegations of solicitation, including direct communication with Plaintiffs.").  Other courts, considering this issue in the context of cryptocurrency sales, have come to similar conclusions.  *In re Tezos Sec. Litig.*, No. 17-CV-06779-RS, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) (dismissing § 12 "seller" claim against individual defendant because the "argument that [defendant] lacked involvement in [Plaintiff]'s purchasing decision—direct or otherwise—is compelling.").  Plaintiffs fail to allege a single specific communication that took place between them and Mr. Arcaro.  Accordingly, the Section 12 claim must be dismissed as to Mr. Arcaro.

> 3.   Plaintiffs Fail to Plausibly Allege that Mr. Arcaro was a "Control Person" as the Term is Defined Under Section 15(a)

Moreover, Plaintiffs' claim under Section 15 of the Securities Act must fail because Plaintiffs allege no facts, nor could they, demonstrating that Mr. Arcaro exerted *any* level of control over BitConnect, let alone with regard to the Investment Programs.  To state a claim

17

under Section 15(a) of the 1933 Securities Act, a plaintiff must allege that the defendant had (1) the power to control the general affairs of the entity primarily liable for the § 12 violation at the time of the violation and (2) the power to control or influence *the specific policy that resulted in primary liability* under § 12.  *Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 396 (11th Cir. 1996)).

While previous iterations of the Complaint fell short of this standard, the newly-added allegations and defendants named in the Complaint make even clearer that this Count must be dismissed as to Mr. Arcaro.  The Complaint devotes pages to identifying the "masterminds," "owners," "founders," and "developers" of BitConnect and describing its ownership structure. (Compl. at ¶¶ 34-39; 97-109).  Notably, Mr. Arcaro is not named, nor could he be, among these founder defendants, but instead is described as a national promoter who "reported directly to Defendant SATISH.  (*Id.* at ¶ 51.)  Other allegations of Mr. Arcaro's involvement are premised on the naked assertion that "[b]y virtue of his positions as an affiliate manager and/or director *and participation in and/or awareness of* Defendant BITCONNECT INTERNATIONAL PLC's operations . . ." Mr. Arcaro controlled the decision making of BitConnect, including the decision to engage in the sale of unregistered securities.  (*Id*. at ¶ 274 (emphasis supplied).)  Notably, no allegations address Mr. Arcaro's role in developing, directing, or controlling BitConnect's decisions regarding the Lending Program, Staking Program, or BCC at all.  Allegations that Mr. Arcaro participated in "and/or" was aware of BitConnect's operations are plainly insufficient: if such a standard was used, even Plaintiffs would fall within the scope of persons liable.

Nor is it enough to point to Mr. Arcaro's supposed status as a "director" of BitConnect to survive a motion to dismiss.  "A defendant is not subject to control person liability simply because he is an officer or director of a corporation" because "a complaint that merely restates the legal standard for control person liability, without providing facts in support of the allegation, does not adequately plead control person liability." *Tippens v. Round Island Plantation LLC*,

No. 09-CV-14036, 2009 WL 2365347, at *10 (S.D. Fla. July 31, 2009) (dismissing Section 15(a) claim).  Instead, a plaintiff must come forward with facts establishing the defendant's actual degree of control.  There are no facts alleged whatsoever regarding Mr. Arcaro's purported "degree of control" and the Complaint contains precisely the flavor of allegations rejected as insufficient to establish liability.[11]  As Plaintiffs have failed to plead any facts that give rise to the inference that Mr. Arcaro possessed, directly or indirectly, the power to direct of cause the direction of the management and policies of BitConnect, Count XII must also be dismissed.

### B.      Plaintiffs' Remaining Claims Should Be Dismissed Under Rule 9(b)

Because the gravamen of Plaintiffs' claims are based on the supposedly fraudulent scheme described in the Complaint, each count must meet the heightened pleading standard of Rule 9(b).  *See Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 545 (S.D. Fla. 2013); *U.S. ex rel. Citizens United to Reduce & Block Fed. Fraud, Inc. v. Metro. Med. Ctr., Inc.*, No. 89-cv-0592, 1990 WL 10519617, at *3 (S.D. Fla. Jan. 11, 1990).  Under Rule 9(b), Plaintiffs must plead facts with particularity establishing (1) the precise misrepresentations for each defendant, (2) the time, place, and person responsible for those purported misrepresentations, (3) the content and manner in which those statements were misleading, and (4) what each defendant supposedly gained thereby.  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 183, 1291 (11th Cir. 2010); *Grills v. Philip Morris USA, Inc.*, 645 F.

---

[11] Even if such cursory allegations of position were enough to establish liability under Section 15, Mr. Arcaro is not, and never was, a director of BitConnect.  Plaintiffs cite to "paperwork filed with the corporate registry office in the United Kingdom" to support its assertion that Mr. Arcaro was a director of BitConnect.  (Compl. at ¶ 51.)  A court of the United Kingdom entered an order stating that those documents were invalid and directed the Registrar of Companies for the United Kingdom to remove Mr. Arcaro's name from BitConnect's records.  *See* Defendant's Request for Judicial Notice and Exhibit A thereto, filed on August 17, 2018 (Dkt. No. 66).  Plaintiffs respond to this information only by citing to an excerpt of a chat log that was purportedly between Co-Defendants James and Craig (but did not include Mr. Arcaro) as "proof" that Mr. Arcaro's "application was a farce."  (Compl. at ¶ 96.)  A plain reading of the chats themselves, as pasted into the Complaint, make clear that they support no such thing.

Supp. 2d 1107, 1124 (M.D. Fla. 2009) (dismissing fraud claims for failure to "meet Rule 9(b)'s

requirements" because plaintiff's "general statements regarding actions by the 'Cigarette

Companies' are not accompanied with any specifics identifying which companies have used

which practices and when the practices were utilized").  This is the "who, what, where, when,

how" of their claims and if they can't plead facts with particularity establishing these elements,

their claims should be dismissed.  *See Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No.

10-22153-CIV, 2011 WL 4434891, at \*4 (S.D. Fla. Sept. 23, 2011).

   The fourth Complaint is bereft of even the most basic information regarding the

purported misstatements and omissions and falls notably short of the particularity standard.  The

Complaint lists five purportedly false statements that constitute "the BITCONNECT Defendants'

representations to Plaintiffs and the Class Members."  (Compl. at ¶¶ 309(a)-(e), 315(a)-(e).)

These complained-of statements do not do any of the following: attribute any of these statements

to any specific defendant; identify the time or place of any misstatement; explain how each

statement is false; describe what each "BitConnect Defendant" gained through his or its

misstatement; or identify to which Plaintiff the statement was made.[12]  While the Complaint

alleges that Mr. Arcaro posted videos (*id.* at ¶ 207), ran or owned websites, and identified the

"BCC School" as an "online training program to 'teach' the unsuspecting public how to

participate in cryptocurrency investment opportunities" (*id.* at ¶ 338), it identifies no statements

---

[12] In addition, throughout the Complaint, Plaintiffs impermissibly "lump" the purported actions and statements made by the "BitConnect Defendants."  (*See, e.g.*, Compl. ¶¶ 296, 300-304, 307-308, 399-311, 314-317, 320-323, 331-332, 341.)  This practice is fatal to their claims under Rule 9(b), *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007), and would even require dismissal Rule 8(a)'s much lower pleading standard.  *Bently v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1374-75 (S.D. Fla. 2011) (dismissing class claims for improperly lumping defendants together without specifying which Defendant took which actions "despite that [the defendants] are separate and distinct legal entities").

from the BCC School program that are claimed to be false.  (*Id.* at ¶¶ 153-155, 338.)[13]  Nor does

the Complaint allege that either Plaintiff (or any plaintiff or putative class member) viewed any

video or visited any website purportedly owned by Mr. Arcaro, or were induced to purchase

BCC through the BCC School or any website.  The new Complaint attempts to overcome this

previously-identified deficiency by including references to private messages and chat logs

between Mr. Arcaro and co-Defendant Grant in the apparent hopes of establishing that Mr.

Arcaro knew that BitConnect was a fraud.  (*Id.* at ¶ 140.)  The messages do nothing of the sort:

Mr. Arcaro says only that he does not believe that the cryptocurrency is "dried up" and that the

cryptocurrency market is growing.  (*Id.*)  The nature of the new allegations in the Complaint,

including the chat logs, do nothing to cure the deficiencies Mr. Arcaro identified in his motion to

dismiss filed in August despite the fact that counsel has had months, and filed a *fourth* amended

complaint, to conduct additional investigation to bolster their pleading.  The Complaint's

conclusory allegations are insufficient as a matter of law and all counts must be dismissed.

### C.      Plaintiffs Could Not Have Reasonably Relied On Any Alleged Misstatements

Counts XVI (Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et*

*seq.* ("FDUTPA")), XVII (fraudulent inducement), XVIII (fraudulent misrepresentation), and

XIX (negligent misrepresentation) must be dismissed because Plaintiffs' own allegations

demonstrate that they could not possibly have reasonably relied on any misrepresentations

allegedly made to them regarding BitConnect's Investment Programs.  The reliance element for

fraudulent inducement and misrepresentation is virtually identical and requires that plaintiffs

reasonably rely on a false statement made by a defendant.  *Baggett v. Electricians Local 915*

*Credit Union*, 620 So. 2d 784, 786 (Fla. Dist. Ct. App. 1993).  Additionally, a party's FDUTPA

---

[13]  Moreover, Plaintiffs' allegations that the BitConnect Investment Programs were a "ponzi
scheme" are conclusory and do nothing to establish how or why any alleged statement is false.

claim must be dismissed if a reasonable consumer would not rely upon the alleged misrepresentations or omissions, or the consumer alleging the violation of FDUTPA acted unreasonably. *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1368-69 (S.D. Fla. 2003).

Here, reasonable reliance on the alleged misstatements in the Complaint (Compl. at ¶¶ 309(a)-(e), 315(a)-(e)) is eviscerated by Plaintiffs' allegations regarding the duties and obligations of YouTube. In paragraph 214 of the Complaint, Plaintiffs list, as "examples," ten videos that apparently put YouTube "on notice of the fraudulent activity" in which Defendants were engaging. Plaintiffs cannot have it both ways: if sufficient information was available on YouTube such that it was "on notice" of BitConnect's "fraudulent activity," so too should Plaintiffs have considered themselves warned. Accordingly, Counts XVI-XIX must be dismissed.

### D.    Plaintiffs Have Failed to Establish a Violation of Florida's Deceptive and Unfair Trade Practices Act Claim (Count XIV)

Plaintiffs claim that (1) Mr. Arcaro's violation of Sections 12 and 15 of the Securities Act is a *per se* violation of FDUTPA; and (2) "the false representations and omissions made by the BITCONNECT Defendants have a tendency or capacity to deceive consumers . . ." in violation of FDUTPA. (Compl. at ¶¶ 299, 301.) Neither theory withstands scrutiny.[14]

First, the claim must be dismissed because the FDUTPA only applies to unfair and deceptive trade practices that occur within Florida. *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012) (dismissing FDUTPA claim where plaintiff failed to plead that allegedly unfair trade practices took place in Florida); *Aaron Data Sys., Inc. v. GLD Int'l, Inc.*, No. 17-62111-CIV, 2018 WL 1973653, at *9 (S.D. Fla. Mar. 23, 2018), *report and recommendation adopted*, 2018 WL 1972439 (S.D. Fla. Apr. 26, 2018) (citation omitted) (claim

---

[14] Theory number two is addressed in Sections IV.B-C, *supra*.

failed where it arose out of sale of goods which occurred in Canada). Here, the Complaint implicitly acknowledges that Plaintiffs' causes of actions did not accrue in Florida because Plaintiffs are foreign residents (Compl. at ¶¶ 26-27), and Mr. Arcaro was not in Florida at the time he is alleged to have made statements (or misstatements) regarding BitConnect. Further, to the extent that the claim is premised upon a violation of the federal securities laws, and assuming *arguendo* that Mr. Arcaro violated Sections 12 or 15 of the Securities Act (he plainly did not, *see supra* at 12-19), the claim must still fail because a violation of the federal securities statutes is not a *per se* violation of FDUTPA. *See In re Mona Lisa at Celebration, LLC*, 436 B.R. 179, 207 & n.127 (M.D. Fla. Bankr. 2010) (dismissing FDUTPA claim premised upon violation of Section 12(a) of the Securities Act).

### E. The Conversion Claim (Count XX) Must be Dismissed Because Mr. Arcaro Never Had The Money Plaintiffs Used to Purchase BCC

Plaintiffs' claim for conversion fails for multiple reasons. In order to state a claim for conversion under Florida law, Plaintiffs must allege an "act of dominion [*i.e.*, control or possession] wrongfully asserted over another's property inconsistent with his ownership therein." *Barnett v. Blane*, No. 11-cv-14345, 2012 WL 12862653, at *4 (S.D. Fla. July 3, 2012) (citation omitted). In order to state a claim for conversion, one must "allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Id.* The Complaint does not allege (nor could it) that Mr. Arcaro retains dominion or control over the subject property and the Complaint contains no facts that could plausibly support the allegation. Instead, the Complaint correctly alleges that Plaintiffs purchased BCC from BitConnect, the entity that Plaintiffs have not even attempted to serve.

This count should be dismissed because the allegedly converted funds are not sufficiently identified to maintain a conversion claim. *LBS Petroleum LLC v. Demir*, No. 1:15-cv-22880-

UU, 2015 WL 12469064, at *11 (S.D. Fla. Oct. 28, 2015) (conversion claim requires that the plaintiff show that the funds at issue are "specific and identifiable") (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1305 (11th Cir. 2010)).  Money is specific and identified where, for example, it is "money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money *rather than to merely deliver a certain sum.*"  *Edwards*, 602 F.3d at 1304 (emphasis supplied); *Sallah v. Fahrenheit Venture Fund LLC*, 14-cv-22150, 2014 WL 12629450, at *6 (S.D. Fla. Sept. 5, 2014).  Here, Plaintiffs do not seek the "specific money in question" that was purportedly converted.  Plaintiffs allege that they invested in the BitConnect Investment Programs by way of investing BTC.  (*See* Compl. at ¶¶ 26-27.)  Plaintiffs now seek the return of "damages" that are presumably comprised of both the BTC originally invested and the return that Plaintiffs feel they should have received on their "investments."  Plaintiffs further seek the return of their damages in fiat currency, not the actual BTC they invested.  This is telling: in reality, Plaintiffs are impermissibly seeking "to enforce an obligation to pay money" but such action is not properly brought as a conversion claim.  *See Safeguard Support Servs., LLC v. Nationwide Referral Servs., LLC*, No. 11-61977-CIV, 2011 WL 13217971, at *8 (S.D. Fla. Dec. 15, 2011) (quotation omitted).  The claim for conversion (Count XX) must be dismissed.

### F.    Claim for Unjust Enrichment (Count XV) Must be Dismissed Because Mr. Arcaro Has Not Received a Benefit from Plaintiffs

The claim for unjust enrichment (Count XV) must be dismissed because Plaintiffs fail to allege whether or how Mr. Arcaro received a direct benefit from Plaintiffs.  In order to state a claim for unjust enrichment under Florida law, a party must "allege that it had *directly* conferred a benefit on the defendants."  *Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F.

24

Supp. 2d 1261, 1267 (S.D. Fla. 2011) (citation omitted) (emphasis in the original).  Here, the

Complaint alleges broadly that "[t]he BITCONNECT Defendants have reaped the benefits of

operating and/or personally benefiting from inducing Plaintiffs and the Class to invest in

fraudulent Ponzi/pyramid schemes (BCC and/or the BitConnect Investment Programs) . . ."

(Compl. at ¶ 291).  Plaintiffs do not allege that any benefit was directly conferred on Mr. Arcaro.

At best Plaintiffs allege only that Mr. Arcaro, as one of the "BITCONNECT Defendants"

received compensation from BitConnect.  Such indirect and attenuated benefit conferred as a

result of Plaintiffs' purchase of BCC is not enough to allow the conversion claim against Mr.

Arcaro to survive.  *See Century Sr. Servs.*, 770 F. Supp. 2d at 1267 (dismissing claim where

plaintiff showed that "any benefit [defendant] gained from [plaintiff] was likely indirectly

derived through other corporations doing business with [plaintiff]").

　　　　WHEREFORE, Defendant Glenn Arcaro respectfully requests the Court dismiss

Plaintiffs' Third Amended Complaint in its entirety and grant him any additional relief as is just

and equitable.

Dated: November 8, 2018 　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　By: */s/ Carol C. Lumpkin* _____

　　　　　　　　　　　　　　　　　　　　　**K&L GATES LLP**
　　　　　　　　　　　　　　　　　　　　　Carol C. Lumpkin (Florida Bar No. 797448)
　　　　　　　　　　　　　　　　　　　　　Southeast Financial Center
　　　　　　　　　　　　　　　　　　　　　200 South Biscayne Boulevard, Suite 3900
　　　　　　　　　　　　　　　　　　　　　Miami, Florida 33131
　　　　　　　　　　　　　　　　　　　　　Telephone: (305) 539-3323
　　　　　　　　　　　　　　　　　　　　　Facsimile: (305) 358-7095
　　　　　　　　　　　　　　　　　　　　　carol.lumpkin@klgates.com

　　　　　　　　　　　　　　　　　　　　　Desiree F. Moore (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　desiree.moore@klgates.com
　　　　　　　　　　　　　　　　　　　　　Nicole C. Mueller (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　nicole.mueller@klgates.com
　　　　　　　　　　　　　　　　　　　　　70 West Madison Street Suite 3100
　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60602

Telephone: (312) 372-1121
Facsimile: (312) 345-9976

*Counsel for Defendant Glenn Arcaro*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties on the below service list on this 8th day of November, 2018.


/s/ *Carol C. Lumpkin*
Carol C. Lumpkin


**SILVER MILLER**
11780 West Sample Road
Coral Springs, FL 33065
Tel: (954) 516-6000
DAVID CHAD SILVER
DSilver@SilverMillerLaw.com
JASON STUART MILLER
JMiller@SilverMillerLaw.com

**LEVI & KORSINSKY, LLP**
1101 30TH Street, N.W., Suite 115
Washington, D.C. 20007
Tel: (202)524-4290
DONALD J. ENRIGHT
denright@zlk.com

**Morgan & Morgan**
**Complex Litigation Group**
201 N. Franklin Street
7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 223-5402
JOHN ALLEN YANCHUNIS, SR.
jyanchunis@forthepeople.com

**Abbott Law Group PA**
2929 Plummer Cover Road
Jacksonville, FL 32223
Tel: 941.487.0050
Fax: 941.870.4403
STEVEN WILLIAM TEPPLER
steppler@abbottlawpa.com

**Jones Ward PLC**
1205 E. Washington St. Suite 111
Louisville, KY 40206
Tel: (502) 882-6000
JASPER D. WARD

**Komlossy Law P.A.**
4700 Sheridan Street
Suite J
Hollywood, FL 33021
Tel: 954-842-2021
Fax: 954-416-6223
Emily Cornelia Komlossy
eck@komlossylaw.com
ROSS ADAM APPEL
raa@komlossylaw.com

**Eggnatz Pascucci, P.A.**
5400 S. University Drive
Suite 417
Davie, FL 33328
(954) 889-3359
Fax: (954) 889-5913
JOSHUA HARRIS EGGNATZ
JEggnatz@JusticeEarned.com
MICHAEL JAMES PASCUCCI
MPascucci@JusticeEaerned.com

27

**Stull Stull & Brody**
6 E 45th St Ste 500
New York, NY 10017
Tel: (212) 687-7230
MICHAEL J. KLEIN

**Stumphauzer & Sloman, PLLC**
One SE Third Ave.
Suite 1820
Miami, FL 33131
305-371-9686
Fax: 305-371-9687
RYAN K. STUMPHAUZER
rstumphauzer@sslawyers.com
KIRAN NARAYAN BHAT
kbhat@sslawyers.com

**Zuckerman Spaeder Taylor & Evans**
101 E Kennedy Boulevard
Suite 1200
Tampa, FL 33602
813-221-1010
Fax: 223-7961
NATHAN MICHAEL BERMAN
nberman@zuckerman.com

I HEREBY CERTIFY that I sent a copy of the foregoing by U.S. mail first class, postage pre-paid to the following party who is not registered to receive notice of electronic filing via the CM/ECF system, on this 8th day of November, 2018:

**Ryan Hildreth**
2801 Kelvin Avenue
Unit 596
Irvine, CA 92614

/s/ *Carol C. Lumpkin*
Carol C. Lumpkin

28

302658222 v8