UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE BITCONNECT SECURITIES LITIGATION | Lead Case No. 9:18-cv-80086-DMM |

**DEFENDANT RYAN MAASEN'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs Albert Parks and Faramarz Shemirani do not claim to have met Defendant Ryan Maasen, spoken with him, or watched videos he posted online. They do not claim that he sold or solicited them to purchase anything. They do not claim that he has any connection to this forum. Their 101-page Amended Consolidated Class Action Complaint (the "Complaint") [ECF No. 78] references Maasen six times and does not describe the details of a single interaction that he had with anyone at any time, in Florida or elsewhere. Despite these deficiencies, the Complaint concludes that the Court has personal jurisdiction over Maasen and that Maasen is personally liable for up to $2 billion. Accordingly, Maasen filed a motion to dismiss the Complaint with prejudice (the "Motion") [ECF No. 86] for lack of personal jurisdiction and failure to state a claim.

The omnibus opposition to the motions to dismiss (the "Opposition") [ECF No. 97] falls back on the Complaint's allegations that Maasen posted videos online about a supposed Ponzi scheme and received payments and a title from the entities running that scheme. [ECF No. 97 at 9-11, 15.] The insinuation is that some people somewhere must have lost money after watching Maasen's videos. [ECF No. 97 at 9.] But the Complaint does not even claim that Parks or Shemirani are among those people. The unsupported inference that Maasen's videos harmed third parties is not enough to establish the Court's personal jurisdiction over him, let alone to raise Plaintiffs' allegations against him to the Rule 9(b) or Rule 12(b)(6) standards. Consequently, the Court should grant the Motion and dismiss the Complaint against Maasen with prejudice.

## **ARGUMENT**

The Opposition presents three arguments in response to the Motion. First, it contends that Plaintiffs' federal securities claim against Maasen allows the Court to skip the applicable Florida long-arm statute and Fourteenth Amendment personal jurisdiction analysis and instead conduct an inapplicable Fifth Amendment analysis. [ECF No. 97 at 19-22, 26-27, 33-35.] Second, it responds to another defendant's arguments about the Complaint's fraud claims without responding to Maasen's arguments. [ECF No. 97 at 38-41.] Third, it insists that an unjust enrichment claim does not require Plaintiffs to have conferred anything on Maasen directly; that a conversion claim does not require Maasen to have exercised any act of dominion over Plaintiffs' property; and that a civil conspiracy claim does not require any factual allegations other than that Maasen worked for companies Plaintiffs believe were fraudulent. [ECF No. 97 at 36-38, 42.] As explained below, none of these arguments present a persuasive basis for the Court to deny the Motion.

**I.   The Court Should Apply the Traditional Personal Jurisdiction Analysis to Dismiss the Complaint Because the Federal Securities Claim Against Maasen is not Colorable**

The Complaint makes no effort to tie Maasen to Florida, so Plaintiffs revert to the idea that "[p]ersonal jurisdiction in this case is not premised on Florida's long-arm statute, but rather on a specific statutory provision, 15 U.S.C. § 77v(a), which authorizes nationwide service of process for claims brought under the federal securities laws." [ECF No. 97 at 20.] As such, Plaintiffs rely on the general rule that "the proper forum for minimum contacts analysis is the United States" because the "court's personal jurisdiction is invoked based on the . . . federal securities laws[.]" *S.E.C. v. Carrillo*, 115 F.3d 1540 (11th Cir. 1997). But for the reasons discussed below, the mere presence of a federal securities claim is not enough to make the United States, rather than Florida, the relevant forum for personal jurisdiction analysis here. [ECF No. 86 at 7.]

2

In fact, the United States is not the relevant forum because Plaintiffs' federal securities claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy." *See Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)). Plaintiffs may only "take advantage of a federal statute's nationwide service of process provision" to assert personal jurisdiction over out-of-state defendants like Maasen where an "asserted federal claim is not wholly immaterial or insubstantial." *Republic of Panama*, 119 F.3d at 942. In other words, "whether a basis exists for exercising personal jurisdiction under [a federal statute] depends on whether [the plaintiff] has stated a 'colorable' [federal statutory] claim." *See Courboin*, 596 F. App'x at 732.

*Courboin* is instructive. There, the plaintiff was a divorcee who brought a federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claim in the Middle District of Florida against the lawyers and professionals involved in his divorce, whom he believed had collaborated to inflate bills. *Id*. at 731. The court granted the defendants' motion to dismiss because the divorce happened in New Jersey and the complaint did not include any other basis for personal jurisdiction in Florida. *Id*. On appeal, the Eleventh Circuit observed that "[d]espite the fact that RICO contains a nationwide service-of-process provision, Courboin is entitled to take advantage of it only if his 'asserted federal claim is not wholly immaterial or insubstantial.'" *Id*. at 732 (citing *Republic of Panama*, 119 F.3d at 941-42). After comparing the complaint's deficient allegations to the requirements to state a federal RICO claim, the Eleventh Circuit concluded that Courboin "ha[d] not stated a colorable federal RICO claim, so he may not rely on RICO's nationwide service-of-process provision" to claim personal jurisdiction. *Id*.

The Court should follow *Courboin* and reject Plaintiffs' attempt to hail Maasen to their preferred forum with a federal claim that is not colorable. Section 12(a)(1) of the Securities Act of 1933 provides that "[a]ny person who . . . (1) offers or sells a security" may be liable "to the person purchasing such security from him." 15 U.S.C. § 77l(a)(1). The Complaint does not allege facts supporting the idea that Maasen sold these specific Plaintiffs anything or solicited them to purchase anything. Indeed, by advancing only a solicitation theory, the Opposition implicitly concedes that Maasen never sold Plaintiffs anything. [ECF No. 97 at 33-35.] And the Complaint's only mention of solicitation that implicates both Plaintiffs and Maasen is the undifferentiated and nonspecific conclusion that Plaintiffs were "personally, and successfully, solicited by" each of the 41 "BITCONNECT Defendants." [ECF No. 78 ¶ 25.] This conclusion does not meet even the most basic pleading standards because it does not apprise Maasen of the conduct for which he is supposedly liable. [ECF No. 86 at 12 n.4.] As Plaintiffs do not allege that Maasen sold them or solicited them to purchase anything, they lack standing and cannot possibly state a claim against him. *See City of St. Clair Shores Police v. Nationstar Mortg. Holdings Inc.*, No. 15-61170-CIV, 2016 WL 4705718, at *6 (S.D. Fla. June 21, 2016). This deficiency also forecloses Plaintiffs from bringing a federal securities claim on behalf of third parties, such as putative Class members, that they believe Maasen did solicit. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") Without a federal securities claim that survives Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs cannot rely on the Securities Act's nationwide service of process provision for personal jurisdiction purposes.

The Opposition relies heavily on *Pinter v. Dahl*, 486 U.S. 622 (1988), but that case does not fix Plaintiffs' standing problem. There, Dahl invested $310,000 in an oil and gas venture Pinter

4

spearheaded. 486 U.S. at 626. Several of Dahl's "friends, family, and business associates" each invested $7,500 with Pinter "[b]ecause of Dahl's involvement in the venture[.]" *Id*. When the venture failed, Dahl and his associates sued under Section 12(a) and won a judgment against Pinter. *Id*. at 627. Pinter appealed, arguing that Dahl had solicited his associates' investments in the venture and should therefore be liable in contribution for their losses. *Id*. at 629-30. The Supreme Court held that Dahl could be liable in contribution under Section 12(a), even though he had not passed formal title. *Id*. at 644-47. But this potential liability was only to the associates Dahl had specifically solicited, not to anyone and everyone who claimed losses from the failed venture. As this context makes clear, *Pinter* does not support the notion that Maasen can be still be liable to Plaintiffs under Section 12(a) even though he did not sell them or solicit them to purchase anything.

For these reasons, Plaintiffs' lone federal claim against Maasen is not "colorable" and Florida remains the correct forum for the "minimum contacts" personal jurisdiction analysis. [ECF No. 86 at 7.][1] Under the familiar Florida long-arm statute and Fourteenth Amendment framework, there is no dispute that the Complaint against Maasen provides no basis for the Court's personal jurisdiction. [ECF No. 86 at 5-11; ECF No. 97 at 19-20.] Thus, the Court should grant the Motion pursuant to Rule 12(b)(2) and dismiss the case against Maasen for lack of personal jurisdiction.

II.  **The Court Should Dismiss Plaintiffs' Fraud Claims Against Maasen Because the Complaint Includes No Details About Maasen's Alleged Conduct**

The Complaint brings four unsupported fraud claims against Maasen: Count XVI under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.203-13,

---

[1] Even if Plaintiffs' federal securities claim is "colorable" for personal jurisdiction purposes, which it is not, it still fails to state a claim for the reasons noted here and in the Motion. [ECF No. 86 at 11-13.] The Court could therefore exercise personal jurisdiction over only Count I, dismiss it under Rule 12(b)(6), and decline to exercise pendent personal jurisdiction over the remaining claims. *See Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1230-32 (S.D. Fla. 2017).

5

Count XVII for common law fraudulent inducement, Count XVIII for common law fraudulent misrepresentation, and Count XIX for common law negligent misrepresentation. As to each of these fraud claims, the Complaint's allegations against Maasen must clear the Rule 9(b) specificity bar. [ECF No. 86 at 15-18.]

The Complaint contains six specific references to Maasen. [ECF No. 86 at 4.] Elsewhere, and even in some of these specific references, the Complaint lumps Maasen in with the five other "Regional Promoters," or the 15 other "Promoter Defendants," or the 40 other "BITCONNECT Defendants." The Opposition does not attempt to point out which of the Complaint's generalized and ultimately inapposite allegations satisfy the exacting Rule 9(b) standard as to Maasen. To the extent the Opposition defends the fraud claims at all, it states that the FDUTPA is an "extremely broad" statute that covers Defendant Glenn Arcaro's alleged conduct [ECF No. 97 at 38-39] and labels Arcaro's legal arguments to dismiss the common law fraud counts "ridiculous" and "ludicrous[.]" [ECF No. 97 at 41.] Maasen's Rule 9(b) arguments [ECF No. 86 at 15-18] stand unrefuted.[2] The Court should dismiss Counts XVI through XIX against Maasen with prejudice.

### III. The Court Should Dismiss the Ancillary Claims Against Maasen Because the Complaint Does Not Allege the Requisite Underlying Facts

Plaintiffs also raise three ancillary claims against Maasen: Count XV for unjust enrichment, Count XX for conversion, and Count XXI for civil conspiracy. As to unjust enrichment, "a Plaintiff must show that he or she has directly conferred a benefit on a defendant in order to sustain an unjust enrichment claim." *Martin v. Creative Mgmt. Grp., Inc.*, No. 10cv23159, 2013 WL 12061809, at *5 (S.D. Fla. July 26, 2013). "An indirect benefit is not enough to support a claim." *Id*. (citation omitted). In Martin, a man sued his former employer for unjust enrichment claiming

---

[2] Although the Court need not reach the issue to dismiss the fraud claims against Maasen, the Motion's FDUTPA preemption argument [ECF No. 86 at 13-14] also stands unrefuted.

that the employer had unlawfully retained and distributed shares in stock to which he was entitled. *Id*. at *1-2. The Court dismissed the claim because the "shares themselves cannot be construed as a 'benefit' flowing from Plaintiff to Defendant because Plaintiff never conferred the shares to Defendant." *Id*. at *6. Similarly, the Complaint does not allege that Plaintiffs conferred anything on Maasen. Instead, it alleges only that Plaintiffs invested with BITCONNECT [ECF No. 78 ¶¶ 26-27] and that BITCONNECT employed and paid Maasen and various others "salary and commissions." [*See, e.g.*, ECF No. 78 ¶ 170.]

Plaintiffs respond generally that the 16 separate "Promoter Defendants" all "benefited directly *and* indirectly as a result of Plaintiffs' and the proposed class' investments in BITCONNECT's unlawful investment offerings" and that the "direct benefit conferred on ARCARO and MAASEN is painfully obvious—they both received commissions which were a percentage of the amount of investments they or those in their 'downline' were able to successfully solicit." [ECF No. 97 at 37.] Even assuming Maasen received "commissions" directly from investments made by his "downline," Plaintiffs do not allege that they were part of his "downline." In this way, Plaintiffs again try to recover from Maasen for injuries that they themselves did not suffer. Such claims are subject to dismissal. *See Mills*, 511 F.3d at 1307 ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.")

To try and obscure this deficiency, the Opposition cites two distinguishable cases. In one, the court denied a bank's motion to dismiss an unjust enrichment claim because the bank retained illicit funds "pursuant to a payment arrangement [that] existed between [the bank] and the Defendants that did have direct contact with" the plaintiffs and because the bank "received kickbacks and/or commissions which were taken **directly from the insurance premiums paid**

7

**by Plaintiffs**." *Williams v. Wells Fargo Bank N.A.*, No. 11cv21233, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) (emphasis added).  In this case, there is no payment arrangement alleged between Maasen and anyone who had direct contact with Plaintiffs.  More importantly, there is no plausible basis for the allegation that the funds Maasen received from BITCONNECT came directly from funds invested by Plaintiffs.

In the other case the Opposition cites, the court denied a motion to dismiss the plaintiffs' unjust enrichment claim where all "Defendants [were] jointly responsible for inducing them to pay" unjustified water quality testing fees. *Coffey v. WCW & Air, Inc.*, No. 17cv90, 2018 WL 4154256, at *10 (N.D. Fla. Aug. 30, 2018).  In so holding, the court distinguished binding precedent that a defendant "is not directly benefited by the plaintiff when the only benefit it received was for performing a service for a different party under a different, albeit arguably related, contract." *Id.* at * 9 (citing *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012)).  Here, as described above, there is no allegation that Maasen had any role in inducing Plaintiffs' investment in BITCONNECT.  In fact, the Court should dismiss the unjust enrichment claim because the Complaint plainly alleges that Maasen performed services not for Plaintiffs but "for a different party"—BITCONNECT—under a "different, albeit arguably related" employment contract.  *See Virgilio*, 680 F.3d at 1337.

Regarding conversion, the Opposition states only that "the Promoter Defendants each seek dismissal . . . on the legally deficient notion that because the Promoter Defendants purportedly never personally held the literal dollars invested, Plaintiffs claim must fail" and that "Promoter Defendants provide no legal authorities in making this argument." [ECF No. 97 at 42.]  In fact, Maasen cited a case where a court in this District dismissed a conversion claim for just that reason: failure to allege that the defendant exercised dominion over the plaintiffs' property.  [ECF No. 86

8

at 19]; *see also Rich v. Wachovia Bank N.A.*, No. 08cv81575, 2009 WL 10699957 at *4 (S.D. Fla. June 19, 2009). The Opposition then selectively excerpts the Eleventh Circuit's definition in *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1258 (11th Cir. 2015) to argue that a Florida conversion claim does not require an act of dominion. [ECF No. 97 at 42.] The sentence in *Palm Beach* directly following Plaintiffs' quoted excerpt provides: "Conversion is an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'" 781 F.3d at 1258-59 (quoting *Warshall v. Price,* 629 So.2d 903, 904 (Fla. 4th DCA 1993)). The Court should dismiss the conversion claim because the Complaint does not allege Maasen exercised any act of dominion over Plaintiffs' property.

Finally, the Opposition contends in a footnote that the Court should not dismiss the civil conspiracy claim against Maasen because he had "employment as a 'Regional Promoter'" at BITCONNECT. [ECF No. 97 at 42 n.15.] "Under Florida law, the gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the Plaintiff." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (internal quotation marks and citation omitted). "[A] claim that is found not to be actionable cannot serve as the basis for a conspiracy claim." *Id*. Further, "where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity" under Rule 9(b). *See id*. at 1067-68. Plaintiffs' conclusion that Maasen must have participated in a civil fraud conspiracy because he was employed by a company they believe defrauded them lacks the detailed factual support that Rule 9(b) requires. Mere "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal" even under the lower Rule 12(b)(6) standard. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)). Consequently, the Court should dismiss the insufficiently pled civil conspiracy claim.

9

**IV.   The Court Should Not Grant Leave to Amend**

Plaintiffs' Opposition ends by asking the Court for leave to amend and file a sixth pleading. [ECF No. 97 at 47.] In weighing this request, the Court should consider the full procedural history. This case began over ten months ago. [ECF No. 1.] Plaintiffs had six months and four tries to compile their Third Amended Class Action Complaint [ECF No. 48] and had allegations from several consolidated actions to draw on. Maasen filed a motion to dismiss that deficient pleading with prejudice. [ECF No. 67.] With Maasen's agreement, Plaintiffs asked for and obtained a monthlong extension of time to respond. [ECF No. 73.] Plaintiffs did not respond, but instead used the extra time to compile the Complaint, their fifth pleading. They then filed the Complaint without asking Maasen or the Court in violation of Federal Rule of Civil Procedure 15(a)(2) and Local Rule 15.1.[3] But the Complaint contained the exact same deficiencies Maasen identified in his motion to dismiss the Third Amended Class Action Complaint. Through the improper amendment, Plaintiffs only demonstrated how futile amendment is and how appropriate dismissal is with respect to Maasen. *See Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017) ("An amendment is considered futile when the claim, as amended, would still be subject to dismissal."); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1057 (11th Cir. 2015) ("Three attempts at proper pleading are enough.")

**CONCLUSION**

For the reasons above and the reasons described in the Motion, the Court should dismiss the Complaint and the case against Maasen with prejudice.

---

[3] Plaintiffs excuse this misstep by citing the deadline for amendment in the Court's Pretrial Scheduling Order and conflating that deadline with leave to amend. [ECF No. 97 at 19.]

## **REQUEST FOR HEARING**

Under Local Rule 7.1(b)(2), Maasen requests oral argument, which could help clarify to the Court the procedural history of this case and the separate allegations and arguments for dismissal presented by the three defendants who have received service. Maasen estimates that his portion of the argument would take approximately ten minutes.

Date: December 4, 2018

                                                Respectfully submitted,

                                                s/ *Kiran N. Bhat*
                                                Ryan K. Stumphauzer, Esq. (Fla. Bar No. 0012176)
                                                rstumphauzer@sslawyers.com
                                                Kiran N. Bhat, Esq. (Fla. Bar No. 1008370)
                                                kbhat@sslawyers.com
                                                Stumphauzer & Sloman, PLLC
                                                SunTrust International Center
                                                One SE 3rd Avenue, Suite 1820
                                                Miami, FL 33131
                                                Tel: (305) 371-9686
                                                Fax: (305) 371-9687

                                                *Attorneys for Defendant Ryan Maasen*

## CERTIFICATE OF SERVICE

I certify that on December 4, 2018, I: (1) electronically filed this document with the Clerk of the Court using CM/ECF, causing service of a copy on counsel of record listed below with an email address, and (2) mailed service copies to those listed without an email addresses.

s/ *Kiran N. Bhat*
Kiran N. Bhat, Esq.

## SERVICE LIST

David Chad Silver
DSilver@SilverMillerLaw.com
Jason Stuart Miller
JMiller@SilverMillerLaw.com
Silver Miller
11780 West Sample Road
Coral Springs, FL 33065
Tel: (954) 516-6000

Donald J. Enright
denright@zlk.com
Levi & Korsinsky LLP
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290

John Allen Yanchunis, Sr.
jyanchunis@forthepeople.com
Morgan & Morgan
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505

Steven William Teppler
steppler@abbottlawpa.com
Abbott Law Group PA
2929 Plummer Cover Road
Jacksonville, FL 32223
Tel: (941) 487-0050

Jasper D. Ward
Jones Ward PLC
1205 E. Washington St. Suite 111
Louisville, KY 40206
Tel: (502) 882-6000

Emily Cornelia Komlossy
eck@komlossylaw.com
Ross Adam Appel
raa@komlossylaw.com
Komlossy Law P.A.
4700 Sheridan Street , Suite J
Hollywood, FL 33021
Tel: (954) 842-2021

Joshua Harris Eggnatz
JEggnatz@JusticeEarned.com
Michael James Pascucci
MPascucci@JusticeEaerned.com
Eggnatz Pascucci, P.A.
5400 S. University Drive, Suite 417
Davie, FL 33328
Tel: (954) 889-3359

Michael J. Klein
Stull Stull & Brody
6 E 45th St Ste 500
New York, NY 10017
Tel: (212) 687-7230

<div style="display: flex; justify-content: space-between;">

Nathan Michael Berman
nberman@zuckerman.com
Zuckerman Spaeder Taylor & Evans
101 E Kennedy Boulevard, Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010

Brian Willen
bwillen@wsgr.com
Eli B. Richlin
erichlin@wsgr.com
Wilson Sonsini Goodrich Rosati
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel: (212) 497-7781

</div>