UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re: BitConnect Securities Litigation

Lead Case No: 9:18-cv-80086-DMM

Honorable Donald M. Middlebrooks

**DEFENDANT GLENN ARCARO'S REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.     INTRODUCTION………………………………………………………………………1

II.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(2)……1

III.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)……4

       A.    The Securities Claims Must Fail………………………………………………….4

              1.    Neither BCC nor the BitConnect Investment Programs are Securities…..4

              2.    Mr. Arcaro is Not a Statutory Seller……………………….……………..5

              3.    The Complaint Does Not Adequately Allege Mr. Arcaro's Control over the BitConnect Policies or Conduct at Issue…………………………..5

       B.    Allegations of the Complaint Fail to Meet the Requirement of Rule 9(b)……….7

       C.    The FDUTPA (Count XIV) Claim Must be Dismissed…………………………..8

       D.    The Conversion Claim (Count XX) Must be Dismissed………………………….9

       E.    The Unjust Enrichment Claim (Count XV) Must be Dismissed………………….9

IV.   CONCLUSION……………………………………………………………………............10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ASD Specialty Healthcare, Inc. v. Jupiter Hematology & Oncology Assocs., P.A.*,
   No. 10-80534-CIV, 2010 WL 11596318 (S.D. Fla. Oct. 1, 2010), *report and
   recommendation adopted*, No. 10-80534-CIV, 2010 WL 11596319 (S.D. Fla.
   Oct. 20, 2010) ...................................................................................................................9

*Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*,
   No. 10-23869, 2012 U.S. Dist. LXIS 61710 (S.D. Fla. May 2, 2012) ......................................8

*Brown v. Enstar Grp., Inc.*,
   84 F.3d 393 (11th Cir. 1996) ...............................................................................................6

*Hall v. Great-West Healthcare*,
   276 Fed App'x 923 (11th Cir. 2008) ..................................................................................7, 9

*Koch v. Royal Wine Merchants, Ltd.*,
   847 F. Supp. 2d 1370 (S.D. Fla. 2012) .................................................................................2

*Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of
   Legal Affairs, State of Fla.*
   761 So. 2d 1256 (Fla. Dist. Ct. App. 2000) ..........................................................................8

*Papasan v. Allain*,
   478 U.S. 265 (1986) ............................................................................................................4

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ............................................................................................................5

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
   119 F.3d 935 (11th Cir. 1997) ..........................................................................................2, 3

*S.E.C. v. Merchant Capital, LLC*,
   483 F.3d 747 (11th Cir. 2007) .............................................................................................4

*Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
   253 F. Supp. 359 (S.D.N.Y. 1966).........................................................................................4

*Ubuy Holdings, Inc. v. Gladstone*,
   340 F. Supp. 2d 1343 (S.D. Fla. 2004) .................................................................................2

*Williams v. Wells Fargo Bank, N.A.*,
   No. 11-21233, 2011 U.S. Dist. LEXIS 119136 (S.D. Fla. Oct. 14, 2011) .........................9, 10

**Statutes**

Section 12(a)(1) of the Securities Act of 1933 .......................................................................2, 5, 6

**Other Authorities**

Fifth Amendment of the U.S. Const. ..........................................................................................2, 3

Fourteenth Amendment of the U.S. Const. ....................................................................................2

Fed. R. Civ. P. 9 ..............................................................................................................................7

Fed. R. Civ. P. 12 .........................................................................................................................1, 4

Defendant Glenn Arcaro ("Mr. Arcaro"), through his attorneys, respectfully submits his Reply in Support of his Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint [DE 94] (the "Reply" and "Motion," respectively).

## I. INTRODUCTION

In their Omnibus Opposition to the Motions to Dismiss Lead Plaintiffs' Amended Consolidated Class Action Complaint filed by Defendants Glenn Arcaro [DE 94], Ryan Maasen [DE 86], and YouTube LLC [DE 88] ("Opp."), Plaintiffs misrepresent or sidestep the central arguments in Mr. Arcaro's Motion and appear to forget their own "new" allegations that supposedly necessitated their latest amended complaint [DE 78] (the "Compl.")—their fourth in less than a year. Moreover, the Opposition continues to point the finger at Mr. Arcaro and the other served Defendants while failing to acknowledge the elephant in the room—the deluge of allegations containing literally *pages* of facts in the Complaint demonstrating that the origins of BitConnect[1] and its "masterminds" had nothing whatsoever to do with the defendants who now move this Court for dismissal. But the Motion, the *entire* Complaint (not Plaintiffs' cherry-picked excerpts), and even the Opposition itself make clear that Plaintiffs have sued Defendants who bear no legal responsibility for the damages they claim to have suffered in a jurisdiction convenient only for their lawyers, instead of pursuing those who were actually responsible for the creation and management of BitConnect. Since Plaintiffs cannot establish that the Court has personal jurisdiction over him or state any claim against him, Mr. Arcaro respectfully requests that the Complaint against him be dismissed in its entirety, with prejudice.

## II. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(2)

In opposition, Plaintiffs ask the Court to ignore that neither Plaintiffs, served Defendants, nor the claims at issue in this case have anything whatsoever to do with the state of Florida,

---

[1] The definitions included in the Motion are adopted in this Reply.

1

arguing instead that their specious Securities Act claims support nationwide jurisdiction for those claims and pendent jurisdiction for the remaining state law claims. (Opp. at 12.) The fatal flaw in Plaintiffs' jurisdictional analysis is that it rests entirely on their unfounded Securities Act claims. As Mr. Arcaro demonstrated in the Motion, Plaintiffs cannot state a claim under the Securities Act, so there is no nationwide jurisdiction to support their assertion of pendent jurisdiction for the remaining state law claims. As such, the Court should conduct the traditional Fourteenth Amendment analysis applicable to state law claims and should decline to exercise supplemental jurisdiction. *Ubuy Holdings, Inc. v. Gladstone*, 340 F. Supp. 2d 1343 (S.D. Fla. 2004) (declining to exercise supplemental jurisdiction over state law claims where federal claims were dismissed) (citing *Baggett v. First Nat'l Bank*, 117 F.3d 1342, 1353 (11th Cir. 1997); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). This is particularly appropriate here, given Plaintiffs' blatant attempt to use the nationwide service provision of the federal securities laws as a tool to garner jurisdiction over defendants and assert claims that have no connection to this forum. *See Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370 (S.D. Fla. 2012) (court had no personal jurisdiction under the Florida long-arm statute where plaintiff inadequately pled claim that allowed for nationwide service).

Even if the Court disagrees and allows the securities claims to go forward, the Due Process clauses of both the Fifth and Fourteenth Amendments still protect litigants from the burdens of litigation in unduly inconvenient fora, and an analysis under either clause results in a finding that this Court cannot exercise personal jurisdiction over Mr. Arcaro. Importantly, the Eleventh Circuit has ruled that nationwide service of process statutes do not automatically satisfy the Fifth Amendment's due process requirements; even when a defendant resides within the United States, a court is required to ensure that requiring a defendant to litigate in the plaintiff's chosen forum in not constitutionally burdensome. *Republic of Panama v. BCCI Holdings*

*(Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997). While the burden is on the defendant to demonstrate that assertion of jurisdiction in the forum will make litigation gravely difficult and inconvenient, once a defendant makes such a showing, personal jurisdiction is improper unless the federal interest in litigating the dispute *in the chosen forum* outweighs the burden imposed on the defendant. *Id.* at 948.

As explained in the Motion, the sole connection to this forum is that Plaintiffs' counsel is a member of the Florida bar and maintains offices just down the road from the Courthouse. By contrast, there can be no question the litigation imposes significant hardship on Mr. Arcaro and is unreasonable given his complete lack of contacts with the forum. It is true that the Eleventh Circuit in *Panama* stated a defendant's contacts with a forum state play no "magical role" in the Fifth Amendment analysis, but the Court also acknowledged that forum contacts should be taken into account as a part of the assessment of inconvenience imposed on a defendant. *Id.* at 946-47. Mr. Arcaro lives in California, has no contacts with the forum state, and directed no activities or actions towards Florida. It is simply common sense that Mr. Arcaro will be at a significant disadvantage if he has to defend himself against a lawsuit filed in the Southern District of Florida, 2,500 miles from his home. Conversely, the Southern District of Florida has no particular interest in litigating this dispute: neither Plaintiff alleges that he resides here or was injured here and the Complaint alleges that the BitConnect "scheme" was perpetuated across the United States and throughout the world. Nor do any of the served Defendants live here. Given the substantial hardship facing Mr. Arcaro, it cannot be considered "fair and reasonable" to make him litigate in a forum in which he has no contacts and has directed no activity. The Complaint should thus be dismissed for lack of personal jurisdiction.

### III. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)

#### A. The Securities Claims Must Fail

##### 1. Neither BCC nor the BitConnect Investment Programs are Securities

Plaintiffs devote five pages of the Opposition to their argument that BCCs, the BitConnect Lending Program, and the BitConnect Staking Program are securities. (Opp. at 20-25.) But missing from that entire analysis is any reference to *factual* allegations in the Complaint related to those programs. Rather, the allegations to which Plaintiffs cite are nothing more than conclusions dressed as "facts." (Compl. at ¶¶ 236-37 (restating the legal standard for claims brought under Section 12(a) and stating that BCCs are securities); 238 (restating the *Howey* standard and alleging simply that BCCs fall within each of the three elements); 176 (alleging that BitConnect engaged in a common enterprise because the success of the "investment" was based on BitConnect's success).) This Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and Plaintiffs should not be allowed to cure deficient pleadings through motion practice.

Plaintiffs further argue that "representations made to investors" are also determinative of whether BCC is an investment contract, but overstate the holding of the only case they cite to support that notion. (Opp. at 25 (citing *S.E.C. v. Merchant Capital, LLC*, 483 F.3d 747, 756 (11th Cir. 2007)).) That case holds only that such representations are evidence to be considered in determining the purchasers' "expectations of control," a nod to *Howey*'s third element (whether profits are derived "solely" from the efforts of the promoter). *Merchant Capital, LLC*, 483 F.3d at 756. And the representations to which Plaintiffs point in support of this argument do not indicate that purchasers relinquish control over BCC to BitConnect or anyone else but, rather, illustrate the degree of control that purchasers retained over their BCC. (*See, e.g.*, Opp. at 25 (citing Compl. at ¶ 114)); *see also Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,

4

253 F. Supp. 359, 367 (S.D.N.Y. 1966) ("The mere presence of a speculative motive on the part of the purchaser or seller does not evidence the existence of an 'investment contract' within the meaning of the securities acts."). This degree of control weighs against Plaintiffs' erroneous conclusions that BCC and the Investment Programs are securities, thus requiring dismissal of the securities claims.

### 2. Mr. Arcaro is Not a Statutory Seller

In the Opposition, Plaintiffs appear to argue that they can establish that Mr. Arcaro was a statutory seller under Section 12(a)(1) of the Securities Act by simply alleging he solicited *anyone* to purchase BCC. (Opp. at 25-27.) But as Mr. Arcaro demonstrated in his Motion, in order to hold Mr. Arcaro liable under Section 12(a)(1), Plaintiffs must establish a direct link between the alleged communications with Plaintiffs and their decision to purchase the alleged securities. (*See* Mot. at 16-17 (collecting cases, none of which are acknowledged by Plaintiffs)); *see also Pinter v. Dahl*, 486 U.S. 622, 651 (1988) (Section 12 liability does not attach to "those who merely assist in another's solicitation efforts"). Moreover, Plaintiffs' position is defeated by a plain reading of the language from *Pinter* upon which they rely: "liability extends to the person who [1] *successfully solicits* the purchase . . ."; "[a] natural reading of the statutory language would include in the statutory seller status at least some persons *who urged the buyer* to purchase." (Opp. at 26-27 (citing *Pinter*, 486 U.S. at 622, 638, 647) (emphasis supplied).) Because the allegations in the Complaint establish no such link between Plaintiffs and Mr. Arcaro, Count I must be dismissed as to Mr. Arcaro.

### 3. The Complaint Does Not Adequately Allege Mr. Arcaro's Control over the BitConnect Policies or Conduct at Issue

Even if the Complaint successfully alleged an underlying violation of Section 12(a), the Complaint itself is replete with allegations that contradict Plaintiffs' argument that Mr. Arcaro

5

was a "control person" of BitConnect. Plaintiffs again ignore their own allegations where they admit that the group of persons they name as the "masterminds," "owners," "founders," and "developers" of BitConnect had absolutely no involvement with Mr. Arcaro. (Mot. at 18 (citing Compl. at ¶¶ 34-39, 97-109).) Instead, they summarily contend that Mr. Arcaro controlled BitConnect because he disbursed BitConnect funds (that he received from BitConnect), made "decisions regarding BITCONNECT's promotional materials" and organized "the BitConnect Yacht party, club events, conferences, and even the BitConnect School." (Opp. at 28.) But their own allegations paint a very different picture. Plaintiffs concede in the Complaint that as a "National Promoter" Mr. Arcaro directed nothing. Rather BitConnect heads, including Defendant Satish, are alleged to have told Arcaro how and when to promote BitConnect. (*See, e.g.*, Compl. at ¶¶ 51, 89, 143.) But even if the ability to direct payment for promotional materials and plan a few parties was sufficient to establish a modicum of "control" under applicable law (they plainly are not), none of these allegations create a plausible inference that Mr. Arcaro had the power to control or influence *the specific policy that resulted in primary liability* under Section 12, namely, BitConnect's decision to create the Lending Program and the Staking Program, and sell BCC to the public. Rather, the Complaint makes clear that others made those decisions, and Mr. Arcaro became involved with BitConnect over a year after the BitConnect programs were up and running—right around the time Plaintiffs themselves got involved in the programs. (*Id.* at ¶ 51 (Mr. Arcaro "began promoting BitConnect in or about June 2018 [*sic*; as the initial complaint was filed in early 2018, this presumably should read 2017]").) Plaintiffs are required to plausibly allege that Mr. Arcaro had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities law *and* exerted control over the specific policies about which they complain. *Brown v. Enstar Grp.,*

6

*Inc.*, 84 F.3d 393, 396 (11th Cir. 1996).  Because Plaintiffs have not—and cannot—do so, this Count must be dismissed as to Mr. Arcaro.

### B.   Allegations of the Complaint Fail to Meet the Requirements of Rule 9(b)

Plaintiffs do not respond to Arcaro's argument that *each* of the non-securities claims must be dismissed because they do not meet the heightened pleading standard of Rule 9(b). (Mot. at 2, 11, 19-21.)  Counts XV-XXI should be dismissed for this reason alone.  *Hall v. Great-West Healthcare*, 276 Fed App'x 923, 925 (11th Cir. 2008) ("[a]n argument not made is waived") (citation omitted).[2]  Plaintiffs also appear to misapprehend Mr. Arcaro's argument regarding their Fraudulent Inducement, Fraudulent Misrepresentation, and Negligent Misrepresentation claims (Counts XVII-XIX).[3]  Mr. Arcaro argues that the allegedly fraudulent statements in the Complaint lack the requisite facts regarding the "who, what, where, when, how" of their claims and thus require dismissal.  (Mot. at 20 (citing *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-cv-22153, 2011 WL 4434891, at *4 (S.D. Fla. Sept. 23, 2011)).)  Plaintiffs' failure to address this argument effectively concedes it.

In addition to the pleading deficiency, the Fraudulent Inducement, Fraudulent Misrepresentation, and Negligent Misrepresentation claims fail for another reason: Plaintiffs do not allege that they relied on any such statements made by Mr. Arcaro.  Plaintiffs frame this conflict as one stemming from whether "reasonable" reliance is required (Opp. at 32-33), but the Court need not reach that question because Plaintiffs allege no facts that create the inference that they were even aware of any statement made by Mr. Arcaro.  (Mot. at 21 ("Complaint does not allege that either Plaintiff . . . viewed any video or visited any website purportedly owned by Mr.

---

[2] Nor do they address or defend their impermissible "lumping" of the purported actions and statements made the "BitConnect Defendants."  (Mot. at 20 n.12.)

[3] This misapprehension also results in the incorrect claim that Mr. Arcaro did not address their Civil Conspiracy claim (Count XXI).  Mr. Arcaro did so through this argument.  (Mot. at 2, 11, 19-21.)

7

Arcaro, or were induced to purchase BCC through the BCC School or any website").) Counts XVII-XIX must therefore be dismissed for this additional reason.

### C. The FDUTPA (Count XIV) Claim Must be Dismissed

Plaintiffs concede that they do not allege that the purportedly deceptive conduct took place in Florida but argue instead that they need not have done so. (Opp. at 31.) That is plainly contrary to the majority position in this jurisdiction. In support of their argument Plaintiffs ignore the controlling cases cited by Mr. Arcaro and point instead to a single, unpublished case, and then mischaracterize its discussion of an underlying Florida state case. (Opp. at 31 & n.14.) *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.* held that FDUTPA applied to commercial transactions between a *Florida corporation* and non-resident consumers and stated that the law "seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired *within the territorial boundaries* of this state without limitation." 761 So. 2d 1256, 1262 (Fla. Dist. Ct. App. 2000) (emphasis supplied). Moreover, the case cited by Plaintiffs, *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, is distinguishable: all of the complained-of conduct (purchase of, and subsequent fire to, a boat) occurred in Florida, where at least some of the defendants were located. No. 10-23869, 2012 U.S. Dist. LXIS 61710, at *1 (S.D. Fla. May 2, 2012).[4] Perhaps conscious of that requirement, Plaintiffs further claim that there are "numerous putative class members that are residents of Florida and more than willing to join this action as a named plaintiff." (Opp. at 31.) In order to maintain this action in Florida, counsel is required to find those plaintiffs and join them to this action. They have not done so, and their FDUTPA claim must thus be dismissed.

---

[4] *Barnext* also makes clear that personal jurisdiction must exist over a defendant for a FDUTPA claim to survive, and such analysis is performed under the Florida long-arm statute and "minimum contacts" test. *Id.* at *20. Plaintiffs do not contest Mr. Arcaro's argument that he cannot be reached by Florida's long-arm statute.

8

### D. The Conversion Claim (Count XX) Must be Dismissed

Plaintiffs falsely state that the "Promoter Defendants provide no legal authorities" to support the argument that Plaintiffs' conversion claim is deficient because Defendants never exercised dominion over Plaintiffs' property. (*See* Opp. at 34; Mot. at 23 (citing *Barnett v. Blane*, No. 11-cv-14345, 2012 WL 12862653, at *4 (S.D. Fla. July 3, 2012)).) Moreover, Plaintiffs ignored Mr. Arcaro's second argument, that the allegedly converted funds are not sufficiently identified as is required to maintain a conversion claim. (Mot. at 23-24 (citing authorities).) Having waived their opportunity to challenge these arguments, the claim must be dismissed. *Hall*, 276 Fed App'x at 925.

### E. The Unjust Enrichment Claim (Count XV) Must be Dismissed

Plaintiffs defend their Unjust Enrichment Claim by reference to allegations that (1) Plaintiffs purchased BCC from BitConnect; and (2) the Promoter Defendants, including Mr. Arcaro, received "salary and commissions for their role in bring [sic] additional victims into the scheme" as sufficient to maintain an unjust enrichment claim. (Opp. at 29 (arguing that this confers a benefit "directly *and* indirectly.").) However, such indirect, "employment-related payments [are] not conferred by [a plaintiff] upon [a defendant]; these payments [are] instead conferred by the corporate entities [defendant is] associated with." *ASD Specialty Healthcare, Inc. v. Jupiter Hematology & Oncology Assocs., P.A.*, No. 10-80534-CIV, 2010 WL 11596318, at *6 (S.D. Fla. Oct. 1, 2010), *report and recommendation adopted*, No. 10-80534-CIV, 2010 WL 11596319 (S.D. Fla. Oct. 20, 2010) (dismissing unjust enrichment claim based on allegation that plaintiff made a purchase from a corporate entity who conferred a salary on the defendant).[5] Plaintiffs also rely on *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 U.S. Dist. LEXIS

---

[5] Moreover, the allegations are *inconsistent* with the inference that Mr. Arcaro received a direct benefit from Plaintiffs' purchases to the extent that Plaintiffs allege that one of them is not a resident of the United States and that Mr. Arcaro was a U.S. employee of BitConnect.

9

119136, at *14 (S.D. Fla. Oct. 14, 2011) (Opp. at 29), but that case does not compel a different result. There, plaintiffs alleged that a specific, identifiable bank fee was collected from plaintiff by another defendant and transferred to the bank defendant. *Williams*, 2011 U.S. Dist. LEXIS 119136, at *14. Because Plaintiffs do not plausibly allege that BitConnect collected *their* money and specifically passed that money along to Mr. Arcaro, Count XV must be dismissed.

## IV. CONCLUSION

For nearly a year, Plaintiffs and their counsel have used this Court to pursue specious claims against the served Defendants even though they can't tie the served Defendants to this forum or allege a single fact suggesting they were involved in the creation or management of the operating system Plaintiffs blame for their financial losses. Rather, it has become clear that Plaintiffs knowingly took risks in an unsecure gamble on cryptocurrency, and now hope this Court will force the served Defendants to act as their insurers. But the Complaint and the Opposition show that this is not the proper forum for Plaintiffs' claims and that none of the served Defendants is legally responsible for any of the losses Plaintiffs claim to have suffered. The inequity of these misplaced claims is especially acute where, as here, Plaintiffs baldly admit that they have identified the founders, operators, and masterminds of BitConnect and could, if they choose, pursue appropriate legal remedies against them in a proper forum. Mr. Arcaro therefore respectfully asks the Court to put an end to Plaintiffs' claims against him by dismissing the Complaint, in its entirety, with prejudice.

Dated: December 4, 2018                    Respectfully submitted,

By: */s/ Kenn Brotman*

**K&L GATES LLP**
Kenn Brotman (Florida Bar No. 58726)
70 West Madison Street, Suite 3300
Chicago, Illinois  60602
Telephone: (312) 372-1121
Facsimile: (312) 345-9960
kenn.brotman@klgates.com

Desiree F. Moore (*pro hac vice*)
desiree.moore@klgates.com
Nicole C. Mueller (*pro hac vice*)
nicole.mueller@klgates.com
70 West Madison Street Suite 3100
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 345-9976

**Pontem Law LLC**
Carl E. Volz (*pro hac vice*)
carl.volz@pontemlaw.com
125 South Clark Street, 17th Floor
Chicago, IL 60603
Telephone: 708-601-0261

*Counsel for Defendant Glenn Arcaro*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties on the below service list on this 4th day of December, 2018.

/s/ *Kenn Brotman*
Kenn Brotman

**SILVER MILLER**
11780 West Sample Road
Coral Springs, FL 33065
Tel: (954) 516-6000
DAVID CHAD SILVER
DSilver@SilverMillerLaw.com
JASON STUART MILLER
JMiller@SilverMillerLaw.com

**LEVI & KORSINSKY, LLP**
1101 30TH Street, N.W., Suite 115
Washington, D.C. 20007
Tel: (202)524-4290
DONALD J. ENRIGHT
denright@zlk.com

**Morgan & Morgan**
**Complex Litigation Group**
201 N. Franklin Street
7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 223-5402
JOHN ALLEN YANCHUNIS, SR.
jyanchunis@forthepeople.com

**Abbott Law Group PA**
2929 Plummer Cover Road
Jacksonville, FL 32223
Tel: 941.487.0050
Fax: 941.870.4403
STEVEN WILLIAM TEPPLER
steppler@abbottlawpa.com

**Jones Ward PLC**
1205 E. Washington St. Suite 111
Louisville, KY 40206
Tel: (502) 882-6000
JASPER D. WARD

**Komlossy Law P.A.**
4700 Sheridan Street
Suite J
Hollywood, FL 33021
Tel: 954-842-2021
Fax: 954-416-6223
Emily Cornelia Komlossy
eck@komlossylaw.com
ROSS ADAM APPEL
raa@komlossylaw.com

**Eggnatz Pascucci, P.A.**
5400 S. University Drive
Suite 417
Davie, FL 33328
(954) 889-3359
Fax: (954) 889-5913
JOSHUA HARRIS EGGNATZ
JEggnatz@JusticeEarned.com
MICHAEL JAMES PASCUCCI
MPascucci@JusticeEaerned.com

**Stull Stull & Brody**
6 E 45th St Ste 500
New York, NY 10017
Tel: (212) 687-7230
MICHAEL J. KLEIN

**Stumphauzer & Sloman, PLLC**
One SE Third Ave.
Suite 1820
Miami, FL 33131
305-371-9686
Fax: 305-371-9687
RYAN K. STUMPHAUZER
rstumphauzer@sslawyers.com
KIRAN NARAYAN BHAT
kbhat@sslawyers.com

**Zuckerman Spaeder Taylor & Evans**
101 E Kennedy Boulevard
Suite 1200
Tampa, FL 33602
813-221-1010
Fax: 223-7961
NATHAN MICHAEL BERMAN
nberman@zuckerman.com

I HEREBY CERTIFY that I sent a copy of the foregoing by U.S. mail first class, postage pre-paid to the following party who is not registered to receive notice of electronic filing via the CM/ECF system, on this 4th day of December, 2018:

**Ryan Hildreth**
2801 Kelvin Avenue
Unit 596
Irvine, CA 92614

/s/ *Kenn Brotman*
Kenn Brotman